Matthew J. Antonelli (Bar No. 343144)
RUGGERI PARKS WEINBERG LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel: (415) 429-0998
Fax: (202) 984-1401
mantonelli@ruggerilaw.com

*Attorney for Plaintiff*
SENTINEL INSURANCE COMPANY, LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>BURSOR & FISHER, P.A., and SCOTT BURSOR,<br><br>Defendants. | Case No.: 3:25-cv-6351<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sentinel Insurance Company, Limited ("Hartford") brings this Complaint seeking equitable and other relief from Defendants Bursor & Fisher, P.A. ("B&F") and Scott Bursor. Specifically, Hartford seeks restitution, disgorgement, reimbursement and/or damages, specific performance, and declaratory relief, arising from insurance policies issued by Hartford and costs paid to defend and settle the litigation styled *Parker v. Bursor, et al.*, No. 1:24-cv-00245 (S.D.N.Y.) (the "Underlying Action").

## SUBJECT MATTER JURISDICTION

1. This Court has jurisdiction over this matter because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Hartford specifically is seeking restitution, disgorgement, reimbursement and/or damages in excess of $75,000, exclusive of interest and costs.

2. Plaintiff Hartford is a Connecticut corporation with its principal place of business in Connecticut.

3. Defendant Scott Bursor is a natural person and a citizen of Florida. *See* Notice of Removal of Civil Action at 2, *Parker v. Bursor, et al.*, No. 1:24-cv-00245 (S.D.N.Y. Jan. 11, 2024), ECF No. 1.

4. Defendant B&F is a professional corporation incorporated in the state of Florida with its principal place of business in Florida or California. As such, B&F would be a citizen of Florida or Florida and California.

5. Defendant B&F also, however, holds itself out as a partnership and may be, as discussed more fully below, deemed a partnership by estoppel, in which case it has listed partners in California, New York, and Florida.

6. In any event, as Plaintiff and Defendants are citizens of different states, the parties are completely diverse, and so this Court has subject matter jurisdiction over this matter.

## **PERSONAL JURISDICTION AND VENUE**

7. This Court has personal jurisdiction over both Defendants.

8. "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Civ. Proc. Code § 410.10).

9. Defendant Scott Bursor is a California-licensed attorney, with State Bar No. 276006, having been barred in California since May 18, 2011, and is also a member of the bar of the Northern District of California. He has generally appeared as counsel of record for a number of matters in this judicial district for various clients, including current representation in matters which remain ongoing, and holds himself out as licensed to practice in California generally and before this Court specifically. *See, e.g.*, *Scott A. Bursor*, BURSOR & FISHER P.A., https://www.bursor.com/team/scott-a-bursor/ ("Scott is a member of the state bars of . . . California . . . and the bars of the United States District Courts for . . . the Northern, Eastern, Central, and Southern Districts of California.") (last visited July 29, 2025).

10. Defendant B&F maintains an office in California at 1990 North California Boulevard, Walnut Creek, California, 94596, within this Court's judicial district.

11. Defendant B&F holds itself out as a partnership with several partners in California. Defendant B&F is managed by Mr. L. Timothy Fisher, *i.e.*, the "Fisher" in Bursor & Fisher., P.A. Mr. Fisher is the listed managing partner for the firm's California office at 1990 North California Boulevard, Walnut Creek, California, 94596. *See, e.g., L. Timothy Fisher*, BURSOR & FISHER P.A., www.bursor.com/team/l-timothy-fisher/ ("L. Timothy Fisher is the Managing Partner of Bursor & Fisher's California office.") (last visited July 29, 2025).

12. Upon information and belief, Defendant B&F maintains bank account(s) in California.

13. Defendants Scott Bursor and B&F engage in regular business in California, including in this Court's judicial district.

14. As related to Hartford's causes of action, this matter stems from six insurance policies issued by Hartford to Defendant B&F, issued on annual bases from August 4, 2018 to August 4, 2024 (the "Hartford Policies").

15. Defendant B&F purchased the Hartford Policies from its California office through its agent, Diablo Valley Insurance Agency, Inc., an insurance broker based in Walnut Creek, California. Subject to the terms, conditions, limits and exclusions, Mr. Bursor is insured under the Hartford Policies in his role as an "executive officer" of Defendant B&F, but only with respect to his duties as Defendant B&F's officer, director, and/or stockholder of Defendant B&F.

16. Defendants sent notice of the Underlying Action to Hartford via their California-based broker, Diablo Valley Insurance Agency, Inc.

17. Hartford issued the first four of the Hartford Policies to Defendant B&F at its California office, *i.e.*, 1990 North California Boulevard, Walnut Creek, California, 94596.

18. Hartford also issued the fifth Hartford Policy to Defendant B&F at its California office, *i.e.*, 1990 North California Boulevard, Walnut Creek, California, 94596. During the pendency of that policy period, the insured's listed address was changed to Defendant B&F's Miami office. Hartford issued the sixth Hartford Policy to Defendant B&F at its Miami office, which was solicited through the California-based broker, Diablo Valley Insurance Agency, Inc.

19. Each of the six Hartford Policies covers 1990 North California Boulevard, Walnut Creek, California, 94596 as an insured location, insuring both property and operations at that California office, as more fully set forth by the Hartford Policies' respective terms.

20. Each of the Hartford Policies contains "California Changes" and "Amendment of Conditions – California" endorsements to conform the terms of the Hartford Policies to the requirements of California law.

21. In short, the controversy with both Defendants arises out of their demand for current and future performance under insurance policies that (1) were solicited by Defendant B&F through a California broker, (2) were issued to Defendant B&F at its California office, (3) cover California property and operations, and (4) contain California endorsements.

22. Defendants B&F and Scott Bursor have both demanded a defense and asserted a right to indemnification for the Underlying Action under all the Hartford Policies, including the five Hartford Policies solicited by and/or issued to Defendant B&F at its office in California.

23. Additionally, as relevant to this litigation, Defendants directed Hartford to pay the settlement amounts for which Hartford seeks recovery to an escrow agent in San Diego, California, which payment Hartford made via a check that cleared by July 28, 2025.

24. Accordingly, both Defendants have established sufficient contacts with California to sustain personal jurisdiction over them for this controversy, and this controversy arises out of those contacts. *See, e.g., McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957) ("Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."); *Safe-Lab, Inc. v. Weinberger*, 238 Cal. Rptr. 712, 714 (Cal. Ct. App. 1987) ("Where the cause of action asserted against the defendant is based on a contract, the making and performance of that contract in California will be sufficient to sustain jurisdiction even if the defendant has no other California contacts.").

25. Additionally, Defendants have purposefully availed themselves of conducting activities in California, having performed affirmative conduct which allows or promotes the

transaction of business within California, including by demanding performance and coverage under California-issued insurance contracts and by otherwise engaging in regular business dealings in California for over a decade.

26. Moreover, "California has a strong interest in seeing its laws applied to a dispute arising out of an insurance contract issued in California." *E.g.*, *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, No. 2:17-cv-08660-AB (JCx), 2018 WL 3326670, at *7 (C.D. Cal. Mar. 27, 2018) (citing *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006)).

27. This Court is also a proper venue pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3), as a substantial part of the events or omissions giving rise to the claim occurred in California and specifically in this judicial district (*i.e.*, as relates to the Hartford Policies), or because the Defendants are subject to personal jurisdiction in this Court.

28. Pursuant to Civil L.R. 3-2(c), assignment to the San Francisco or Oakland Division is proper because Defendant B&F has its office at 1990 North California Boulevard, Walnut Creek, California, 94596, the Hartford Policies were issued to and cover operations at that address by a Walnut Creek-based insurance broker, and because otherwise a substantial part of the acts or omissions occurred therein.

## FACTUAL BACKGROUND

29. Defendant B&F is an incorporated professional association under the laws of Florida. *See* Exhibit 1 (Jan. 29, 2025 annual report of Bursor & Fisher, P.A. as filed with the Florida Secretary of State); Exhibit 2 (Apr. 3, 2025 annual report of Bursor & Fisher, P.A. as filed with the California Secretary of State).

30. Defendant B&F, however, asserted in the Underlying Action that it is an unincorporated professional association, and Defendant B&F holds itself out as a partnership on its website and elsewhere, with Defendant Scott Bursor holding himself out as a "founding Partner" of Defendant B&F. *See, e.g.*, *Privacy Policy*, BURSOR & FISHER, P.A., https://www.bursor.com/privacy-terms/ ("All data is controlled by Bursor & Fisher, P.A., a US-based Professional Association partnership based at 1330 Avenue of the Americas, New York, NY

10019.") (last visited July 29, 2025); *Bursor & Fisher Announces New Partner, Alec M. Leslie,* BURSOR & FISHER, P.A. (Dec. 17, 2021), https://www.bursor.com/bursor-fisher-announces-new-partner-alec-m-leslie/ (referring to "founding Partner, Scott Bursor.").

31. Thus, Defendant B&F is also considered a partnership, or otherwise deemed a partnership by estoppel.

32. Defendant Scott Bursor is the listed President of Defendant B&F in Defendant B&F's articles of incorporation and continuing annual filings in the state of Florida, *see* Exhibit 1, and Defendants affirmatively averred and declared the same in their public filings in the Underlying Action.

33. Additionally, according to the most recent and prior filings for Defendant B&F as recorded with the California Secretary of State, Defendant Scott Bursor is the CEO and CFO of Defendant B&F. *See* Exhibit 2.

34. Both Defendant Scott Bursor and Defendant B&F were named as defendants in the Underlying Action.

35. According to the publicly available Westlaw citation, the Underlying Action "advances causes of action for violations of the New York City Victims of Gender Motivated Violence Act, battery, and intentional infliction of emotional distress against Defendants." *Parker v. Bursor,* No. 24-CV-0245 (JGLC) (RFT), 2024 WL 4850815, at *1 (S.D.N.Y. Nov. 21, 2024).

36. As noted *supra*, Hartford issued the Hartford Policies to Defendant B&F for sequential policy years.

37. Defendants contend that the Hartford Policies provide coverage for the Underlying Action and, beginning in February of 2024, Defendants demanded a defense and indemnification under the Hartford Policies for the Underlying Action.

38. Hartford provided a defense for the Underlying Action under a reservation of rights.

39. That reservation from Hartford, which was addressed to Defendant Scott Bursor to receive on behalf of his law firm, Defendant B&F, stated, *inter alia*: "We reserve the right to seek reimbursement from other carriers, or from the Firm as appropriate, for any and all monies paid

toward settlement of or judgment in this matter and/or all other expenses and payments for which it is later determined that there is no potential for coverage." In that same letter, Hartford stated: "Should The Hartford assert and prevail on any reservations, it does not waive its rights, if any, to seek and demand reimbursement for any payments paid either to Bursor, other carriers, or otherwise in connection with the Lawsuit."

40. Hartford has otherwise iterated it was reserving its rights to recovery through various communications. Defendants have disputed that any amounts are due to Hartford but otherwise acknowledged that Hartford was reserving "any right that it believes it has."

41. Hartford offered a selection of defense counsel for the Underlying Action. However, Defendants instead selected their own defense counsel for the Underlying Action and declined Hartford's selection of defense counsel.

42. Hartford previously audited the invoices of the Defendants' selected defense counsel's fees and made various adjustments.

43. Defendants objected to those adjustments and demanded Hartford make payment in full for all invoices for the Defendants' selected defense counsel.

44. Hartford made the Defendants' demanded payment in full pursuant to Hartford's reservation of rights.

45. At Defendants' request, Hartford further agreed pursuant to its reservation of rights to pay to settle the Underlying Action.

46. Hartford tendered settlement authority requested by Defendants and Defendants, through their chosen counsel, effectuated a settlement with those funds.

47. The final settlement between Underlying Defendants has been signed and effectuated. Hartford, pursuant to its reservation of rights, has tendered payment for that settlement, as Defendants demanded.

48. Hartford paid an amount in excess of $75,000 pursuant to its reservation of rights; the total costs Hartford seeks in this action exceeds $75,000.

49. There are ripe controversies among the parties.

**COUNT I: UNJUST ENRICHMENT**

50. Hartford incorporates paragraphs 1 through 49 as if pled herein.

51. In *Buss v. Superior Court*, 16 Cal. 4th 35, 51, 939 P.2d 766, 777 (1997), the California Supreme Court clarified that, in accordance with prior case law, an insurer may bring a claim for unjust enrichment against an insured which has received the benefit of a defense for claims which are not covered by the relevant insurance policy.

52. The allegations in the Underlying Action did not fall within the scope of the risk for which Defendant Scott Bursor qualified as an insured under any of the Hartford Policies.

53. The allegations in the Underlying Action also involved uncovered intentional conduct by Defendant Scott Bursor. *See, e.g., Bursor*, 2024 WL 4850815, at *1.

54. There were no negligence causes of action pleaded in the Underlying Action. *Id.*

55. Because Defendant Scott Bursor is the President and sole owner – if not also CEO and CFO – of Defendant B&F, his intent and knowledge is imputed onto Defendant B&F.

56. The allegations in the Underlying Action are not covered by the terms of the Hartford Policies.

57. Additionally, the allegations in the Underlying Action are uninsurable as a matter of public policy.

58. Hartford, accordingly, has and had no duty to defend the Defendants against the Underlying Action. Yet, Defendants continually demanded performance anyway under threat of legal action.

59. Additionally, Hartford has and had no duty to indemnify Defendants against the Underlying Action. There is and was no duty to defend and the allegations if true would not support a covered cause of action under the Hartford Policies or as a matter of law and public policy.

60. Hartford, under a reservation of rights, including the right to seek reimbursement, has extended a benefit to Defendants by paying for the defense and settlement of the Underlying Action, as neither Defendant was nor is entitled to any defense or indemnification against the Underlying Action under the Hartford Policies.

61. Defendants have both retained benefits from Hartford's provided defense and settlement, at Hartford's expense.

62. Defendants are not and were not entitled to retain that benefit and have been unjustly enriched.

63. Hartford is therefore entitled to full restitution and reimbursement from Defendants for the costs paid by Hartford as relates to the Underlying Action, and disgorgement for any other benefits received as a result of the benefits retained from those payments.

## COUNT II: QUASI CONTRACT – SPECIFIC PERFORMANCE AND REIMBURSEMENT

64. Hartford incorporates paragraphs 1 through 63 as if pled herein.

65. Hartford issued a reservation of rights letter to Defendant B&F, which was addressed to Defendant Scott Bursor, in which Hartford expressly stated it was providing a defense conditioned on a right to reimbursement for any uncovered claims, stating: "We reserve the right to seek reimbursement from other carriers, or from the Firm as appropriate, for any and all monies paid toward settlement of or judgment in this matter and/or all other expenses and payments for which it is later determined that there is no potential for coverage." In that same letter, Hartford stated: "Should The Hartford assert and prevail on any reservations, it does not waive its rights, if any, to seek and demand reimbursement for any payments paid either to Bursor, other carriers, or otherwise in connection with the Lawsuit."

66. Further, in that letter, Hartford generally stated: "This communication is not intended to be and should not be construed as an exhaustive listing of all policy terms and conditions that may apply to this matter. The Hartford hereby reserves all its rights, positions and defenses in this matter. Neither this communication, nor any prior or subsequent communications, should be construed as a waiver of any rights, positions or defenses held by The Hartford." In its denial letter to Defendant Scott Bursor, Hartford also included an identical statement as the one quoted in this paragraph.

67. As stated above, Hartford otherwise iterated it was reserving its rights to recovery through various communications. Defendants have disputed that any amounts are due to Hartford but otherwise acknowledged that Hartford was reserving "any right that it believes it has."

68. By accepting a defense and settlement payments subject to Hartford's right to seek reimbursement, Defendant B&F necessarily agreed to reimburse Hartford for any and all defense costs for claims not covered by the Hartford Policies, resulting in a contract implied in law.

69. Hartford did not bargain for the costs in defending the Underlying Action and did not receive premiums to defend claims such as those in the Underlying Action.

70. None of the claims in the Underlying Action are covered by the Hartford Policies.

71. Hartford is entitled to reimbursement for the costs it has paid under reservation of rights for the Underlying Action, including all defense and settlement costs.

72. Specific performance is justified because Defendants have stated implicitly and outright that they will not reimburse Hartford for past, current, or future expenditures, despite Hartford's reservation of rights and continuous payment for the defense of the Underlying Action.

73. Defendants have expressly stated they "adamantly disagree that Hartford has any right to recoupment or that any of the costs were incurred solely for purportedly non-covered claims but acknowledge that Hartford is reserving any right that it believes it has."

74. Accordingly, Hartford requests this Court to order Defendants to specifically perform this reimbursement obligation, or otherwise order the same as restitution or damages, to be paid to Hartford for past, current, and future defense and settlement expenses and all other payments paid by Hartford as relates to the Underlying Action.

## **COUNT III: DECLARATORY JUDGMENT**

75. Hartford incorporates paragraphs 1 through 74 as if pled herein.

76. The Hartford Policies do not provide any coverage for the Underlying Action, by their terms and as a matter of law and public policy.

77. Alternatively, the Hartford Policies do not provide coverage for at least some of the Underlying Action, by their terms and as a matter of law and public policy.

78. Defendants have demanded a defense and indemnity for the Underlying Action under the Hartford Policies.

79. To the extent Hartford had an obligation to pay some portion of the defense costs for the Underlying Action, Hartford is only liable for the reasonable and necessary defense costs.

80. Defendants, however, have objected to all adjustments of the defense costs, instead demanding payment in full for all disputed amounts.

81. Accordingly, if Hartford were liable for some portion of the defense or settlement of the Underlying Action, an accounting is necessary both so that Hartford does not pay for portions not covered by its policies, and so that Hartford does not overpay for unnecessary and unreasonable fees and expenses as Hartford has done to date at Defendants' insistence and under continuing threats of litigation.

82. Hartford has expressed that the Underlying Action is not covered under the Hartford Policies; Defendants maintain their position that the Underlying Action is covered under the Hartford Policies.

83. A live controversy between the parties therefore exists and is ripe for resolution.

84. Hartford accordingly seeks a declaration of the rights and duties under the Hartford Policies as relates to the Underlying Action.

**COUNT IV: IN THE ALTERNATIVE – ACCOUNTING TO PREVENT UNJUST ENRICHMENT**

85. Hartford incorporates paragraphs 1 through 84 as if pled herein.

86. To the extent the Court determines Hartford is liable for some portion of the defense of the Underlying Action, Hartford would in the alternative be entitled to an accounting.

87. To date, the defense costs proffered by Defendants have been excessive to the needs of the case.

88. Hartford is only liable, if at all, for reasonable and necessary defense costs for covered claims.

89. Any amounts paid over the reasonable and necessary defense costs for covered claims resulted in an unjust enrichment to Hartford's detriment.

90. Additionally, Hartford has paid defense costs and settlement costs for uncovered claims, pursuant to its reservation of rights, which resulted in an unjust enrichment to Hartford's detriment.

91. Accordingly, to the extent that the Court determines any portion of the defense costs or settlement of the Underlying Action are properly due from Hartford, Hartford would in that circumstance be entitled to an accounting of costs and reimbursement for the amounts it has already overpaid to date.

## PRAYER FOR RELIEF

Hartford respectfully requests that the Court:

1. Declare that Hartford has no coverage obligations – defense or indemnity – for the Underlying Action under the Hartford Policies;
2. Award Hartford restitution and disgorgement from Defendants, with interest;
3. Order Defendant B&F to specifically perform its reimbursement obligations, or otherwise pay the same as damages or restitution, to Hartford, with interest;
4. In the alternative, order an accounting of the reasonable and necessary amounts for the defense of the Underlying Action and grant Hartford reimbursement for the amounts it has overpaid and/or paid for uncovered claims to date;
5. Award Hartford its fees and costs for this litigation; and
6. Grant Hartford any other appropriate relief as the Court determines to be warranted.

Hartford respectfully demands a jury trial for all issues so triable.

July 29, 2025

Respectfully submitted,

/s/ *Matthew J. Antonelli*

RUGGERI PARKS WEINBERG LLP
Matthew J. Antonelli (Bar No. 343144)
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel: (415) 429-0998
Fax: (202) 984-1401
mantonelli@ruggerilaw.com

*Attorney for Plaintiff*