**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut corporation, <br><br> Plaintiff, <br><br> v. <br><br> BURSOR & FISHER, P.A., and SCOTT BURSOR, <br><br> Defendants. | Case No.: 1:25-cv-10000-AT-VF <br><br> **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Hon. Analisa Torres |

Plaintiff Sentinel Insurance Company, Limited ("Hartford") brings this Amended Complaint seeking equitable and other relief from Defendants Bursor & Fisher, P.A. ("B&F") and Scott Bursor. Hartford seeks restitution, disgorgement, reimbursement and/or compensatory damages, punitive damages, specific performance, and declaratory relief, arising from certain insurance policies issued by Hartford to Defendant B&F and the costs paid by Hartford to defend and settle the litigation styled *Parker v. Bursor, et al.*, No. 1:24-cv-00245 (S.D.N.Y.) (the "Underlying Action").

## SUBJECT MATTER JURISDICTION

1.     This Court has jurisdiction over this matter because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Hartford specifically is seeking restitution, disgorgement, reimbursement and/or damages in excess of $75,000, exclusive of interest and costs.

2.     Plaintiff Hartford is a Connecticut corporation with its principal place of business in Connecticut.

3.      Defendant Scott Bursor is a natural person and a citizen of Florida. *See* Notice of Removal of Civil Action at 2, *Parker v. Bursor, et al.*, No. 1:24-cv-00245 (S.D.N.Y. Jan. 11, 2024), ECF No. 1.

4.      Defendant B&F a professional corporation incorporated in the state of Florida with its principal place of business in Florida or California. As such, B&F would be a citizen of Florida or Florida and California.

5.      In any event, as Plaintiff and Defendants are citizens of different states, the parties are completely diverse, and so this Court has subject matter jurisdiction over this matter.

## PERSONAL JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over both Defendants, and venue is proper.

7.      Defendants moved to transfer venue to this Court under 28 U.S.C. § 1404(a), thereby necessarily arguing, and actually arguing, that this Court has personal jurisdiction over, and is a proper venue for, both Defendants.

8.      Defendants expressly consented to jurisdiction in this Court in their briefs arguing transfer, and insofar as transfer has been granted, are judicially estopped from contesting jurisdiction as well. ECF No. 29 at 2:11–13 ("Finally, Hartford's baseless implication that Defendants would challenge jurisdiction in SDNY for this action based on its challenge in the underlying action is misguided. Nonetheless, Defendants, by seeking transfer, consent to jurisdiction in SDNY.") (emphasis omitted).

9.      This Court is also a proper venue pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3), at minimum because the Defendants consented to and are subject to personal jurisdiction in this Court.

10.     As related to Hartford's causes of action, this matter stems from six insurance policies issued by Hartford to Defendant B&F, issued on annual bases from August 4, 2018 to August 4, 2024 (the "Hartford Policies").

11.     Defendant B&F purchased the Hartford Policies from its California office through its agent, Diablo Valley Insurance Agency, Inc., an insurance broker based in Walnut Creek, California. Subject to the terms, conditions, limits and exclusions, Mr. Bursor is insured under the Hartford Policies in his role as an "executive officer" of Defendant B&F, but only with respect to his duties as Defendant B&F's officer, director, and/or stockholder of Defendant B&F. Upon information and belief, pursuant to Defendant B&F's filings with the Florida secretary of state (the state in which Defendant B&F is incorporated), Scott Bursor is the sole executive officer of Defendant B&F. *See*, *e.g.*, ECF No. 1-1.

12.     Defendants sent notice of the Underlying Action to Hartford via their California-based broker, Diablo Valley Insurance Agency, Inc.

13.     Hartford issued the first four of the Hartford Policies to Defendant B&F at its California office, *i.e.*, 1990 North California Boulevard, Walnut Creek, California, 94596.

14.     Hartford also issued the fifth Hartford Policy to Defendant B&F at its California office, *i.e.*, 1990 North California Boulevard, Walnut Creek, California, 94596. During the pendency of that policy period, the insured's listed address was changed to Defendant B&F's Miami office. Hartford issued the sixth Hartford Policy to Defendant B&F at its Miami office, which policy was again solicited through the California-based broker, Diablo Valley Insurance Agency, Inc.

15.     Defendants B&F and Scott Bursor both demanded a defense and asserted a right to indemnification for the Underlying Action under all the Hartford Policies.

16.     Additionally, as relevant to this litigation, Defendants directed Hartford to pay the settlement amounts for which Hartford seeks recovery to their joint escrow agent in San Diego, California, which payment Hartford made via a check that cleared by July 28, 2025.

**FACTUAL BACKGROUND**

17.     Defendant B&F is an incorporated professional association under the laws of Florida.  *See* ECF No. 1-1 (Jan. 29, 2025 annual report of Bursor & Fisher, P.A. as filed with the Florida Secretary of State); ECF No. 1-2 (Apr. 3, 2025 annual report of Bursor & Fisher, P.A. as filed with the California Secretary of State).

18.     Defendants, however, wrongly asserted in the Underlying Action that Defendant B&F is an unincorporated professional association; Defendant B&F also generally holds itself out as a partnership on its website and elsewhere, with Defendant Scott Bursor holding himself out as a "founding Partner" of Defendant B&F.  *See, e.g.*, *Privacy Policy*, BURSOR & FISHER, P.A., https://www.bursor.com/privacy-terms/ ("All data is controlled by Bursor & Fisher, P.A., a US-based Professional Association partnership based at 1330 Avenue of the Americas, New York, NY 10019.") (last visited July 29, 2025); *Bursor & Fisher Announces New Partner, Alec M. Leslie,* BURSOR & FISHER, P.A. (Dec. 17, 2021), https://www.bursor.com/bursor-fisher-announces-new-partner-alec-m-leslie/ (referring to "founding Partner, Scott Bursor.").

19.     Thus, Defendant B&F is also considered a partnership, or otherwise deemed a partnership by estoppel.

20.     Defendant Scott Bursor is the listed President of Defendant B&F in Defendant B&F's articles of incorporation and continuing annual filings in the state of Florida, *see* ECF No. 1-1, and Defendants affirmatively averred and declared the same in their public filings in the

4

Underlying Action.  All of the public corporate filings of Defendant B&F in Florida, Defendant B&F's state of incorporation, show only Defendant Scott Bursor as a corporate officer.

21.    Before transfer, Defendants re-confirmed Defendant Scott Bursor is the sole owner of Defendant B&F.  ECF No. 37 at 2 ("Bursor & Fisher, P.A. is wholly owned by Defendant Scott A. Bursor.").

22.    Additionally, according to the various filings for Defendant B&F as recorded with the California Secretary of State, Defendant Scott Bursor is the CEO and CFO of Defendant B&F.  *See* ECF No. 1-2.

23.    Both Defendant Scott Bursor and Defendant B&F were named as defendants in the Underlying Action.

24.    According to the publicly available Westlaw citation, the Underlying Action "advance[d] causes of action for violations of the New York City Victims of Gender Motivated Violence Act, battery, and intentional infliction of emotional distress against Defendants." *Parker v. Bursor,* No. 24-CV-0245 (JGLC) (RFT), 2024 WL 4850815, at *1 (S.D.N.Y. Nov. 21, 2024).

25.    The Underlying Action was brought by the underlying plaintiff "for the emotional, physical and sexual abuse she suffered at the hands of the Defendant [Scott Bursor] beginning in or about July 2020." *See* Exhibit D at 3, *Parker v. Bursor, et al.*, No. 1:24-cv-00245 (S.D.N.Y. Jan. 11, 2024), ECF No. 1-4.[1]

26.    As noted *supra*, Hartford issued the Hartford Policies to Defendant B&F for sequential policy years, from August 4, 2018 to August 4, 2024.

---

[1]    For clarity, "Exhibit D" is the name of the exhibit from the underlying action and is available on PACER; it is not an attached exhibit to this document.

27.     Defendants contend that the Hartford Policies provide coverage for the Underlying Action and, beginning in February of 2024, Defendants demanded a defense and indemnification under the Hartford Policies for the Underlying Action.

28.     Hartford provided a defense for the Underlying Action under a reservation of rights, including for repayment or reimbursement for all tendered defense costs incurred by either of the Defendants.

29.     That reservation from Hartford, which was addressed to Defendant Scott Bursor to receive on behalf of his law firm, Defendant B&F, stated, *inter alia*: "We reserve the right to seek reimbursement from other carriers, or from the Firm as appropriate, for any and all monies paid toward settlement of or judgment in this matter and/or all other expenses and payments for which it is later determined that there is no potential for coverage." ECF No. 49-5 at 5. In that same letter, Hartford stated: "Should The Hartford assert and prevail on any reservations, it does not waive its rights, if any, to seek and demand reimbursement for any payments paid either to Bursor, other carriers, or otherwise in connection with the Lawsuit." ECF No. 49-5 at 7.

30.     Hartford has otherwise iterated it was reserving its rights to recovery through various communications. Defendants have disputed that any amounts are due to Hartford but otherwise acknowledged that Hartford was reserving "any right that it believes it has." ECF No. 49-9 at 2.

31.     Hartford offered a selection of defense counsel for the Underlying Action. However, Defendants instead selected their own defense counsel for the Underlying Action and declined Hartford's selection of defense counsel.

32.     Hartford previously audited the invoices of the Defendants' selected defense counsel's fees and Hartford made various adjustments to those fees.

6

33.     Defendants objected to Hartford's adjustments and demanded Hartford make payment in full for all invoices for the Defendants' selected defense counsel.

34.     Hartford made the Defendants' demanded payment to Defendants' selected defense counsel in full expressly pursuant to Hartford's reservation of rights.  ECF No. 49-9 at 3 ("Hartford's agreement to fund the settlement and to pay the disputed fees at this time is subject to Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit.").

35.     At Defendants' request, Hartford further agreed pursuant to its reservation of rights to pay to settle the Underlying Action.  *Id.*

36.     Hartford tendered settlement authority requested by Defendants and Defendants, through their chosen counsel, effectuated a settlement with those funds.

37.     Defendants have also contended that they "rejected" Hartford's reservation of rights; however, even if such "rejection" had legal effect (and it does not), Defendants plainly waived their "rejection" by accepting the complete defense by Hartford.

38.     Defendants otherwise waived that rejection, if any, and agreed to Hartford's ability to seek restitution.

39.     Hartford expressly conditioned its agreement to extend settlement authority and to pay the disputed fee amounts "subject to Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit."  ECF No. 49-9 at 3.

40.     Hartford specifically stated on June 6, 2025:

> Hartford's agreement to fund the settlement and to pay the disputed fees at this time is subject to Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit.  If Bursor & Fisher, P.A. does not wish to settle the lawsuit

at this time, it has the right to decline the settlement and assume its own defense. Please let us know how Bursor & Fisher would like to proceed.

*See* Defendants' Notice of Motion and Motion to Dismiss the Complaint or, in the Alternative, Transfer Venue at 7, ECF No. 17; ECF No. 49-9 at 3.

41.    Defendants accepted Hartford's offer, which Hartford condition on its ability to recover all payments it made towards the settlement and any uncovered defense costs, with Defendants responding in turn on June 6, 2025:

> Thank you for authority of up to [settlement authority].  Christine will proceed with that authority and engage Plaintiff's counsel with an offer within that authority.  Of course, the goal will be to get the most favorable settlement obtainable in short order.
>
> We further appreciate Hartford's agreement to pay the disputed amounts in full. Please confirm that Hartford will continue to pay, in full, defense costs incurred through execution of any settlement, including invoices submitted to Hartford but not yet reimbursed.
>
> Regarding Hartford's so-called reservation of rights, we adamantly disagree that Hartford has any right to recoupment or that any of the costs were incurred solely for purportedly non-covered claims but acknowledge that Hartford is reserving any right that it believes it has.  Bursor & Fisher, and Mr. Bursor, likewise reserve their rights under the Policy, at equity, and under the law.
>
> We will keep you informed about the progress of settlement negotiations throughout the day and over the next few days. We are hopeful, like Hartford, that this matter will be resolved.
>
> If you have any questions, please feel free to reach out.

ECF No. 49-9 at 2.

42.    In short, (1) Defendants acknowledged Hartford's offer to fund the settlement and pay outstanding defense costs subject to Defendants agreeing to reimburse Hartford for the settlement amount and all defense costs it has paid that are attributable to the non-covered claims in the underlying action, (2) Defendants accepted and expressed assent to those terms by taking the money offered by Hartford conditioned on those terms, and (3) Defendants did not anywhere

8

reject those terms, but instead expressly "acknowledge[d] that Hartford [wa]s reserving any right that it believes it has."

43. That is to say, Defendants recognized "Hartford's agreement to pay the disputed amounts in full" and Hartford made clear that "Hartford's agreement to fund the settlement and to pay the disputed fees at this time is subject to Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit."

44. Defendants did not object to these conditions of payment at any point before Hartford's payment of the disputed amounts of defense costs or the settlement.

45. Further, the sums Hartford offered and paid were not due at least in part under the Hartford Policies insofar as the claims being settled and defended at a minimum and indisputably included uninsurable intentional conduct and claims for punitive damages; thus, those payments constituted separate consideration for the agreement that Defendants would fully reimburse Hartford for the settlement amount and that Hartford could seek reimbursement from Defendants for all defense costs it has paid that are attributable to the non-covered claims in the underlying action.

46. Accordingly, Hartford and Defendants have an express contract, separate from any insurance policy, that Hartford would be entitled to seek reimbursement from Defendants for (i) the full amount of the settlement and (ii) separately, all defense costs it has paid that are attributable to the non-covered claims in the lawsuit.

47. Additionally, any rejection or objection by Defendants to Hartford's prior reservation of rights letters was waived by Defendants' continually taking Hartford's monies which were expressly paid pursuant to Hartford's reservations of rights.

48. The final settlement between Underlying Defendants has been signed and effectuated. Hartford, pursuant to its reservations of rights and its separate contract with Defendants, has tendered payment for that settlement in California, as Defendants demanded. Hartford also paid all outstanding disputed defense costs in full, as Defendants demanded.

49. Additionally, each of the Hartford Policies, in their Business Liability Coverage Form, contains the following "**Transfer Of Rights Of Recovery**" provision stating as follows:

> If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to apply to Medical Expenses Coverage.

ECF No. 18-24 at 77

50. Each of the Hartford Policies, in the Umbrella Liability Provisions, also contains the following "**Transfer of Rights Of Recovery Against Others To Us**" provision:

> If the "insured" has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after a loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

ECF No. 18-24 at 189

51. These provisions, which are conventional subrogation provisions, entitle Hartford to the "rights to recover all or a part of any payment" Hartford made under the Hartford Policies.

52. Defendants have judicially admitted that Defendant B&F was the sole defendant in the Underlying Action that Hartford defended. *E.g.*, Defendants' Notice of Motion and Motion to Dismiss the Complaint or, in the Alternative, Transfer Venue at 4:21–23, ECF No. 17 ("Having not provided coverage to Mr. Bursor (in breach) [*sic*], it is difficult to comprehend a scenario where Hartford could be permitted to recoup insurance payments it made on another insured's behalf."); *id.* at 23:8 ("Hartford completely defended Bursor & Fisher (as it denied coverage as to Mr. Bursor)"); *id.* at 24:4–8 ("Hartford would not be entitled to reimbursement

10

from Mr. Bursor [*sic*] because it neither defended Mr. Bursor nor reserved any purported right to do so. [*sic*] . . . had Hartford defended and/or indemnified Mr. Bursor, Hartford would not be permitted to recover those costs [*sic*] because nothing in the policy allows it do so.").

53.     Defendant B&F had "rights to recover" against Defendant Scott Bursor for, *inter alia*, contribution and indemnification insofar as Defendant Scott Bursor was and is an employee of Defendant B&F at all times relevant to the Underlying Action, and for breach of fiduciary duty, insofar as Defendant Scott Burosr was and is the executive officer, including the corporate president, of Defendant B&F at all times relevant to the Underlying Action.

54.     Thus, to the extent Hartford cannot recover the payments it made through restitution, Hartford is and remains entitled to prosecute Defendant Scott Bursor for the same rights of recovery Defendant B&F would otherwise have against Defendant Scott Bursor.

55.     Additionally, New York's anti-subrogation rule, to the extent it applies in this case at all (and it should not, as California and/or Florida law should apply, as those are the states in which the Hartford Policies were issued and where Defendants are incorporated and principally located), including to the extent New York's anti-subrogation rule applies to override express conventional subrogation provisions, would nevertheless not apply here, as Defendant Scott Bursor is not an insured for the acts alleged in the Underlying Action and, separately, because those risks also were not covered by the policies. *E.g.*, *Millennium Holdings LLC v. Glidden Co.*, 27 N.Y.3d 406, 416, 53 N.E.3d 723, 729 (2016) ("The essential element of the antisubrogation rule is that the party to which the insurer seeks to subrogate is covered by the relevant insurance policy.  The rule also requires that the insurer seek to enforce its right of subrogation against that covered party on a risk insured by the policy").

11

56. Defendant Scott Bursor was not insured for the allegations in the Underlying Action because, *inter alia*, (i) Defendant Scott Bursor was only insured under the Hartford Policies for a limited purpose and the Underlying Action fell outside the scope of that risk (the Hartford Policies insured Defendant B&F's "executive officers" and directors, "but only with respect to their duties as your [Defendant B&F's] officers or directors."), and (ii) because Defendant Scott Bursor's decidedly intentional conduct as alleged was not only excluded, but uninsurable as a matter of public policy. Thus, the antisubrogation rule does not apply. *E.g., Millennium; N. Star Reinsurance Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 296, 624 N.E.2d 647, 654 (1993) ("Thus, we conclude that the antisubrogation rule applies to bar the insurers' subrogation claims against the contractors in *Prince* and *Valentin*. However, we agree with the Appellate Division in *North Star* that, because exclusions in the GCL [general contractors' liability insurance] rendered that policy inapplicable to the loss, the antisubrogation rule does not apply in that case.").

57. And, as Defendants have judicially admitted, Hartford denied coverage to, and did not defend, Defendant Scott Bursor. Defendants' Notice of Motion and Motion to Dismiss the Complaint or, in the Alternative, Transfer Venue at 4:21–23, ECF No. 17; *Id.* at 23:8; *Id.* at 24:4–8.

58. In sum, even if New York's anti-subrogation rule applied, and it does not, Defendant Scott Bursor nevertheless was not insured or otherwise covered for the Underlying Action, and so the anti-subrogation rule would not prevent Hartford from suing Defendant Scott Bursor with the rights it gained through subrogation in having paid for Defendant B&F.

59. The total costs Hartford seeks from Defendants in this action exceeds $75,000.

60. There are ripe controversies among the parties.

12

## COUNT I:  UNJUST ENRICHMENT

61.      Hartford incorporates paragraphs 1 through 60 as if pled herein.

62.      In *Buss v. Superior Court*, 16 Cal. 4th 35, 51, 939 P.2d 766, 777 (1997), the California Supreme Court clarified that, in accordance with prior case law, an insurer may bring a claim for unjust enrichment against an insured which has received the benefit of a defense for claims which are not covered by the relevant insurance policy.

63.      Either California or Florida law – the states where the policies were issued and where Defendants reside, or are incorporated and/or headquartered, respectively – should apply to Hartford's unjust enrichment claims.  *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 444 (S.D.N.Y. 2010) ("In determining the law applicable to unjust enrichment claims, New York courts determine which jurisdiction has the most significant contacts with the agreement in question.").  California law (and, if relevant, the laws of Florida and New York, too) allows for an insurer to seek reimbursement for uncovered claims, especially when it would also be against public policy to insure those claims.

64.      To be sure, Defendants have acknowledged and judicially admitted that Hartford's payments were made in New Jersey (to the New Jersey-based defense counsel), Florida (to Defendants), and California (to Defendants and the underlying plaintiff's joint escrow agent). *E.g.*, ECF No. 29 at 6:6–8  ("Hartford's payments went to Bursor & Fisher in Florida and their defense counsel in New Jersey [as well as] the escrow agent to whom Hartford tendered the indemnity payment . . .").

65.      All of New Jersey, Florida, and California expressly allow reimbursement to an insurer for uncovered claims, and alongside California, the New Jersey and Florida courts have favorably cited and adopted the logic of *Buss*.  *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super.

260, 279, 851 A.2d 75, 86 (App. Div. 2004) ("the right of reimbursement exists because the insured would be unjustly enriched in benefiting by, without paying for, the defense of a non-covered claim. *See Buss v. Superior Court,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, 776–78 (1997)."); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1038–39 (Fla. Dist. Ct. App. 2000) (citing "[t]he California Supreme Court . . . in *Buss v. Superior Court*" and adopting *Buss*, stating "[the insured] G & E ought in fairness make [the insurer] Colony whole, now that it has been judicially determined that no duty to defend ever existed.  A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered . . . G & E's acceptance of the defense Colony offered to finance manifested acceptance of the terms on which Colony's offer to pay for the defense was tendered.").

66.     Defendants were not entitled to any defense or indemnity under the Hartford Policies, including pursuant to public policy.

67.     The allegations in the Underlying Action did not fall within the scope of the risk for which Defendant Scott Bursor qualified as an insured under any of the Hartford Policies.

68.     The allegations in the Underlying Action solely constituted uncovered conduct. *See, e.g., Bursor*, 2024 WL 4850815, at *1.

69.     While a cause of action labeled negligence would not preclude a determination that the facts alleged support solely intentional conduct that would either be excluded and/or uninsurable under public policy, there nevertheless were no negligence causes of action pleaded in the Underlying Action.  *Id.*

70.     Because Defendant Scott Bursor is the President and sole owner if not also CEO and CFO of Defendant B&F, Defendant Scott Bursor's intent and knowledge is imputed onto – if not the sole, actual knowledge and intent of – Defendant B&F.

14

71.     The allegations in the Underlying Action are not covered by the terms of the Hartford Policies.

72.     Additionally, it is against the public policy of California and, if relevant, Florida as well as New York, to indemnify a person or corporation for his or its intentional acts, and it is also against the public policy of California and, if relevant, Florida as well as New York for a person to benefit from his or its own wrongdoing.

73.     Further, it is against the public policy of California and, if relevant, Florida as well as New York, to indemnify a person or corporation for punitive damages, which the underlying plaintiff was expressly seeking in the Underlying Action in each cause of action asserted by her against both Defendants.

74.     Hartford, accordingly, has and had no duty to defend the Defendants against the Underlying Action.  Yet, Defendants continually demanded performance anyway under threat of legal action.

75.     Additionally, Hartford has and had no duty to indemnify Defendants against the Underlying Action.  There is and was no duty to defend and the allegations if true would not support a covered cause of action under the Hartford Policies or as a matter of law and public policy.

76.     Hartford, under a reservation of rights, including the right to seek reimbursement, has extended a benefit to Defendants by paying for the defense and settlement of the Underlying Action, as neither Defendant was entitled to any defense or indemnification against the Underlying Action under the Hartford Policies.

77.     Incidentally, Defendants have also asserted in prior pleadings that they may try to argue waiver and estoppel, but those arguments are simply unavailing.  "To the contrary," and as

evidenced by Defendants themselves putting the documents into the record, "Hartford repeatedly and expressly reserved its rights in its communications with [Defendants].  Such reservations preclude arguments both as to waiver and as to equitable estoppel."  *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (collecting cases).

78.    Defendants have both retained benefits from Hartford's provided defense and settlement, at Hartford's expense.

79.    Defendants are not and were not entitled to retain that benefit and have been unjustly enriched.

80.    It is against public policy for Defendants to keep the benefit of Hartford's defense and indemnification for claims that it is against public policy to insure in the first instance.

81.    Hartford is therefore entitled to full restitution and reimbursement from Defendants for the costs paid by Hartford as relates to the Underlying Action, and disgorgement for any other benefits received as a result of the benefits retained from those payments.

## COUNT II:  SPECIFIC PERFORMANCE AND CONTRACTUAL REIMBURSEMENT

82.    Hartford incorporates paragraphs 1 through 81 as if pled herein.

83.    Hartford issued a reservation of rights letter to Defendant B&F, which was addressed to Defendant Scott Bursor, in which Hartford expressly stated it was providing a defense conditioned on a right to reimbursement for any uncovered claims, stating:  "We reserve the right to seek reimbursement from other carriers, **or from the Firm** as appropriate, for any and all monies paid toward settlement of or judgment in this matter and/or all other expenses and payments for which it is later determined that there is no potential for coverage."  ECF No. 49-5 at 5 (emphasis added).

84.      In that same letter, Hartford stated:  "Should The Hartford assert and prevail on any reservations, it does not waive its rights, if any, to seek and demand reimbursement for any payments paid **either to Bursor**, other carriers, or otherwise in connection with the Lawsuit." ECF No. 49-5 at 7 (emphasis added).

85.      Thus, as can be seen, Hartford reserved its rights both as to "the Firm" and as "to Bursor," too.  Defendants, however, vexatiously and falsely deny these communications reserving rights against both Defendants exist, despite Defendants themselves attaching them in their own motions practice.

86.      Further, in that letter, Hartford stated:  "This communication is not intended to be and should not be construed as an exhaustive listing of all policy terms and conditions that may apply to this matter.  The Hartford hereby reserves all its rights, positions and defenses in this matter.  Neither this communication, nor any prior or subsequent communications, should be construed as a waiver of any rights, positions or defenses held by The Hartford."  ECF No. 49-5 at 7.  In its denial letter to Defendant Scott Bursor, Hartford also included an identical statement as the one quoted in this paragraph.  ECF No. 49-4 at 5.

87.      As stated above, Hartford otherwise iterated it was reserving its rights to recovery through various communications.  Defendants disputed that any amounts are due to Hartford but otherwise acknowledged that Hartford was reserving "any right that it believes it has."  ECF No. 49-9 at 2.

88.      Hartford also specifically stated on June 6, 2025:

Hartford's agreement to fund the settlement and to pay the disputed fees at this time is subject to Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit.  If Bursor & Fisher, P.A. does not wish to settle the lawsuit at this time, it has the right to decline the settlement and assume its own defense. Please let us know how Bursor & Fisher would like to proceed.

ECF No. 49-9 at 3.

89.    Defendants accepted and expressed assent to those terms by taking the money offered by Hartford conditioned on those terms, and while any rejection of the terms could not change the terms insofar as Defendants used the as-conditioned funds, Defendants nevertheless did not object to or reject those terms, but instead expressly "acknowledge[d] that Hartford [wa]s reserving any right that it believes it has."  ECF No. 49-9 at 2.

90.    As the sums Hartford offered and paid were not due at minimum in part under the Hartford Policies (insofar as the claims being settled and defended were for uninsurable intentional conduct and punitive damages), those sums thereby constituted separate consideration for that agreement for Hartford to have and seek reimbursement from Defendants.

91.    By accepting defense and settlement payments subject to Hartford's right to seek reimbursement, Defendants also necessarily agreed to reimburse Hartford for the settlement amount and any and all defense costs for claims not covered by the Hartford Policies, resulting in an express contract or an implied contract.

92.    Hartford did not bargain for the costs in defending the Underlying Action and did not receive premiums to defend or indemnify claims such as those in the Underlying Action.

93.    None of the claims in the Underlying Action are or were covered by the Hartford Policies.

94.    Hartford is entitled to damages or restitution for the costs it has paid under reservation of rights for the Underlying Action and pursuant to its separate contract with Defendants, including all defense and settlement costs for the Underlying Action.

95.    Specific performance is justified because Defendants have stated implicitly and outright that they will not reimburse Hartford for its expenditures and Defendants have not reimbursed Hartford to date.

18

96.    Accordingly, Hartford requests that this Court order Defendants to specifically perform this reimbursement obligation, or otherwise order the same as restitution or damages, to be paid to Hartford for the settlement and defense expenses and all other payments paid by Hartford as relates to the Underlying Action.

## COUNT III:  CONTRIBUTION AND INDEMNITY

### *Against Defendant Scott Bursor*

97.    Hartford incorporates paragraphs 1 through 96 as if pled herein.

98.    Each of the Hartford Policies, in their Business Liability Coverage Form, contains the following "**Transfer Of Rights Of Recovery**" provision stating as follows:

> If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.  This condition does not apply to apply to Medical Expenses Coverage.

ECF No. 18-24 at 77

99.    Each of the Hartford Policies, in the Umbrella Liability Provisions, contains the following "**Transfer of Rights Of Recovery Against Others To Us**" provision:

> If the "insured" has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after a loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

ECF No. 18-24 at 189

100.    Hartford is also entitled to all rights it acquired through equitable subrogation upon its payments of defense costs, settlement costs, and any other costs related to the underlying action.

101.    Accordingly, Hartford is entitled to all the rights of recovery held by Defendant B&F which might reimburse Hartford for the sums Hartford paid to defend and settle the Underlying Action.

102.    Additionally, Defendant B&F has agreed under the Hartford Policies to do nothing to impair those rights and to help Hartford enforce those rights, among other obligations.

103.    Defendant B&F had rights of recovery, which were transferred to Hartford upon its payment, against Defendant Scott Bursor.

104.    These rights include, but are not limited to, the right to seek full contribution and/or indemnity from Defendant Scott Bursor, as Defendant B&F's president and employee, as it was Defendant Scott Bursor's alleged actions against the underlying plaintiff that caused the alleged harms and which formed the basis for the entirety of the underlying action.  *E.g.*, *Cont'l Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 428, 296 P.2d 801, 804 (1956) (*en banc*) ("Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe"); *Safecare Med. Ctr. v. Howard*, 670 So. 2d 1020, 1022 (Fla. Dist. Ct. App. 1996) ("A classic example of an indemnity action is when an employer held vicariously liable to a third person seeks recovery from the employee whose negligence caused injury.") (citing *Houdaille Indus., Inc. v. Edwards,* 374 So. 2d 490, 492–93 (Fla. 1979) & 41 AM.JUR.2D *Indemnity* § 30 (1995)); *accord McDermott v. City of New York*, 50 N.Y.2d 211, 218, 406 N.E.2d 460, 463 n.4 (1980) ("Indemnity actions have been permitted in a variety of situations.  A classic indemnity claim exists, of course, in favor of a person who has been held vicariously liable for the tort of another.  Thus, an employer who has been cast in damages, by virtue of respondeat superior, may obtain indemnity from his employee.").

105.    Indeed, every action alleged in the Underlying Action was either an allegation of what Defendant Scott Bursor personally did to the underlying plaintiff or an allegation of what Defendant Scott Bursor directed another to do to the underlying plaintiff.

20

106.    Accordingly, Defendant B&F had claims of indemnity, contribution, or otherwise against Defendant Scott Bursor, which Hartford acquired through conventional and equitable subrogation upon its payments of defense costs, settlement costs, and any other costs related to the underlying action.

107.    Accordingly, Hartford, having acquired Defendant B&F's claims against Defendant Scott Bursor upon its payment as a matter of contract and as a matter of equitable subrogation, is entitled to damages in full for the defense costs and settlement amount Hartford paid because those damages were directly caused by Defendant Scott Bursor's alleged conduct, and the conduct Defendant B&F was made to do by Defendant Scott Bursor's control and full ownership over the corporation.

## COUNT IV: BREACH OF FIDUCIARY DUTY

### *Against Defendant Scott Bursor*

108.    In addition to the claims of contribution and indemnity, Hartford has also acquired Defendant B&F's claims for breach of fiduciary duty against Defendant Scott Bursor.

109.    Each of the Hartford Policies, in their Business Liability Coverage Form, contains the following "**Transfer Of Rights Of Recovery**" provision stating as follows:

> If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.  This condition does not apply to apply to Medical Expenses Coverage.

ECF No. 18-24 at 77

110.    Each of the Hartford Policies, in the Umbrella Liability Provisions, contains the following "**Transfer of Rights Of Recovery Against Others To Us**" provision:

> If the "insured" has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do

nothing after a loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

ECF No. 18-24 at 189

111.    Hartford is also entitled to all rights it acquired through conventional and equitable subrogation upon its payments of defense costs, settlement costs, and any other costs related to the underlying action.

112.    Breach of fiduciary duty claims seeking money damages are freely assignable under California law and, if relevant, Florida law as well as New York law.  *Lazar v. Bishop*, 107 Cal. App. 5th 668, 684, 328 Cal. Rptr. 3d 483, 494 (2024) ("Based on the foregoing, we conclude that plaintiff's cause of action for breach of the real estate brokers' fiduciary duties, which seeks damages only related to property rights and pecuniary interests, is assignable."), *reh'g denied* (Jan. 8, 2025); *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 990–91 (Fla. 2008) ("We find that a claim for a breach of fiduciary duty against Wachovia is comparable to a bad faith claim and it thus constitutes an assignable claim."); *Najjar Grp., LLC v. W. 56th Hotel LLC*, 106 A.D.3d 640, 641, 965 N.Y.S.2d 720 (1st Dep't 2013) ("Choses in action, such as claims for breach of contract and breach of fiduciary duty, are freely assignable.") (citing General Obligations Law § 13–101) (collecting cases).

113.    Accordingly, these causes of action may be freely assigned, including through conventional subrogation provisions such as the "**Transfer Of Rights Of Recovery**" provisions and "**Transfer of Rights Of Recovery Against Others To Us**" provisions found in the Hartford Policies.  Hartford, therefore, has acquired the breach of fiduciary duty claims otherwise held by Defendant B&F as against Defendant Scott Bursor, pursuant to those conventional subrogation provisions in the Hartford Policies and by equitable subrogation.

22

114. Defendant Scott Bursor was and is the president, as well as other executive level positions as reflected in Defendant B&F's sworn corporate filings, of Defendant B&F.

115. Defendant Scott Bursor, as a corporate officer of Defendant B&F, owed and owes Defendant B&F a fiduciary duty.

116. Defendant Scott Bursor, as asserted in the Underlying Action, was alleged to have taken actions that were in breach his fiduciary duty to Defendant B&F, creating monetary liability for Defendant B&F by the underlying plaintiff, including Defendant Scott Bursor's alleged engagement of battery, intentional infliction of emotional distress, and crimes of gender violence motivated by gender animus implicating the New York City Victims of Gender Motivated Violence Act.

117. Defendant Scott Bursor was also accused of misappropriating Defendant B&F's funds for his personal use and, specifically, using Defendant B&F's funds to advance the conduct underscoring the alleged battery, intentional infliction of emotional distress, and crimes of gender violence motivated by gender animus implicating the New York City Victims of Gender Motivated Violence Act, which actions all were also breaches of Defendant Scott Bursor's fiduciary duties owed to Defendant B&F.

118. It is beyond reproach that a president or other corporate officer who commits "emotional, physical and sexual abuse" and directs the corporation to facilitate the same, thereby exposing the corporation to tort liability, is not acting in the best interests of the corporation and has breached his fiduciary duties to that corporation.

119. All the "emotional, physical and sexual abuse" as alleged against Defendant Scott Bursor is intentional, deliberate, and reprehensible behavior.

120. Accordingly, Hartford, having acquired Defendant B&F's claims for breach of fiduciary duty against Defendant Scott Bursor upon its payment as a matter of conventional subrogation and as a matter of equitable subrogation, is entitled to compensatory damages in full for the defense costs and settlement amount Hartford paid because those damages were directly caused by Defendant Scott Bursor's alleged breaches, as well as punitive damages against Defendant Scott Bursor.

<b><u>COUNT V:  DECLARATORY JUDGMENT</u></b>

121. Hartford incorporates paragraphs 1 through 120 as if pled herein.

122. The Hartford Policies do not provide any coverage for the Underlying Action, by their terms and as a matter of law and public policy.

123. Alternatively, the Hartford Policies do not provide coverage for at least some of the Underlying Action, by their terms and as a matter of law and public policy.

124. Defendants demanded a defense and indemnity for the Underlying Action under the Hartford Policies.

125. To the extent Hartford had an obligation to pay some portion of the defense costs for the Underlying Action, Hartford is only liable for the reasonable and necessary defense costs.

126. Defendants, however, have objected to all adjustments of the defense costs, instead demanding payment in full for all disputed amounts.

127. Accordingly, if Hartford were liable for some portion of the defense or settlement of the Underlying Action, an accounting is necessary both so that Hartford does not pay for portions not covered by its policies, and so that Hartford does not overpay for unnecessary and unreasonable fees and expenses as Hartford has done to date at Defendants' insistence and under continuing threats of litigation.

24

128. Hartford has expressed that the Underlying Action is not covered under the Hartford Policies; Defendants maintain their position that the Underlying Action is covered under the Hartford Policies.

129. A live controversy between the parties therefore exists and is ripe for resolution.

130. Hartford accordingly seeks a declaration of the rights and duties under the Hartford Policies as relates to the Underlying Action.

## COUNT VI:  IN THE ALTERNATIVE – ACCOUNTING

131. Hartford incorporates paragraphs 1 through 130 as if pled herein.

132. To the extent the Court determines Hartford is liable for some portion of the defense of the Underlying Action, Hartford would in the alternative be entitled to an accounting.

133. The defense costs proffered by Defendants were excessive to the needs of the case.

134. Hartford is only liable, if at all, for reasonable and necessary defense costs for covered claims.

135. Any amounts paid over the reasonable and necessary defense costs for covered claims resulted in an unjust enrichment to Hartford's detriment.

136. Additionally, Hartford has paid defense costs and settlement costs for uncovered claims, pursuant to its reservation of rights and its separate agreement, which resulted in an unjust enrichment to Hartford's detriment and/or damages suffered by Hartford.

137. Accordingly, to the extent that the Court determines any portion of the defense costs or settlement of the Underlying Action are properly due from Hartford, Hartford would in that circumstance be entitled to an accounting of costs and reimbursement for the amounts it has already overpaid to date.

## COUNT VII: IN THE ALTERNATIVE – BREACH OF CONTRACT

### *Against Defendant B&F*

138.    Hartford incorporates paragraphs 1 through 137 as if pled herein.

139.    Each of the Hartford Policies, in their Business Liability Coverage Form, contains the following "**Transfer Of Rights Of Recovery**" provision stating as follows:

> If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.  This condition does not apply to apply to Medical Expenses Coverage.

ECF No. 18-24 at 77

140.    Each of the Hartford Policies, in the Umbrella Liability Provisions, contains the following "**Transfer of Rights Of Recovery Against Others To Us**" provision:

> If the "insured" has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us.  The "insured" must do nothing after a loss to impair them.  At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

ECF No. 18-24 at 189

141.    To the extent that Defendant B&F, which entity demanded and accepted defense and indemnity payments under the Hartford Policies, has failed to maintain any "rights to recover all or part of any payment" for those defense and indemnity payments made under the Hartford Policies, Defendant B&F would be in breach of these provisions.

142.    The damages resulting therefrom would be, *inter alia*, all amounts that Hartford otherwise would be able to recover under these "**Transfer Of Rights Of Recovery**" or "**Transfer of Rights Of Recovery Against Others To Us**" provisions that would otherwise be recoverable but for Defendant B&F's impairment of those claims.

143.    Accordingly, in the alternative, Hartford seeks all damages from Defendant B&F to the extent it has breached the "**Transfer Of Rights Of Recovery**" or "**Transfer of Rights Of Recovery Against Others To Us**" provisions in the Hartford Policies.

## PRAYER FOR RELIEF

Hartford respectfully requests that the Court:

1. Declare that Hartford has no coverage obligations – defense or indemnity – for the Underlying Action under the Hartford Policies;

2. Award Hartford restitution and disgorgement from Defendants, with interest;

3. Award Hartford compensatory damages against Defendant Scott Bursor for Hartford's acquired claims of contribution, indemnity and breach of fiduciary duty, as well as punitive damages against Defendant Scott Bursor for his breaches of fiduciary duty;

4. Order Defendants to specifically perform their reimbursement obligations, or otherwise pay the same as damages or restitution, to Hartford, with interest;

5. In the alternative, order an accounting of the reasonable and necessary amounts for the defense of the Underlying Action and grant Hartford reimbursement for the amounts it has overpaid and/or paid for uncovered claims to date;

6. Award Hartford its fees and costs for this litigation; and

7. Grant Hartford any other appropriate relief as the Court determines to be warranted.

Hartford respectfully demands a jury trial for all issues so triable.

May 20, 2026                                    Respectfully submitted,

                                               /s/ *James P. Ruggeri*
                                               _____

                                               James P. Ruggeri (NY Bar No. 2389575)
                                               RUGGERI PARKS WEINBERG LLP
                                               1875 K Street NW, Suite 800
                                               Washington, DC 20006

27

Tel:    (202) 984-1400
Fax:    (202) 984-1401
jruggeri@ruggerilaw.com

*Attorney for Plaintiff Sentinel Insurance Company, Limited*

28