

James P. Ruggeri
Phone:  (202) 469-7752
jruggeri@ruggerilaw.com

June 19, 2026

**VIA ECF/PACER**

The Honorable Analisa Torres, U.S. District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> RE:    *Sentinel Ins. Co., Ltd. v. Bursor & Fisher, P.A. and Scott Bursor,* **1:25-cv-10000-AT-VF (S.D.N.Y.)**

Dear Judge Torres:

Plaintiff Sentinel Insurance Company, Limited ("Hartford") files this responsive pre-motion letter in accordance with the Court's individual rules and in response to Defendants Bursor & Fisher ("B&F") and Scott Bursor's ("Bursor") pre-motion letter of June 16, 2026 stating their desire to move to dismiss Hartford's Amended Complaint ("Am. Compl.").

Defendants' proposed motion is disingenuous:  it ignores the allegations, it misstates the facts, and it miscites the law, all in a desperate bid to try to deny Hartford its legal and equitable rights to recover the costs it paid to defend claims against B&F and settle claims against both B&F and Bursor, claims *solely* for intentional infliction of emotional distress, battery, and crimes of violence motivated by gender animus.  Defendants, tellingly, make no mention of the nature of the underlying claims against them, because they know they have no right to insurance for such intentionally tortious and criminal acts.

Defendants' choice of law discussion is brief (relegated to a footnote) and wrong. Defendants argue New York choice of law rules control post-transfer and that the Amended Complaint would be dismissed under New York or Florida law.  However, under *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 24 (1st Dep't 2006), the case cited by Defendants, California or Florida law will control as the principal place of business of Defendant B&F.  Hartford has alleged Defendant B&F's principal place of business is in California or Florida; Defendants contend it is Florida.  *E.g.*, Notice of Removal of Civil Action at 2, *Parker v. Bursor, et al.*, 1:24-cv-00245-JGLC-RFT (S.D.N.Y.), Jan. 11, 2024, ECF No. 1. New York law, however, does not apply because Defendants, as they concede, are not New York citizens.  *Id.*  Hartford believes the result would be the same under the law of any of these states, but, if the Court believes New York law would deny Hartford its rights of reimbursement, then it is in conflict with both California and Florida law.

Defendants know they have no argument under California law (they don't even try to make one), and close inspection of their letter brief shows they know they have no better argument under Florida law.  To make their arguments under Florida law, Defendants bastardize the few Florida cases they cite.  For example, in their first argument, Defendants cite *Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 2007 WL 9701677, at *2 (S.D. Fla. Apr. 5, 2007) to argue that Hartford cannot recover under Florida law because B&F allegedly expressly rejected any right of reimbursement.  Not only do Defendants cite dicta, but that case rose and fell on the fact that the insurer did not allege it reserved the right to seek reimbursement or even properly state an amount in controversy and was thus dismissed for a lack of subject matter jurisdiction.  The great weight of Florida case law directly disposes of Defendants' "rejection" argument, as Hartford cited in its Amended Complaint.  Defendants' suggestion they intend to file a motion to dismiss that they know would be baseless, factually and legally, is shameless.

The Honorable Analisa Torres
June 19, 2026
Page 2 of 4

I.    COUNTS I, II, AND IV:  Unjust Enrichment, Specific Performance, and Declaratory Judgment

Defendants argue Hartford cannot recoup defense and settlement costs because the Policies do not provide any such right.  In support of that argument, they cite one case applying New York law that rejected the right to reimbursement without a separate agreement (a case that, notably, has apparently never been applied by any other New York court for that proposition), but they cite no case applying Florida law because they know Florida law rejects it.  After that, Defendants argue they "explicitly rejected any right of recoupment and Hartford paid anyway," citing a case under New York law and the afore-discussed *Prime* case.  This argument is legally and factually wrong, as alleged by Hartford in its Amended Complaint.  *E.g.*, Am. Compl. ¶¶ 40– 42, 65.  "Under Florida law, a liability insurer that has reserved the right to seek reimbursement is entitled to recover fees and costs once it is determined that the insurer has no duty to defend." *Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, 556 F. App'x 932, 933 (11th Cir. 2014).  "A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered."  *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1038–39 (Fla. Dist. Ct. App. 2000) (quoted at Am. Compl. ¶ 65).  Any purported "rejection" is meaningless, as Defendants took the as-tendered performance.

Courts applying Florida law have repeatedly denied Defendants' arguments.  In *James River Insurance Company v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246 (N.D. Fla. 2016), the insured argued it defeated the insurer's reimbursement rights because its "counsel sent [the insurer] James River a letter purporting to reject any right to reimbursement."  *Id.* at 1261.  The insured, like Defendants, did not reject the insurer's *defense*, but tried to reject the insurer's *reservation of rights* while taking the defense; the court found such tactics unavailing.  *Id.* at 1262 ("Arlington *never* rejected James River's defense—it only purported to reject its reservation of rights, and it only did this *two years* after James River undertook the defense.  It continued to accept James River's defense, which was predicated on an offer that included a reservation of rights. [. . .] Arlington has no right to unilaterally alter the terms of the valid contract.") (emphasis original) (citation omitted).  Similarly, in *Travelers Indemnity Company v. Figg Bridge Engineers, Inc.*, 389 F. Supp. 3d 1060 (S.D. Fla. 2019), the court rejected the argument that an insurer "cannot unilaterally alter an insurance policy to seek reimbursement through a reservation-of-rights letter" under Florida law, *id.* at 1079, and noted that, even if an insured "rejected" a prior reservation, and assuming *arguendo* that had effect, that was immaterial where the insurer later reserved its rights again, and the insured did not re-object.  *Id.* at 1080–81.

Hartford alleged it repeatedly reserved its rights, including sending another reservation on June 6, 2025, Am. Compl. ¶ 40, which Defendants *acknowledged* and did not reject, Am. Compl. ¶ 41.  As Defendants note, Hartford supported these allegations with Defendants' own filings.  Defendants say (but never explain how) the documents contradict the allegations; they don't, as the Court will see upon review of them.  Defendants make this argument because they know the allegations state a viable claim even under their skewed view of the law:  Hartford conditioned its offer to pay the settlement on the right to be reimbursed for (i) the full settlement and (ii) defense costs for any uncovered claims, which offer Defendants accepted.  *See* Am. Compl. ¶¶ 40, 45, 88–90.  It is basic contract law that, if funds are offered with conditions, one takes the conditions when he takes the funds.  *Fuller v. Kemp*, 138 N.Y. 231, 237, 33 N.E. 1034, 1035 (1893) ("The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction.").  It is also basic contract law that a party cannot "pick and choose" what provisions it wants to follow.  *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 56, 623 N.E.2d 531, 535 (1993).  Defendants accepted the benefit of Hartford's offer and they, therefore, took the conditions, too.

Defendants next argue the policies prohibit Hartford from recovering from B&F, and that it can't recover from Bursor because it didn't pay anything on his behalf.  The first half of the

The Honorable Analisa Torres
June 19, 2026
Page 3 of 4

argument is based on a partial read of a policy endorsement, ignoring the biggest and boldest words on the page, "WAIVER OF SUBROGATION"; the second half pretends Hartford didn't pay to settle *all* claims, including the claims jointly and solely against Bursor, pursuant to its conditions and reservations. *E.g.*, Am. Compl. ¶ 40. These are not serious arguments.

Defendants' voluntary payment argument is also not serious. The cases Defendants cite note the voluntary payment defense requires "the absence of fraud, duress, or extortion." *Royal Surplus Lines Ins. Co. v. Coachmen Indus., Inc.*, No. 3:01CV301J-HTS, 2002 WL 32894915, at *13 (M.D. Fla. Sept. 17, 2002) (citations omitted). Here, Defendants repeatedly threatened Hartford with bad faith litigation and demanded Hartford defend. *E.g.*, Am. Compl. ¶ 74. And, payments made under protest are also not considered voluntary.[1] Hartford repeatedly reserved its rights before paying anything. That is protest, so Hartford's payments are not voluntary.

Finally, Defendants' suggestion that Bursor is a mere incidental beneficiary also is not a serious argument, which no doubt is why it's relegated to a footnote. Bursor personally demanded Hartford pay under threat of litigation, Am. Compl. ¶¶ 74, 127; Bursor was no "stranger" to the performance demanded;[2] Bursor is the sole owner and president of Defendant B&F; and Bursor in the end paid no defense and settlement costs in the case, Am. Compl. ¶ 64. The "incidental benefit" rule simply rephrases that a person whose enrichment is not unjust cannot be sued for unjust enrichment. *Abeles,* 2009 WL 875553, at *15. Under the circumstances and facts of this case – where Bursor demanded insurance to defend and settle, *inter alia*, his own gender-motivated crimes of violence – Bursor's enrichment is *per se* unjust.

## II.    COUNTS III, IV, AND VII:  Contribution and Indemnity, Breach of Fiduciary Duty, and Alternative Breach of Contract Claim

Defendants argue Hartford's contribution and indemnity claim through B&F against Bursor fail because B&F was not held vicariously liable for Bursor's actions. In support of this argument, Defendants say that Hartford has acknowledged that the sole claim against B&F was for negligent retention and supervision. This argument violates Defendants' duty of candor. Defendants know the referenced statement by a Hartford employee was wrong. And they know more importantly for purposes of Defendants' proposed motion to dismiss that the Amended Complaint alleges the opposite: "there nevertheless were no negligence causes of action pleaded in the Underlying Action." Am. Compl. ¶ 69. B&F was sued for intentional infliction of emotional distress and crimes of violence motivated by gender animus; the word "negligence" does not appear in the underlying complaint. *See generally* Complaint, *Parker v. Bursor, et al.,* 1:24-cv-00245-JGLC-RFT, Mar. 22, 2024, ECF No. 53-1.[3]

---

[1]    *Ortiz v. Ciox Health LLC*, No. 17CV4039(DLC), 2018 WL 1033237, at *4 (S.D.N.Y. Feb. 22, 2018) ("Ortiz . . . informed NYPH that it could not charge more than $0.75 per page before paying . . . This is plausibly construed as a 'protest' such that New York courts would not apply the voluntary payment doctrine"); *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-CV-306-J-34JRK, 2014 WL 1268584, at *20 (M.D. Fla. Mar. 27, 2014) ("Time Warner also argues . . . the voluntary payment doctrine . . . However, in the Complaint, Cableview alleges that the payment was made under protest.").

[2]    *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893(JFB)(AKT), 2009 WL 875553, at *15 n.8 (E.D.N.Y. Mar. 30, 2009) ("Abeles alleges that in creating a market for Creekstone products, it was acting at the behest of Creekstone . . . the fact that Abeles received a benefit . . . does not bar quasi-contractual recovery as a matter of law."); *c.f. Kagan v. K-Tel Ent., Inc.*, 172 A.D.2d 375, 376 (1st Dep't 1991) ("if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person"); *Citrin v. Columbia Broad. Sys., Inc.*, 29 A.D.2d 740, 740 (1st Dep't 1968) (party was a "stranger" to the transaction and so not unjustly enriched).

[3]    Defendants' arguments raise a briefing issue. Defendants use the technical administrative sealing of the underlying action as a sword and a shield, now openly misstating the allegations therein. Hartford has filed a motion to reopen and complete Judge Clarke's final and unappealable unsealing orders. If Defendants file a motion to dismiss, Hartford asks the Court to set its responsive date at least 14 days after the underlying court unseals its docket.

The Honorable Analisa Torres
June 19, 2026
Page 4 of 4

Defendants' suggestion that indemnity and contribution claims fail when a party is sued for "direct" torts is wrong. "Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other . . . It shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 492–93 (Fla.1979). Analysis of fault is eschewed for contribution, which is invokable between "joint obligors". *Hiscox Ins. Co. Inc. v. Watford Specialty Ins. Co.*, 647 F. Supp. 3d 1318, 1321 (S.D. Fla. 2022). Hartford asserts Defendant B&F's rights as subrogee, which was liable for the actions of Bursor, who controls it. Between it and Bursor, Bursor, equitably, should shoulder the debt for his misconduct.

Defendants argue the fiduciary duty claim fails because Hartford cannot solely rely on the underlying allegations to substantiate that claim. But, that count is not based *solely* on the underlying allegations. *See* Am. Compl. ¶ 118. However, accepting this argument at face value, this could be cured by adding information and belief allegations and/or adducing evidence from the underlying action showing these are not merely "unproven allegations." Hartford disputes this is necessary but, should the Court believe it is, Hartford asks for leave to do so.

Defendants last argue in this section that Defendant B&F's articles of incorporation waive all recovery against Bursor. That provision states: "To the fullest extent permitted by law, no director or officer of the Corporation shall be personally liable to the Corporation of [*sic*] its shareholders for damages for breach of any duty owed to the Corporation . . ." To start, contribution and indemnity do not arise from breaches of duty, but are implied, equitable rights. More importantly, it is against public policy to prospectively exculpate someone for intentional wrongdoing. *Mitzen v. Motor City Classic Cars, LLC*, No. 2:25-CV-14102-KMM, 2026 WL 1181196, at *6 (S.D. Fla. Mar. 13, 2026) ("an 'exculpatory clause is obviously unenforceable to the extent that it attempts to release [a party] of liability for an intentional tort.'") (citations omitted). This provision is plainly unenforceable here, if it is ever enforceable.

### III.     COUNT VI:  Accounting

Defendants cite the general rule that accountings typically require a special relationship. But accountings are equitable remedies, whose availability is flexible. For example, accountings are appropriate where a constructive trust is appropriate. *E.g.*, *Rossi v. Morse*, 153 A.D.3d 1637, 1637 (4th Dep't 2017). "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Barker v. Gervera*, 236 A.D.3d 1318, 1324 (4th Dep't 2025) (citation omitted). The accounting claim is alternatively pled if the Court finds Defendants were entitled to some defense costs but must repay Hartford for others, which is an appropriate use of an accounting.

**<u>CONCLUSION</u>**

Defendants' proposed motion is disingenuous and is amply rebutted by the expansive case law to the contrary of Defendants' arguments. Hartford would oppose.

Respectfully submitted,

James P. Ruggeri

*Counsel for Plaintiff Sentinel Insurance Company, Ltd.*