**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut corporation, | Case No. 1:25-cv-10000-AT-VF |
| Plaintiff, | |
| v. | |
| BURSOR & FISHER, P.A., and SCOTT BURSOR, | |
| Defendants. | |

**DEFENDANTS BURSOR & FISHER, P.A., AND SCOTT BURSOR'S**
<u>**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

COHEN ZIFFER FRENCHMAN & MCKENNA LLP
Kenneth H. Frenchman
Jason M. Sumbaly
1325 Avenue of the Americas, 31st Floor
New York, NY 10019
(212) 584-1890
kfrenchman@cohenziffer.com
jsumbaly@cohenziffer.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .....................................................................................................4

I.      THE UNDERLYING ACTION ................................................................ 4

II.     HARTFORD'S SELF-MADE COVERAGE POSITIONS.................................................. 4

III.    THE POLICIES ....................................................................... 7

LEGAL STANDARDS ......................................................................................................8

I.      MOTION TO DISMISS .................................................................. 8

II.     NEW YORK OR FLORIDA LAW APPLIES—NOT CALIFORNIA ............................. 9

ARGUMENT...................................................................................................................11

I.      COUNTS I, II, V, AND VI FAIL TO STATE A CLAIM .............................................. 11

        A.    Hartford Waived Any Right Of Recovery Against The Firm Or Bursor ............. 11

        B.    Count I – Hartford Cannot Recoup Through Unjust Enrichment......................... 13

        C.    Count II – Specific Performance And Contractual Reimbursement Must Be
              Dismissed ................................................................................................. 15

        D.    Hartford Cannot Recover Amounts It Voluntarily Paid With Full Knowledge
              Of The Relevant Facts ................................................................................ 20

        E.    Counts V And VI – Declaratory Judgment And Accounting (In The Alternative)
              Must Be Dismissed As Moot ...................................................................... 21

II.     HARTFORD'S SUBROGATION CLAIMS MUST BE DISMISSED ........................... 21

        A.    The Anti-Subrogation Rule Extends To Bursor As The Firm's Sole Owner ....... 21

        B.    Hartford Waived Its Subrogation Rights Against Bursor For Any Breach
              Of Duty ................................................................................................... 24

        C.    Parroting Unproven Allegations From The Underlying Complaint Is
              Inadmissible And Insufficient To Support Hartford's Claims............................. 25

        D.    Count VII – Breach Of Contract Fails ................................................................. 26

CONCLUSION...............................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  2017 WL 280816 (S.D.N.Y. Jan. 20, 2017) ....................................................... 18

*Allstate Ins. Co. v. State*,
  152 Misc. 2d 869 (N.Y. Ct. Cl. 1991) ............................................................... 25

*Am. Empire Surplus Lines Ins. Co. v. Burlington Ins. Co.*,
  2019 N.Y. Slip Op. 32221(U), (Sup. Ct. N.Y. Cnty. July 29, 2019) ................ 18

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ................................................................................ 9

*Atain Specialty Ins. Co. v. T. Disney Trucking & Grading, Inc.*,
  692 F. Supp. 3d 1127 (M.D. Fla. 2023) ............................................................ 11

*Bermudez v. Colgate-Palmolive Co.*,
  667 F. Supp. 3d 24 (S.D.N.Y. 2023) ................................................................... 8

*Century Sur. Co. v. Franchise Contractors, LLC*,
  2016 WL 1030134 (S.D.N.Y. Mar. 10, 2016) ................................................... 16

*Century Sur. Co. v. Vas & Sons Corp.*,
  2018 WL 6164724 (E.D.N.Y. Aug. 31, 2018) ................................................... 16

*Certain Interested Underwriters at Lloyd's v. Halikoytakis*,
  2012 WL 8013887 (M.D. Fla. Oct. 5, 2012), *aff'd*, 556 F. App'x 932 (11th
  Cir. 2014) ..................................................................................................... 14, 18

*Certain Underwriters at Lloyd's v. Foster Wheeler*,
  36 A.D.3d 17 (1st Dep't 2006) ............................................................................ 9

*Chambers v. Slade Indus.*,
  2018 WL 11450160 (S.D.N.Y. Oct. 25, 2018) .................................................. 10

*City of Miami v. Keton*,
  115 So. 2d 547 (Fla. 1959) ................................................................................ 20

*Colony Ins. Co. v. G & E Tires & Serv., Inc.*,
  777 So. 2d 1034 (Fla. Dist. Ct. App. 2000) ................................... 14, 16, 17, 19

*Columbia Mut. Ins. Co. v. Perfecting New Life Learning Ctr.*,
  2009 WL 10677181 (E.D. Ark. May 20, 2009) ................................................. 22

*Crescent Beach Club v. Indian Harbor Ins.*,
  468 F. Supp. 3d 515 (E.D.N.Y. 2020) ......................................................... 13, 16

*In re CRM Holdings, Ltd. Sec. Litig.*,
  2012 WL 1646888 (S.D.N.Y. May 10, 2012) ............................................................... 25

*Crowe v. Managed Care of N. Am. Inc.*,
  2025 WL 2829532 (S.D. Fla. Jan. 21, 2025) ................................................................. 18

*Cutter v. City of New York*,
  92 N.Y. 166 (1883) ....................................................................................................... 21

*Dade Cnty. Sch. Bd. v. Radio Station WQBA*,
  731 So. 2d 638 (Fla. 1999) ............................................................................................ 24

*Davis v. Lake Wales Charter Schs.*,
  2006 WL 2864321 (M.D. Fla. Oct. 5, 2006) ................................................................. 26

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
  100 N.Y.2d 525 (2003) .................................................................................................. 20

*Doe v. Portnow*,
  2024 WL 1574027 (S.D.N.Y. Apr. 11, 2024) .................................................................. 9

*Dominion Ins. Co. v. State*,
  305 A.D.2d 779 (2d Dep't 2003) ................................................................................... 20

*Easter v. City of Orlando*,
  249 So. 3d 723 (Fla. Dist. Ct. App. 2018) .................................................................... 20

*In re Farfetch Ltd. Sec. Litig.*,
  802 F. Supp. 3d 652, 674 (S.D.N.Y. 2025) ..................................................................... 8

*Fireman's Fund Ins. v. Never Stop Trucking*,
  2009 WL 3297780 (E.D.N.Y. Oct. 13, 2009) ........................................................... 14, 25

*Fireman's Ins. Co. of Newark, N.J. v. Wheeler*,
  165 A.D.2d 141 (3d Dep't 1991) ......................................................................... 22, 23, 24

*First Am. Corp. v. Price Waterhouse LLP*,
  988 F. Supp. 353 (S.D.N.Y. 1997) ........................................................................... 10, 17

*Forbes v. City of New York*,
  272 A.D.2d 221 (1st Dep't 2000) .................................................................................. 13

*Fromer v. Yogel*,
  50 F. Supp. 2d 227 (S.D.N.Y. 1999) ............................................................................. 25

*Gen. Star Indem. Co. v. Driven Sports, Inc.*,
  80 F. Supp. 3d 442 (E.D.N.Y. 2015) ......................................................................... 13, 16

*Geovera Specialty Ins. Co. v. Beaubrun*,
  2021 WL 12322131 (Fla. Cir. Ct. Sept. 10, 2021) ........................................................ 16

*Gerena v. Korb*,
  617 F.3d 197 (2d Cir. 2010).............................................................................................9

*Gjonaj Realty & Mgmt. Co. v. Am. W. Home Ins. Co.*,
  192 A.D.3d 28 (2d Dep't 2020) ...............................................................13, 15, 16

*Global Network Mgmt., Ltd. v. Centurylink Latin Am. Solutions, LLC*,
  67 F.4th 1312 (11th Cir. 2023) .................................................................................13

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)...................................................................................................9

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  12 N.Y.3d 132 (2009) .............................................................................................13

*Johnson v. Pringle Dev., Inc.*,
  2006 WL 2189542 (M.D. Fla. Aug. 1, 2006) .....................................................18

*Johnson v. Pullman, Inc.*,
  845 F.2d 911 (11th Cir. 1988) ...............................................................................21

*Kurtin v. Nat'l R.R. Passenger Corp.*,
  1996 WL 194296 (S.D.N.Y. Apr. 22, 1996).......................................................22

*Landmark Ins. Co. v. Hensam Enters.*,
  2011 WL 3366483 (S.D.N.Y. July 29, 2011) .....................................................18

*Marathon Oil Co. v. Mid-Continent Underwriters*,
  786 F.2d 1301 (5th Cir. 1986) ...............................................................................12

*Max v. ALP, Inc.*,
  203 A.D.3d 580 (1st Dep't 2022) ..........................................................................24

*McCabe v. Fla. Power & Light*,
  68 So. 3d 995 (Fla. Dist. Ct. App. 2011) .............................................................25

*Mech. Licensing Collective v. Spotify USA*,
  763 F. Supp. 3d 608 (S.D.N.Y. 2025)...................................................................8

*Med. Liab. Mut. Ins. Co. v. Schurig*,
  211 A.D.2d 518 (1st Dep't 1995) ..........................................................................22

*Merch. Cash & Cap. LLC v. Edgewood Grp., LLC*,
  2015 WL 4430643 (S.D.N.Y. July 2, 2015) .......................................................26

*MONY Life Ins. Co. v. Perez*,
  146 F.4th 1018 (11th Cir. 2025) .............................................................................13

*Mt. Hawley Ins. Co. v. Aquasol Condo. Ass'n*,
  2019 WL 3387054 (S.D. Fla. July 26, 2019)......................................................12

*Nat'l Cas. Co. v. Beth Abraham Hosp.*,
  1999 WL 710780 (S.D.N.Y. Sept. 10, 1999)................................................................22, 23, 24

*Nat'l Cas. Co. v. State Ins. Fund*,
  227 A.D.2d 115 (1st Dep't 1996) ................................................................................23

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Ranger Ins. Co.*,
  190 A.D.2d 395 (4th Dep't 1993)................................................................................20

*Nat'l Union Fire Ins. Co. v. Turner Constr. Co.*,
  119 A.D.3d 103 (1st Dep't 2014) ..........................................................................11, 12

*Nationwide Mut. Fire Ins. Co. v. Royall*,
  588 F. Supp. 2d 1306 (M.D. Fla. 2008) ......................................................................17

*Pa. Gen. Ins. Co. v. Austin Powder Co.*,
  68 N.Y.2d 465 (1986) ..........................................................................................22, 23

*Pascarella v. Sandals Resort Int'l*,
  2020 WL 1048943 (S.D.N.Y. Mar. 4, 2020) ..................................................................9

*Peleus Ins. Co. v. RCD Restorations Inc.*,
  77 Misc. 3d 1225(A) (N.Y. Sup. Ct. 2023)...................................................................19

*Pinnacle Port Cmty. Ass'n v. Orenstein*,
  872 F.2d 1536 (11th Cir. 1989) ..................................................................................10

*RSM Prod. Corp. v. Fridman*,
  634 F. Supp.2d 382 (S.D.N.Y. 2009)...........................................................................25

*Sharikov v. Philips Med. Sys. MR*,
  103 F.4th 159 (2d Cir. 2024) ........................................................................................8

*State Farm Mut. Auto. Ins. Co. v. Coker*,
  505 F. App'x 824 (11th Cir. 2013) ..............................................................................21

*State Farm Mut. Auto. Ins. Co. v. LaRocca*,
  685 F. Supp. 3d 1354 (M.D. Fla. 2023).......................................................................20

*Steadfast Ins. Co. v. Sheridan Children's Healthcare Servs., Inc.*,
  34 F. Supp. 2d 1364 (S.D. Fla. 1998) ..............................................................20, 21, 22

*Textron Inc. v. Endurance Am. Ins. Co.*,
  346 A.3d 639 (Del. Super. Ct. 2025) .....................................................................15, 21

*Those Certain Underwriters at Lloyd's, London v. GMC Land Servs., Inc.*,
  2007 WL 9698312 (S.D. Fla. Nov. 8, 2007), *aff'd*, 315 F. App'x 785
  (11th Cir. 2009)..........................................................................................................12

*United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*,
  375 F. Supp. 3d 389 (S.D.N.Y. 2019)..........................................................................16

*Utica Mut. Ins. Co. v. Am. Re-Ins. Co.*,
    218 A.D.3d 1283 (4th Dep't 2023) ...................................................................20

*Utica Mut. Ins. v. Denwa*t,
    778 F. Supp. 592 (D. Conn. 1991) ...................................................................25

*Walsam 316 v. 316 Bowery Realty Corp.*,
    226 A.D.3d 628 (1st Dep't 2024) ....................................................................18

*Wausau Underwriters Ins. Co. v. Gamma USA, Inc.*,
    166 A.D.3d 928 (2d Dep't 2018) .....................................................................24

*Weaver v. Axis Surplus Ins. Co.*,
    2014 WL 5500667 (E.D.N.Y. Oct. 30, 2014)...................................................12

*Weinreb v. Weinreb*,
    140 A.D.2d 226 (2d Dep't 1988) .....................................................................24

*Wendy's of N.E. Fla., Inc. v. Vandergriff*,
    865 So. 2d 520 (Fla. Dist. Ct. App. 2003) .......................................................19

*Westchester Fire Ins. Co. v. Wallerich*,
    563 F.3d 707 (8th Cir. 2009) .....................................................................18, 19

*Whiteside v. Hover-Davis*,
    995 F.3d 315 (2d Cir. 2021).............................................................................8

*Zhou v. NextCure, Inc.*,
    2023 WL 4493541 (S.D.N.Y. July 12, 2023) ..................................................25

**Statutes**

28 U.S.C. § 1406(a) ...............................................................................................9

Fla. Stat. § 620.8101(7).........................................................................................10

Fla. Stat. § 621.12(2)(b)(1) ...................................................................................10

N.Y. Gen. Oblig. Law § 15-108.............................................................................25

**Other Authorities**

Fed. R. Civ. P. 12 (b)(6).........................................................................................8

Fed. R. Civ. P. 12 (f)..............................................................................................25

vi

Defendants Bursor & Fisher, P.A. (the "Firm") and Scott Bursor ("Bursor" together with the Firm, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss, and strike certain allegations from, Plaintiff Sentinel Insurance Company, Limited's ("Hartford") Amended Complaint (ECF No. 55) ("Compl.").

## PRELIMINARY STATEMENT

This case presents the remarkable proposition of an insurance company, Hartford, seeking to recover defense costs from its own insureds after reviewing the Underlying Complaint and acknowledging coverage as to one insured, the Firm, while explicitly denying coverage to the other insured, Bursor, and settlement payments that it not only voluntarily paid, but insisted on in order to resolve the Underlying Action.

Hartford's Complaint asserts seven causes of action, each of which must be dismissed for failure to state a claim. Three are direct claims against Defendants (unjust enrichment, specific performance and contractual reimbursement, and accounting) seeking to recoup amounts paid in defense and settlement of the Underlying Action. Two are subrogation claims (contribution and indemnity, and breach of fiduciary duty) in which Hartford seeks to stand in the Firm's shoes to attack Bursor (the Firm's sole owner and CEO). The other two (breach of contract and declaratory judgment) are moot unless Hartford's other claims survive. All seven fail under the plain language of the Policies and independently under applicable law.

Faced with this reality, Hartford litters its Complaint with allegations that are demonstrably false, state legal conclusions, and/or parrot unproven allegations from the Underlying Complaint. What remains is a set of self-contradictory allegations that are further disproved by documents incorporated by reference, integral to the Complaint, cited herein and in Hartford's possession, or judicially noticeable.

The first of such allegations—that the Firm's principal place of business is Florida or California—is telling. Hartford alleges California for application of its laws because Hartford

1

knows its claims fail entirely under applicable law—New York (forum) or Florida (Defendants' domicile). Putting aside the allegation's questionable nature, as Hartford continuously insured the Firm for more than ten years, it is easily debunked by the Firm's public filings. While a choice-of-law analysis is not necessary at this stage, the Court can nonetheless properly rule out application of California law. Under the Policies' plain language and applicable law, New York or Florida law, Hartford's Complaint must be dismissed.

Hartford's direct recoupment claims (Counts I, II, and VI) fail because the Policies expressly waive "any right of recovery [Hartford] may have against…any person or organization shown in the Declarations; or…any person…with whom [the Firm has] a contract that requires such waiver." Here, the Firm, the Named Insured, is "any…organization shown in the Declarations." Similarly, because the Firm agreed to indemnify Bursor in its Articles of Incorporation, Bursor is "any…person with whom [the Firm has] a contract requiring such waiver." Thus, under any set of facts, the Policies prohibit any recovery from Defendants.

These claims independently fail on several additional grounds—each of which is dispositive. Hartford's unjust enrichment claim (Count I) fails because neither Florida nor New York law allows an insurer to seek recoupment from its insured through unjust enrichment where a contract—here, the Policies—governs the dispute.

Hartford's specific performance and contractual reimbursement claim (Count II) fails because the Policies "contain all the agreements…concerning the insurance afforded" and preclude any changes unless incorporated into the Policies by endorsement. Here, there is no "separate" contract and none is endorsed to any Policy. Hartford's allegations establish lack of mutual assent: Defendants "expressly reject[ed]" Hartford's first reservation of rights, and similarly "adamantly disagree[d]" with Hartford's assertion of a right to recoup at settlement. ***Hartford paid anyway***. Under basic contract principles, Hartford's "offers" were rejected and

2

Defendants' "counteroffers" were accepted. Count II independently fails as to Bursor because Hartford denied coverage to, and did not defend, Bursor.

These claims also fail because Hartford's payments were voluntary and it has not alleged (because it cannot) any fraud or mistake. Hartford's reliance on making payments under protest to avoid the voluntary payment doctrine is unavailing. Under applicable law, threat of litigation is insufficient to support an insurer's claim of making payments under duress. This makes sense, logically, where Hartford's entire claim is premised on its belief that it had to pay clearly uncovered claims to avoid a lawsuit, but it sued Defendants within days of the underlying settlement being finalized—ensuring litigation anyway. In any event, if Hartford truly believed the claims were uncovered despite its own claim-handler's analysis, it should have brought a declaratory judgment action at that time.

Hartford's declaratory judgment and accounting claims (Counts V and VI) are moot because the Policies and applicable law prevent recovery. Indeed, if the Policies prevent recovery, then the issue is moot; but even if the Court holds otherwise, if all the claims were uncovered on the face of the Underlying Complaint, *all* of Hartford's payments would be voluntary and unrecoverable; and, if any claims were covered (like Hartford initially determined), then the anti-subrogation rule, preventing an insurer from recovering from its insured(s) for covered claims, would bar any recovery.

Hartford's subrogation claims (Counts III and IV) and breach of contract claim (Count VII) likewise fail. The anti-subrogation rule prevents insurers from recovering from someone so close to the insured that it would be inequitable and create undesirable conflicts of interest. Bursor is indisputably the sole owner, President, and CEO of the Firm, and recovery against him is soundly barred by the anti-subrogation rule.

Hartford's contribution and indemnity claim (Count III) also fails because, as even the cases Hartford relies on state, such claims require the employer be *held* vicariously liable for

the employee's wrongdoing. Here, as alleged, the Underlying Action settled, and the Firm was not *held liable* for anything, let alone vicariously for Bursor's alleged conduct.

Hartford's breach of fiduciary duty claim (Count IV) fails for two additional reasons. Hartford's allegations to support the breach of fiduciary duty claim rest entirely on inadmissible, unproven allegations from the Underlying Complaint, which allegations are insufficient and may be stricken. Additionally, the Policies prevent Hartford's subrogation rights against Bursor because the Firm, through its Articles of Incorporation, waived its right to hold any director or officer "personally liable to the Corporation…for damages for breach of any duty owed to the Corporation or its shareholders."

Finally, Hartford's alternative breach of contract claim (Count VII) fails because Hartford waived its subrogation rights against Bursor, via the Firm's waiver of its rights, and applicable law would nonetheless prevent Hartford from subrogating the Firm's sole owner. Accordingly, Hartford does not and cannot allege any rights were impaired because none exist.

For these reasons, and as set forth more fully below, Hartford's entire Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.     THE UNDERLYING ACTION

On November 24, 2023, the underlying plaintiff filed a summons in the Supreme Court of the State of New York, New York County. *Parker v. Bursor*, No. 1:24-cv-00245, ECF No. 1-2 (the "Underlying Action"). Defendants removed the Underlying Action to SDNY. *Id.* at ECF No. 1. The Underlying Complaint was filed on March 22, 2024. *Id.* at ECF No. 53.

### II.    HARTFORD'S SELF-MADE COVERAGE POSITIONS

Defendants tendered the Underlying Action to Hartford, the summons and later the Underlying Complaint. In response, Hartford issued two separate sets of letters: (1) *denying* coverage to Bursor (Exs. 1, 3); and (2) agreeing to participate in the defense solely as to the

Firm (Exs. 2, 4).[1] In the letter to the Firm, Hartford appointed defense counsel, which the Firm rejected. *See* Ex. 5 at 24-30. Before the Underlying Complaint was filed, on March 19, 2024, the Firm informed Hartford of its selection of counsel, jointly representing Defendants. Ex. 6.

The Underlying Complaint was filed on March 22, 2024. After a month-long review, Hartford reached the same determination as before—denying coverage to Bursor while agreeing to participate in the Firm's defense. Exs. 3, 4. Hartford also accepted the Firm's selection of counsel under each Hartford Policy issued from August 4, 2018 through August 4, 2024. *See* Ex. 4 at 5. Before Hartford's acceptance, the Firm had already retained its choice of counsel, the defense was underway, and the Firm had made payments to its counsel. *See, e.g.,* Ex. 7. The letters to the Firm contained pro-forma reservations to seek reimbursement from the Firm or other insurers based on later potential findings; none of the letters reserved any right to recoup from Bursor. *See* Exs. 1-4. Thus, while Hartford alleges that it "provided a defense for the Underlying Action under a reservation of rights"—that is untrue. Compl. ¶28.

On July 16, 2024, the Firm submitted defense invoices and explicitly rejected Hartford's purported reservation of right to seek reimbursement, stating "nothing in the Policy or law allows Hartford to recoup any defense costs, particularly from the Firm, and the Firm expressly rejects the Hartford's attempt to do so." Ex. 5 at 4. The Firm continued to defend with its own counsel and at its own expense. Hartford responded by reiterating that it "only agrees to pay reasonable defense costs associated with the defense of Bursor & Fisher." *Id.* at 3. In response, Defendants objected to any allocation because all costs were incurred for the benefit of the Firm and reserved their right to challenge Hartford's denial as to Bursor. *Id.* at 2.

---

[1] Exhibits cited herein refer to exhibits attached to the Declaration of Kenneth Frenchman in Support of Defendants' Motion to Dismiss.

On August 5, 2024, Hartford reiterated its denial to Bursor and solidified coverage for the Firm based on its "understanding that Scott Bursor is the managing attorney at Bursor & Fisher, which is accused of negligent supervision and retention of Mr. Bursor." *Id.* at 1.

Between February and November 2024, before Hartford paid anything, Hartford refused to provide requested settlement authority. *E.g.*, Ex. 5 at 33; Ex. 8 at 3 ("The Hartford is not in a position to authorize any settlement amount for any liability ascribed to Bursor & Fisher."). As defense costs continued to mount, however, Hartford had a change of heart.

On April 23, 2025, with no pending request from Defendants for settlement authority, Hartford requested a call with defense counsel to "discuss the plan of action moving forward to try and work towards resolution." Ex. 9 at 3. After discussions with defense counsel, Hartford conveyed its desire "to focus on resolving the claims between [Ms.] Parker, Mr. Bursor and Bursor & Fisher." Ex. 10 at 1. Between May and June 2025, Hartford continued to push for settlement, increasing settlement authority on its own accord, which instruction defense counsel complied with. Exs. 10-12. None of these communications reserved any rights. *See id.*

On June 5, 2025, defense counsel advised Hartford of plaintiff's demand and stated "in order for Scott to agree to this ... he is going to need to be made whole for all attorneys fees and costs, including all write offs." Ex. 12 at 4. On June 6, 2025, Hartford advised that it would pay the full amount of the demand "to resolve the claims in the lawsuit against Bursor & Fisher, P.A. and Mr. Bursor" and that it was "issuing payment today for the disputed outstanding defense fees[.]" *Id.* at 3. Then, Hartford advised for the first time that such payments that it was already "issuing" were subject to its rights to recoup for settlement amounts and all defense costs "attributable to the non-covered claims in the lawsuit." *Id.* Finally, Hartford threatened that "[i]f Bursor & Fisher, P.A. does not wish to settle the lawsuit at this time, it has the right to decline the settlement and assume its own defense." *Id.* Within hours, Defendants lodged their objection: "[r]egarding Hartford's so-called reservation of rights, we adamantly disagree

6

that Hartford has any right to recoupment[.]" *Id.* at 2. In response, Hartford simply "confirm[ed] that it will continue to pay defense costs until the case is settled, including the already submitted bills that have not yet been reimbursed, without any deductions." *Id.* at 1. No additional reservations were asserted by Hartford. The June 6, 2025 reservation was the only other time Hartford reserved any rights after June 12, 2024. In pressing to resolve the Underlying Action on behalf of both Defendants, Hartford never disclosed its intention to subrogate against Bursor.

On June 18, 2025, defense counsel sent a draft settlement agreement to Hartford, to which Hartford had only "one suggestion" which Defendants accepted. Ex. 13 at 6. The Underlying Action was dismissed on July 24, 2025 (Underlying Action, ECF No. 447). On July 29, 2025—without ever denying coverage to the Firm or demanding repayment—Hartford brought this Action. (ECF No. 1).

## III. THE POLICIES

In exchange for substantial premiums, Hartford issued liability insurance to the Firm from 2011 through 2025, when it declined to renew coverage in the midst of the Underlying Action. Relevant here are the policies issued consecutively from August 4, 2018 through August 4, 2024, each providing a $1 million limit of liability (the "Policies").[2] Compl. ¶14. The Firm is the "Named Insured" under the Policies, and Bursor is an "Insured" in his role as an "executive officer" of the Firm. Ex. 14; Compl. ¶11.

The Policies require Hartford to "pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury'... to which this insurance applies." Ex. 14, New York Changes End't, § III.A(a). Hartford's duty arises "even if the allegations of the

---

[2] Defendants cite to the Hartford Policy, Policy No. 57 SBA BA 7698 SC, for the policy period August 4, 2021–August 4, 2022. Ex. 14. Upon information and belief, the 21-22 Policy is complete and accurate and the material terms are the same between all the Policies. Hartford also sold umbrella policies containing the same material coverage terms as the Policies and providing an additional $5,000,000 limit per policy period. *See id.*

'suit' are groundless, false or fraudulent." *Id.* That duty "ends when [Hartford has] used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies." *Id.*

Hartford agreed to participate in the Firm's defense based on its review of the Underlying Complaint (Ex. 4), which review led to its "understanding that Scott Bursor is the managing attorney at Bursor & Fisher, which is accused of negligent supervision and retention of Mr. Bursor" (Ex. 5 at 1), and thus, to Hartford's decision to participate in the Firm's defense.

## <u>LEGAL STANDARDS</u>

### I.    MOTION TO DISMISS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mech. Licensing Collective v. Spotify USA*, 763 F. Supp. 3d 608, 613 (S.D.N.Y. 2025). The court must "assume the truth of the 'well-pleaded factual allegations'" but that obligation is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Sharikov v. Philips Med. Sys. MR*, 103 F.4th 159, 166 (2d Cir. 2024). Facts "merely consistent with" liability "stop[] short of the line between possibility and plausibility." *Whiteside v. Hover-Davis*, 995 F.3d 315, 323-24 (2d Cir. 2021).

The Court "may consider the following materials: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, ... [and (4)] facts of which judicial notice may properly be taken." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 32 (S.D.N.Y. 2023). The Court "is also entitled to consider 'the full text of those documents' partially quoted in a complaint but considered integral to ruling on a motion to dismiss." *In re*

*Farfetch Ltd. Sec. Litig.*, 802 F. Supp. 3d 652, 674 (S.D.N.Y. 2025). Where "a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

## II.   NEW YORK OR FLORIDA LAW APPLIES—NOT CALIFORNIA

Because this Action was transferred from the Northern District of California pursuant to 28 U.S.C. § 1406(a) for improper venue, this Court applies New York's choice-of-law rules. *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010); ECF No. 46 at 3-4. In insurance coverage actions, if there is a true conflict, the law of "the state which the parties understood to be the principal location of the insured risk," namely "the state of the insured's domicile" applies. *Certain Underwriters at Lloyd's v. Foster Wheeler*, 36 A.D.3d 17, 21-22, 24 (1st Dep't 2006).

Both the Firm and Bursor are domiciled in Florida. Bursor Decl. ¶¶4-8; Compl. ¶¶3-4. New York's choice-of-law analysis thus leads to Florida law. However, the Court "need not embark on a choice-of-law analysis in the absence of an actual conflict." *Pascarella v. Sandals Resort Int'l*, 2020 WL 1048943, at *5 (S.D.N.Y. Mar. 4, 2020). As such, only New York or Florida law could apply.

Hartford argues for California law based on (1) its allegation that the Firm's principal place of business is "California or Florida" (Compl. ¶4); and (2) that the Firm is "a partnership, or otherwise deemed a partnership by estoppel" (*id.* ¶¶17-19). Both arguments fail.

The Firm's principal place of business is Florida. An entity can have only *one* principal place of business—its "nerve center ... where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-94 (2010); *Doe v. Portnow*, 2024 WL 1574027, at *2 (S.D.N.Y. Apr. 11, 2024). The evidence conclusively establishes Florida as the Firm's principal place of business: (1) the Firm maintains its headquarters there (Bursor Decl. ¶5); (2) Bursor, its sole owner, CEO, and CFO, lives and works there (*id.* ¶8); (3) the Firm's registrations list Florida as its "principal" office (*id.* ¶15); (4) registrations in California and New York are as a "foreign"

corporation (*id.*); and (5) Bursor directs operations from Florida (*id.* ¶9). *See Chambers v. Slade Indus.*, 2018 WL 11450160, at *1 (S.D.N.Y. Oct. 25, 2018).

Hartford cannot credibly allege that the Firm—which includes "P.A." (professional association) in its name—is a partnership by estoppel. Partnership by estoppel requires: (1) "sufficient indicia of partnership be presented to the injured party to constitute a representation that the partnership exists" and (2) "the injured party must have relied on this representation to his or her detriment." *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358 (S.D.N.Y. 1997); *Pinnacle Port Cmty. Ass'n v. Orenstein*, 872 F.2d 1536, 1541 (11th Cir. 1989). Hartford's allegations—based on cherry-picked items from the Firm's website that were not directed to Hartford—are insufficient. Compl. ¶¶18-19.

The undisputed facts foreclose Hartford's partnership theory. First, "P.A." indicates a professional corporation under Florida law. *See* Fla. Stat. § 621.12(2)(b)(1). Second, the Policies identify the Firm as a "CORPORATION." Ex. 14, Decl. Third, Hartford's own denial letters confirm the Firm's corporate status, applying policy provisions applicable only to corporations. Exs. 1, 3. Fourth, Bursor is the sole owner. *See* Fla. Stat. § 620.8101(7) ("'Partnership' means an association of two or more persons").

Even assuming representations of partnership were made (they were not), the Complaint contains no allegations of Hartford's reliance or resulting injury. Hartford's attempt to invoke this theory fails and no amendment could cure it.

As a practical matter, Hartford underwrote and issued general liability insurance to the Firm for more than a decade. Hartford cannot rely on demonstrably false allegations or conclusory legal conclusions to avoid dismissal on this basis. While the Court need not decide between Florida or New York law now, it can rule out California law entirely.

10

## ARGUMENT

### I.    COUNTS I, II, V, AND VI FAIL TO STATE A CLAIM

Hartford's first, second, fifth, and sixth causes of action all seek the same relief: recoupment, in whole or in part, of defense and indemnity payments made on behalf of the Firm in the Underlying Action. Each fails entirely—without the Court needing to assess Hartford's duty to defend—because the Policies explicitly prohibit Hartford from seeking such relief and, in any event, the allegations are legally insufficient.

### A.    Hartford Waived Any Right Of Recovery Against The Firm Or Bursor

The Policies *expressly prohibit* Hartford from recovering any amount from the Firm or Bursor. An "insurer's entitlement to recoup its defense costs from its insured must not contravene the terms of the policy." *Nat'l Union Fire Ins. Co. v. Turner Constr. Co.*, 119 A.D.3d 103, 109 (1st Dep't 2014); *Atain Specialty Ins. Co. v. T. Disney Trucking & Grading, Inc.*, 692 F. Supp. 3d 1127, 1141 (M.D. Fla. 2023) ("[T]he law of contracts governs[] the right to reimbursement."). By endorsement in five out of the six Policies, Hartford "waive[d] *any right of recovery* [Hartford] may have against ... any person or organization shown in the Declarations." Ex. 14, Form SS12150300. The Firm is an "organization shown in the Declarations." *Id.*, Decl. Hartford thus waived "any right of recovery" against the Firm—including defense and settlement costs, which is dispositive as to all amounts sought from the Firm.

Similarly, Hartford "waive[d] *any right of recovery* [Hartford] may have against … any person … with whom [the Firm has] a contract that requires such waiver." *Id.*, Form SS12150300. The Firm's Articles of Incorporation permit the Firm "to indemnify the officers and directors of the corporation against any contingency or peril as may be determined to be in the best interest of this corporation." Ex. 15. Here, the Firm paid all defense costs for at least nine months before Hartford paid defense counsel directly (Ex. 7), and Bursor is undisputedly

an officer and director (Compl. ¶22). The Articles thus constitute a contract requiring waiver of Hartford's recovery rights against Bursor because, if they did not, they would serve as a carve-out to Hartford's waiver of its right to seek any recovery from the Firm and permit Hartford to substitute its judgment in place of the Firm's regarding the best interest of the Firm.

*Turner Construction* is on point. There, by endorsement, the insurer "agree[d] not to take action or recourse against any insured for loss paid or expenses incurred because of any claims made against this policy." 119 A.D.3d at 109. The insurer argued this language "only precludes it from seeking to recoup from its insured the cost of defending against *covered* claims." *Id.* The court rejected that argument: "there is nothing in the endorsement's language that differentiates between covered and uncovered claims." *Id.* at 109-10. The same is true here.

Hartford relies on the endorsement's title—"Waiver of Subrogation"—to limit the otherwise unambiguous language. But a caption "cannot be used to create ambiguity where none exists" and "is looked to only when there is ambiguity in the provision itself." *Mt. Hawley Ins. Co. v. Aquasol Condo. Ass'n*, 2019 WL 3387054, at *3 (S.D. Fla. July 26, 2019); *accord Weaver v. Axis Surplus Ins. Co.*, 2014 WL 5500667, at *14 (E.D.N.Y. Oct. 30, 2014).[3] The plain language "waives any right of recovery"—not just subrogation rights—"against any organization shown in the Declarations." Ex. 14. The language is unambiguous. *See Marathon Oil Co. v. Mid-Continent Underwriters*, 786 F.2d 1301, 1302 (5th Cir. 1986).

Reading the Policies as a whole supports this interpretation. For example, the Policies contain a "conventional subrogation provision" (Compl. ¶51) waiving Hartford's "rights of recovery against any person or organization" only where "the insured waived their rights of recovery against such person or organization in a contract, agreement or permit." Ex. 14, § E.8.b; Compl. ¶¶49-51. The Endorsement "modifies insurance provided" but does not amend,

---

[3] *See, e.*g., *Those Certain Underwriters at Lloyd's, London v. GMC Land Servs., In*c., 2007 WL 9698312, at *5 (S.D. Fla. Nov. 8, 2007)*, aff*'d, 315 F. App'x 785 (11th Cir. 2009).

12

replace, delete, or otherwise alter § E.8.b or any other provision in the Policies. *See id.* The provisions must be read harmoniously: § E.8 outlines conventional subrogation waivers; the Endorsement broadens Hartford's waiver of "any rights of recovery" beyond subrogation. *See Forbes v. City of New York*, 272 A.D.2d 221, 221-22 (1st Dep't 2000). Hartford's reading would create conflict between the provisions—an untenable result. Accordingly, the Policies' plain language requires dismissal of Counts I, II, V, and VI against both Defendants.

**B.      Count I – Hartford Cannot Recoup Through Unjust Enrichment**

Notwithstanding the Policies' complete bar for Hartford's claims, neither New York nor Florida law permits equitable remedies, like unjust enrichment, where a contract governs the subject matter of the parties' dispute. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009); *Global Network Mgmt., Ltd. v. Centurylink Latin Am. Solutions, LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023). It follows, then, that New York and Florida "preclude[] claims of unjust enrichment where an insurance policy governs the subject matter at issue." *Gjonaj Realty & Mgmt. Co. v. Am. W. Home Ins. Co.*, 192 A.D.3d 28, 41 (2d Dep't 2020); *accord MONY Life Ins. Co. v. Perez*, 146 F.4th 1018, 1026 (11th Cir. 2025).

There is no dispute that the Policies are valid contracts governing Hartford's coverage obligations and that its claims arise from them. *See* Compl. at 1; *id.* ¶10. Where, as here, the "insurance company and the insureds are contractually bound by the terms of the policy, any resort to equitable remedies as a basis for an award of defense costs is unavailing." *Gjonaj*, 192 A.D.3d at 41. Numerous courts have thus held that insurers cannot recoup through unjust enrichment. *See, e.g.*, *Crescent Beach Club v. Indian Harbor Ins.*, 468 F. Supp. 3d 515, 554-55 (E.D.N.Y. 2020); *Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 460-64 (E.D.N.Y. 2015). Hartford's "failure to include a clawback provision does not allow it to contravene or unsettle what is clearly established law in Florida." *MONY*, 146 F.4th at 1027.

13

As such, Hartford cannot recoup from either Defendant through unjust enrichment. Hartford implicitly acknowledges its unjust enrichment count fails under New York law. Compl. ¶¶61-81 (citing no New York cases). As to Florida, Hartford's conclusory assertion that Florida "adopt[ed] *Buss*" (Compl. ¶65) is false and must be ignored. *See Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1039 (Fla. Dist. Ct. App. 2000) (permitting recoupment because insured "manifested acceptance of the terms" of insurer's defense conditioned on right to reimbursement); *Certain Interested Underwriters at Lloyd's v. Halikoytakis*, 2012 WL 8013887, at *3 (M.D. Fla. Oct. 5, 2012) (Florida's "contract theory of reimbursement is in contrast to other jurisdictions that base recovery under a quasi-contract theory to prevent unjust enrichment"), *adopted*, 2013 WL 1881015 (M.D. Fla. May 6, 2013), *aff'd*, 556 F. App'x 932 (11th Cir. 2014).

In any event, Hartford cannot establish that Defendants were unjustly enriched. In response to Defendants' tender of the Underlying Complaint, Hartford analyzed the Policies against the Underlying Complaint for over a month, after which it decided to participate in the defense of the Firm and denied coverage as to Bursor. Ex. 4. Hartford acted pursuant to the Policies' "Separation of Insureds" provision requiring it to determine coverage for each potential insured individually. Throughout the Underlying Action, including through settlement, Hartford *never* denied coverage to the Firm.

To the contrary, Hartford consistently acknowledged coverage for the Firm (Exs. 2, 4) while denying coverage for Bursor (Exs. 1, 3). Even Hartford's alleged settlement reservation applied only to "the non-covered claims." Compl. ¶39. Hartford first asserted that there was no coverage for the Firm in this Action, filed *after* Hartford pushed for and participated in settlement of the Underlying Action.

Hartford's unilateral decision to participate in the defense of the Firm, its reiteration of that decision on multiple occasions, its failure to allocate after attempting to do so, and its

14

failure to ever deny coverage for the Firm, establish that the Firm received the exact benefit it bargained for under the Policies: a complete defense because all defense costs were incurred for its benefit. *See Gjonaj*, 192 A.D.3d at 41-42 ("Given New York's policy imposing upon insurers a broad duty to defend, there could be no finding that the insureds were unjustly enriched as a result of the defense provided by the insurance company for claims that were later found to be outside of the policy."). Accepting Hartford's position would mean that an insurer could never deny coverage, lure its insured into cooperation and candor, and then use that against the insured in subsequent litigation *after* the claim is resolved. Hartford's allegations fail to plausibly allege that Defendants were unjustly enriched.

## C.     Count II – Specific Performance And Contractual Reimbursement Must Be Dismissed

Each of the Policies "contains all the agreements between [the Insured] and [Hartford] concerning the insurance afforded" and its "terms can be amended or waived only by endorsement issued by [Hartford] and made a part of this policy." Ex. 14, Common Policy Conditions, § B. While Hartford alleges a "separate" contract (Compl. ¶¶91, 94), it does not allege, and never could, that it is incorporated into the Policies via endorsement. A separate contract governing reimbursement plainly constitutes an "agreement[] between [the Insured] and [Hartford] concerning the insurance afforded." Ex. 14, Common Policy Conditions, § B; *see* Compl. ¶¶83-94 (identifying the "separate contract" as its reservations of rights letter that necessarily "concern[] the insurance afforded"). Indeed, the letter Hartford alleges as the contract states its "purpose ... is to convey to you The Hartford's position with respect to the above referenced policies"—i.e., the insurance afforded under the Policies—and agrees to "participate in the defense of the Firm in connection with the Lawsuit under the primary coverage part of the Policies[.]" Ex. 4 at 1; *see Textron Inc. v. Endurance Am. Ins. Co.*, 346 A.3d 639, 648 (Del. Super. Ct. 2025) (insurer's "reservation of rights did not amend the ...

15

Policy, and no right to recoupment was ever created" where policy "require[d] an endorsement ... to be amended, and no party argue[d] that such endorsement existed").

Accordingly, Count II must be dismissed with prejudice because the alleged contract concerns the insurance afforded under the Policies and is not endorsed thereto.

Second, no contract allows recoupment. Under New York law, Hartford cannot recoup defense and settlement costs because the Policies do not provide any such right. As several courts in New York have recognized, the New York Court of Appeals would not permit an insurer to "recover its defense costs based on [a] letter wherein it reserved its rights to recoup its defense costs in the underlying litigation absent an express provision to that effect in the policy." *Gjonaj*, 192 A.D.3d at 41; *see, e.g.*, *Gen. Star Indem. Co.*, 80 F. Supp. 3d at 445 ("The court declines to award recoupment as a remedy, finding that the New York Court of Appeals would find recoupment to be inappropriate under these circumstances."); *Crescent Beach Club*, 468 F. Supp. 3d at 554; *Century Sur. Co. v. Vas & Sons Corp.*, 2018 WL 6164724, at *6 (E.D.N.Y. Aug. 31, 2018), *adopted*, 2018 WL 4804656 (E.D.N.Y. Sept. 30, 2018).

Third, the allegations confirm no other contract was formed. Even if Hartford could seek recoupment in the absence of a policy provision providing such right, Hartford does not state a viable claim because the Firm expressly rejected Hartford's reservation and ***Hartford paid anyway***. New York cases permitting insurers to recoup defense costs have done so only where "the insured [does] not object to the reservation." *United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*, 375 F. Supp. 3d 389, 401 (S.D.N.Y. 2019); *Century Sur. Co. v. Franchise Contractors, LLC*, 2016 WL 1030134, at *5 (S.D.N.Y. Mar. 10, 2016) ("In order to be entitled to reimbursement of defense costs, ... the insured must not object to the reservation.").

Florida follows the same rule. In *Colony*, the court applied the contract-based offer and acceptance theory to permit the insurer to recover defense costs upon a determination that it

16

never owed a duty to defend. 777 So. 2d at 1038-39; *see Geovera Specialty Ins. Co. v. Beaubrun*, 2021 WL 12322131, at *1 (Fla. Cir. Ct. Sept. 10, 2021) (*Colony* "is based on contract principles of offer and acceptance"). Under this framework, the insurer "must first make an offer which the insured, in turn, accepts (i.e., the insurer and insured *must first agree* that the insurer will continue to front the fees and costs of the underlying litigation with the understanding that, should there ultimately be no coverage, the insurer will have the right to recover its fees and costs)." *Nationwide Mut. Fire Ins. Co. v. Royall*, 588 F. Supp. 2d 1306, 1317 (M.D. Fla. 2008) (emphasis added). Only then "have the parties formed a separate agreement upon which the insurer may be entitled to reimbursement." *Id.*

Hartford's allegations unambiguously establish that the Firm rejected Hartford's attempts to condition its defense on a right to reimbursement. *See, e.g.,* Compl. ¶31 ("Hartford offered a selection of defense counsel" which the Firm rejected). Further, Defendants rejected and refused to consent to Hartford's first alleged reservation, responding unequivocally that, "**nothing in the Policy or law allows Hartford to recoup any defense costs, particularly from the Firm, and the Firm expressly rejects the Hartford's attempt to do so**." Ex. 5 at 4 (emphasis added); *see id.* ¶37. Defendants further "objected to Hartford's adjustments and demanded Hartford make payment in full for all invoices for the Defendants' selected defense counsel." Compl. ¶33. Similarly, Hartford's attempt to condition payment of settlement it initiated *after* agreeing to pay-in-full plaintiff's *first* demand, was rejected the same day: "Regarding Hartford's so-called reservation of rights, **we adamantly disagree that Hartford has any right to recoupment** or that any of the costs were incurred solely for purportedly non-covered claims but acknowledge that Hartford is reserving any right that it believes it has." Compl. ¶41 (emphasis added); Ex. 12 at 2. Critically, while Hartford alleges that the Insureds "acknowledge[d] that Hartford [wa]s reserving any right that it believes it has," this acknowledgment of Hartford's *position* is not an acceptance of Hartford's *conditions*—the

17

Insureds expressly and "adamantly disagree[d]" with Hartford's claimed right to recoupment in that same communication. Compl. ¶42. Notwithstanding Defendants' clear and repeated repudiations of Hartford's rights, ***Hartford paid anyway***.

It is black-letter law that a "reservation of rights does not create new rights." *Walsam 316 v. 316 Bowery Realty Corp.*, 226 A.D.3d 628, 629 (1st Dep't 2024); *accord Johnson v. Pringle Dev., Inc.*, 2006 WL 2189542, at *3 (M.D. Fla. Aug. 1, 2006) (a "reservation of rights provide[s] ... no new rights, but merely shield[s] from extinguishment any rights [a party] may have had"); *Landmark Ins. Co. v. Hensam Enters.*, 2011 WL 3366483, at *7 (S.D.N.Y. July 29, 2011) (insurer "could not have reserved its rights to enforce nonexistent terms").

Under both New York and Florida law, "the insured has the right to reject the conditions the insurer is seeking to impose, by objecting or requesting separate counsel." *Am. Empire Surplus Lines Ins. Co. v. Burlington Ins. Co.*, 2019 N.Y. Slip Op. 32221(U), at 10-11, 2019 WL 3402291 (Sup. Ct. N.Y. Cnty. July 29, 2019); *accord Halikoytakis*, 2012 WL 8013887, at *3. The Firm did exactly that: it declined Hartford's selection of defense counsel (Compl. ¶31; Ex. 6), objected to Hartford's adjustments (Compl. ¶¶32-33), and "**adamantly disagree[d] that Hartford has any right to recoupment**" (*id.* ¶41 (emphasis added)). ***Hartford paid anyway***.

An "implied contract based on parties' conduct requires proof of the same elements as an express contract, including 'mutual assent and meeting of the minds.'" *Crowe v. Managed Care of N. Am. Inc.*, 2025 WL 2829532, at *4 (S.D. Fla. Jan. 21, 2025); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2017 WL 280816, at *2 (S.D.N.Y. Jan. 20, 2017). After Hartford reserved its purported rights to seek reimbursement, the Firm explicitly rejected Hartford's terms. Ex. 5 at 4; Ex. 12 at 2. By proceeding to pay in the face of Defendants' objection, Hartford impliedly agreed to proceed on Defendants' terms—without any extracontractual right to recoup. *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 719 (8th Cir. 2009), is directly on point: where the insureds "explicitly rejected such terms" yet the insurer "decided

18

to still tender a defense," the insurer "was impliedly agreeing to proceed on the Insureds' terms." Hartford cannot "unilaterally alter[] the material terms" of the defense. *Id.*; *cf. Colony*, 777 So. 2d at 1039. Hartford thus fails to plausibly allege that the Insureds entered into a contract granting Hartford any right to recoup.

Hartford's attempt to recoup from Bursor is perplexing: Hartford denied coverage to and did not defend Bursor (Compl. ¶57)—and thus did not reserve any right to seek reimbursement from him. Notably, Hartford cites Defendants' "judicial admissions" rather than its letters to Bursor reflecting its denial. It does so only to avoid the conflict that reliance on those denial letters, under its own theory, would be a "separate contract" with Bursor, which is fatal to its claims that its letters to the Firm, accepting coverage, are a contract allowing it to recover from him.

Nonetheless, an insurer must both defend and reserve its rights to seek reimbursement. *See Wendy's of N.E. Fla., Inc. v. Vandergriff*, 865 So. 2d 520, 522 (Fla. Dist. Ct. App. 2003); *Peleus Ins. Co. v. RCD Restorations Inc.*, 77 Misc. 3d 1225(A), 2023 WL 193721, at *2 (N.Y. Sup. Ct. 2023). Hartford's letter to the Firm only reserved a right to seek reimbursement "from other carriers, or from the Firm as appropriate"—*not Bursor*. Compl. ¶29. Hartford also stated that it did "not waive its rights, if any, to seek ... reimbursement for any payments paid **either to Bursor**, other carriers, or otherwise," but that did not reserve any right to recoup *from* Bursor. *Id.* Hartford remained steadfast in its denial even when seeking to allocate defense expenses. That Hartford can now recover from Bursor who it *did not* defend is unsupported by law and should be rejected. But even if Hartford's allegations showed that it both defended Bursor and reserved rights (contrary to its own denial letter), Hartford's reservation was rejected. Count II must therefore be dismissed.

19

**D.    Hartford Cannot Recover Amounts It Voluntarily Paid With Full Knowledge Of The Relevant Facts**

Hartford cannot recover amounts it voluntarily paid with full knowledge of its coverage defenses. The voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003); *accord City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959). This applies to insurers: when an insurer makes a payment "not obligated under its policy of insurance, it [becomes] a volunteer with no right to recover." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ranger Ins. Co.*, 190 A.D.2d 395, 397 (4th Dep't 1993); *see Steadfast Ins. Co. v. Sheridan Children's Healthcare Servs., Inc.*, 34 F. Supp. 2d 1364, 1367 (S.D. Fla. 1998) (where insurer "fail[s] to obtain a non-waiver agreement allowing it to recover from its insured money paid to settle a third-party claim, it has no right to recover against its insured . . . or its professional employees"). Hartford alleges the Underlying Action was never covered (Compl. ¶¶66-75), yet paid after reviewing the Underlying Complaint for a month, and alleges no fraud or mistake.

To overcome the doctrine, there must be "some compulsion or coercion attending its assertion which controls the conduct of the party making the payment." *Easter v. City of Orlando*, 249 So. 3d 723, 727 (Fla. Dist. Ct. App. 2018). Hartford's allegations that Defendants threatened bad faith litigation (Compl. ¶74) are insufficient. *See State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354, 1362 (M.D. Fla. 2023) ("threat of litigation alone" does not render payment involuntary); *Dominion Ins. Co. v. State*, 305 A.D.2d 779, 781-82 (2d Dep't 2003). Indeed, Hartford knew its defenses but paid anyway.

The doctrine places "the onus ... on a party that receives what it perceives as an improper demand for money" to "take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *Utica Mut. Ins. Co. v. Am. Re-Ins. Co.*, 218 A.D.3d 1283 (4th Dep't 2023); *accord LaRocca*, 685 F. Supp. 3d at 1363 (the payor is

20

"expected to withhold payment and assert its defense to the payee's claim in the litigation"). Hartford agreed to participate in the Firm's defense after its own review of the Underlying Complaint and never denied coverage to the Firm. *See* Exs. 2, 4. Hartford then initiated the push for settlement and demanded Defendants carry out Hartford's desire to settle—all under threat of withdrawing from the Firm's defense—without ever denying coverage or providing any basis to do so. *See* Exs. 10-12. Hartford's reservation of rights—even if it constituted a "protest"—therefore cannot render Hartford's payment involuntary. *See Cutter v. City of New York*, 92 N.Y. 166, 171 (1883) ("[W]here there is no legal compulsion, a party yielding to the assertion of an adverse claim cannot detract from the force of his concession by saying I object."); *cf. Steadfast*, 34 F. Supp. 2d at 1366-67. Because Hartford's "failure to exercise its rights does not mean it acted under duress," *Textron*, 346 A.3d at 651, Hartford cannot recover the defense and settlement costs that it voluntarily paid on behalf of the Firm.

### E. Counts V And VI – Declaratory Judgment And Accounting (In The Alternative) Must Be Dismissed As Moot

Because the Policies' plain language and applicable law prevent Hartford from pursuing any of the recovery it seeks through this Action, Counts V and VI—pursuing the same damages Hartford seeks in Counts I and II—are moot and must be dismissed with prejudice. *See State Farm Mut. Auto. Ins. Co. v. Coker*, 505 F. App'x 824, 826 (11th Cir. 2013) (dismissing insurer's declaratory judgment claim regarding coverage as moot where insurer "was not entitled to pursue attorneys' fees and costs ... because it did not reserve the right to recover its costs"); *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988) (accounting is not available "absent some independent cause of action").

## II. HARTFORD'S SUBROGATION CLAIMS MUST BE DISMISSED

### A. The Anti-Subrogation Rule Extends To Bursor As The Firm's Sole Owner

Hartford hedges its bets: after repeatedly alleging that the Underlying Action falls entirely outside the scope of coverage, Hartford asserts that even if the Firm is covered, Bursor

is not, allowing Hartford to subrogate against Bursor. Compl. ¶¶55–56, 97-107. That argument fails. Hartford cannot recover from Bursor amounts it paid for a loss covered under its Policies that provided coverage to the Firm for the exact liability alleged against it. Under either New York or Florida law, the anti-subrogation rule prohibits that result, regardless of whether Bursor was independently covered under the Policies.

While subrogation entitles an insurer to "stand in the shoes" of its insured to seek indemnification from third parties, it is "generally limited to claims against a 'third-party stranger' to the policy." *Nat'l Cas. Co. v. Beth Abraham Hosp.*, 1999 WL 710780, at *4 (S.D.N.Y. Sept. 10, 1999). An insurer thus "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *Pa. Gen. Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 468 (1986); *accord Steadfast*, 34 F. Supp. 2d at 1366.

The anti-subrogation rule serves two purposes: it (1) "prevents an insurer from passing to one of its own insureds the losses resulting from the risk that the insurer willingly agreed to accept"; and (2) "guards against the potential for a conflict of interest." *Kurtin v. Nat'l R.R. Passenger Corp.*, 1996 WL 194296, at *2 (S.D.N.Y. Apr. 22, 1996). Hartford alleges the rule does not apply because Bursor "was not insured or otherwise covered." Compl. ¶56. That is wrong.

Regardless of Bursor's insured status, "an insurance company has no right of subrogation against parties so close to the insured that subrogation would be inequitable." *Columbia Mut. Ins. Co. v. Perfecting New Life Learning Ctr.*, 2009 WL 10677181, at *6 (E.D. Ark. May 20, 2009); *see Beth Abraham Hosp.*, 1999 WL 710780, at *4. New York courts have thus applied the rule to third parties who are not covered based on conflict-of-interest concerns. *See, e.g.*, *Fireman's Ins. Co. of Newark, N.J. v. Wheeler*, 165 A.D.2d 141, 145 (3d Dep't 1991) (barring subrogation against sole owner and president of insured corporation); *Med. Liab. Mut. Ins. Co. v. Schurig*, 211 A.D.2d 518, 518 (1st Dep't 1995).

Hartford's assertions that Bursor's conduct is uninsurable do not change the result. To begin, uninsurable conduct has never been established as the case settled—Hartford merely relies on unproven allegations, which the Court may ignore (and strike). But more importantly, Hartford "cannot simply deny that it insured [Bursor] in order to circumvent the anti-subrogation rule, and its failure to defend [Bursor] did not remove the conflict of interest from the case, but simply rendered it latent." *Nat'l Cas. Co. v. State Ins. Fund*, 227 A.D.2d 115, 117 (1st Dep't 1996). Bursor is the sole owner, CEO, and CFO of the Firm. Compl. ¶¶21-22. Having "agreed to insure the business enterprise here in a corporate form, [Hartford] certainly is charged with awareness that the entity it insured could only act through its officers." *Wheeler*, 165 A.D.2d at 145.

Permitting Hartford's subrogation claims against Bursor would defeat the purpose of this rule by "affect[ing] the insurer's incentive to provide a vigorous defense for its insured." *State Ins. Fund*, 227 A.D.2d at 116. If Hartford could subrogate against Bursor, Hartford would have no incentive to vigorously defend the Firm. Here, Hartford initiated the settlement discussions culminating in settlement, expressed multiple times its desire to "resolv[e] … the disputes between Mr. Bursor and Ms. Parker" (Ex. 10), threatening to withdraw from the Firm's defense "[i]f Bursor & Fisher, P.A. does not wish to settle the *lawsuit*" against it "and Mr. Bursor" (Ex. 12 at 3 (emphasis added)), and never revealing its intent to subrogate against Bursor. Permitting the subrogation claims would retroactively inject precisely the type of (here, undisclosed) conflict the rule is meant to prevent. *See Pa. Gen. Ins. Co.*, 68 N.Y.2d at 472; *Beth Abraham Hosp.*, 1999 WL 710780, at *6.

The Policies require the Firm to cooperate with and "do nothing after loss to impair" Hartford's rights. Compl. ¶¶49, 98-99. Permitting subrogation would place Bursor, "as the principal officer of the named insured corporation, ... in the dilemma of having to furnish the necessary information and to fully cooperate in [Hartford's] efforts to recover the loss from

23

him personally or forfeit his corporation's policy right to indemnity." *Wheeler*, 165 A.D.2d at 145-46. The anti-subrogation rule prohibits such "compromise of the integrity of the insurer's relationship with its insured." *Id.*; *see Weinreb v. Weinreb*, 140 A.D.2d 226, 228 (2d Dep't 1988); *Beth Abraham Hosp.*, 1999 WL 710780, at *6. Hartford's subrogation claims must therefore be dismissed.

### B. Hartford Waived Its Subrogation Rights Against Bursor For Any Breach Of Duty

Hartford's breach of fiduciary duty claim fails because the Firm's Articles of Incorporation waive claims against directors and officers for breach of duty. Where a "subrogor has no rights or priorities against a specified third party, then the subrogee has nothing to inherit." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 647 (Fla. 1999); *accord Wausau Underwriters Ins. Co. v. Gamma USA, Inc.*, 166 A.D.3d 928, 931 (2d Dep't 2018). Hartford cannot create through subrogation rights that the Firm relinquished.

The Policies confirm this by waiving Hartford's recovery rights where the insured has waived those rights:

> If the insured has waived any rights of recovery against any person or organization for all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, we also waive that right, provided the insured waived their rights of recovery against such person or organization in a contract, agreement or permit that was executed prior to the injury or damage.

Ex. 14. The Firm's Articles eliminate personal liability for "breach of any duty owed to the Corporation or its shareholders":

> To the fullest extent permitted by law, no director or officer of the Corporation shall be personally liable to the Corporation or its shareholders for damages for breach of any duty owed to the Corporation or its shareholders. In addition, the Corporation shall have the power … to undertake to indemnify the officers and directors of this corporation against any contingency or peril as may be determined to be in the best interest of this corporation, and in conjunction therewith, to procure, at this corporation's expense, policies of insurance.

Ex. 15. Hartford, standing in the Firm's shoes, cannot recover what the Firm itself could never claim. Hartford's supporting allegation (Compl. ¶118) is a legal conclusion, not a factual

allegation, that is insufficient to overcome the Articles' exculpatory protections. *See Max v. ALP, Inc.*, 203 A.D.3d 580, 580 (1st Dep't 2022).

### C.    Parroting Unproven Allegations From The Underlying Complaint Is Inadmissible And Insufficient To Support Hartford's Claims

Hartford does not allege that Bursor breached any fiduciary duty or is legally responsible for damages; it merely alleges he "was alleged to have taken actions that were in breach of his fiduciary duty" in the Underlying Action.[4] Compl. ¶116. "[R]ecitations of unproven allegations made in other complaints do not, on their own, constitute factual allegations sufficient to survive a motion to dismiss." *Zhou v. NextCure, Inc.*, 2023 WL 4493541, at *11 (S.D.N.Y. July 12, 2023); *see, e.g.*, *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) ("Plaintiffs' citation to 'unproven allegations' made in [other] complaints do not constitute factual allegations."). Accordingly, Hartford fails to allege sufficient facts to support its subrogation claims.[5]

Additionally, Hartford's contribution claim separately fails because the Underlying Action settled, with Hartford's participation and approval, before any decision on the merits. *See Fromer v. Yogel*, 50 F. Supp. 2d 227, 240 (S.D.N.Y. 1999) ("[B]y virtue of the settlement agreement, any claim for contribution under New York state law has been statutorily extinguished and Defendants' motions to dismiss the state law contribution claim are granted."); N.Y. Gen. Oblig. Law § 15-108. The settlement of the Underlying Action likewise extinguished any potential indemnity rights that the Firm had against Bursor. *See Allstate Ins.*

---

[4] Defendants request the Court, pursuant to F.R.C.P. 12(f), strike the allegations relying on and/or citing unproven allegations from the Underlying Complaint used to support Hartford's subrogation claims. *RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 403-04 (S.D.N.Y. 2009).

[5] Hartford's cannot seek punitive damages because an insurer "is only entitled to the amount that it has paid" through subrogation. *Fireman's Fund Ins. v. Never Stop Trucking*, 2009 WL 3297780, at *2 (E.D.N.Y. Oct. 13, 2009); *accord McCabe v. Fla. Power & Light*, 68 So. 3d 995, 997 (Fla. Dist. Ct. App. 2011); *see also Utica Mut. Ins. v. Denwat*, 778 F. Supp. 592, 594 (D. Conn. 1991) (punitive damages barred in subrogation actions).

*Co. v. State*, 152 Misc. 2d 869, 872 (N.Y. Ct. Cl. 1991) ("Common law indemnification may not be invoked where the party seeking recovery has settled" but instead "requires a judgment compelling payment"). Because the Underlying Action settled, on Hartford's instruction and with its approval, no set of facts exists under which the Firm could be held vicariously liable for Bursor's actions that Hartford alleges form the basis of its contribution claim.

### D.    Count VII – Breach Of Contract Fails

Hartford does not allege any breach of contract to support its alternative breach of contract claim; it merely alleges conclusory allegations rooted only in baseless supposition. Compl. ¶¶138–143. Because Hartford fails to allege any specific act constituting a breach, this claim must be dismissed. *See Merch. Cash & Cap. LLC v. Edgewood Grp., LLC*, 2015 WL 4430643, at *10 (S.D.N.Y. July 2, 2015) (complaint that does not identify "the acts of the defendant constituting a breach, fails to state a claim"); *Davis v. Lake Wales Charter Schs.*, 2006 WL 2864321, at *5 (M.D. Fla. Oct. 5, 2006). Further, because Hartford's subrogation claims fail, no rights would be impaired by any potential breach.

### CONCLUSION

Based on the foregoing, Defendants respectfully request that Hartford's Amended Complaint be dismissed with prejudice in its entirety.

26

July 27, 2026

COHEN ZIFFER FRENCHMAN &
MCKENNA LLP

By: _____

Kenneth H. Frenchman
Jason M. Sumbaly
1325 Avenue of the Americas, 31st Floor
New York, NY 10019
(212) 584-1890
kfrenchman@cohenziffer.com
jsumbaly@cohenziffer.com

*Attorneys for Defendants Bursor &
Fisher, P.A., and Scott Bursor*

27

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(C)**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 8,749 words (according to Microsoft Word's Word Count function), exclusive of the cover page, and any index, table of contents, table of authorities, signature blocks, or any required certificates, and that this Memorandum of Law complies with the formatting rules contained in the Southern District of New York's Local Rules.

/s/ Kenneth H. Frenchman
Kenneth H. Frenchman

28