**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>BURSOR & FISHER, P.A., and SCOTT BURSOR,<br><br>Defendants. | Case No.: 1:25-cv-10000-AT-VF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hon. Analisa Torres |

# TABLES OF CONTENTS


INTRODUCTION .....1

ARGUMENT .....3

I. THE UNDERLYING CLAIMS AGAINST DEFENDANTS ARE UNINSURABLE UNDER CALIFORNIA LAW AND PUBLIC POLICY .....7

II. HARTFORD'S CLAIMS ARE PROPER UNDER CALIFORNIA AND FLORIDA LAW, THE ONLY LAW APPLICABLE TO INTERPRETATION WERE DEFENDANTS CORRECT ABOUT NEW YORK LAW .....9

A. Hartford Did Not Waive Its Direct Reimbursement Rights .....10

1. The Court Considers Headings; Specific Controls the General. .....10

2. The Waiver Does Not Apply to B&F. .....13

3. The Waivers Are Not Prospective. .....14

B. Hartford's Unjust Enrichment Claim (Count I) States a Valid Claim Under California and Florida Law .....15

C. Hartford's Contract Claims (Count II) Survive .....17

1. Reservations of Rights. .....17

2. The Fronting and Reimbursement Agreement. .....21

a. There Was No "Rejection." .....22

b. Defendants' "Counteroffer" Argument Fails. .....22

c. The "Changes" Provision Does Not Preclude Future Contracts .....23

3. Voluntary Payments Is No Defense to Hartford's Claims. .....25

D. Hartford's Subrogation Claims (Counts III & IV) Survive .....26

1. B&F's Exculpatory Provision is Void. .....26

2. B&F's Indemnity Provision is Neither Required Nor a Waiver................27

3. Contribution and Indemnification are Allowed for Settlements. ...............28

4. The Anti-Subrogation Defense Fails.......................................................29

5. Hartford's Punitive Damages Claims Survive. ......................................30

6. Defendants' Pleading Complaints are Curable. ........................................30

E. Counts V and IV Survive. ..........................................................................31

F. Count VII is in Alternative and Fact-Dependent .................................................31

CONCLUSION..........................................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Ackerley Media Group, Inc. v. Sharp Electronics Corp.*,
170 F. Supp. 2d 445 (S.D.N.Y. 2001) ....................8

*American Western Home Insurance Co. v. Gjonaj Realty & Management Co.*,
192 A.D.3d 28 (2nd Dep't 2020) ....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2 n.2

*Atlantic Coast Development Corp. v. Napoleon Steel Contractors*,
385 So. 2d 676 (Fla. Dist. Ct. App. 1980) ....................28

*Avatar Properties, Inc. v. Gundel*,
372 So. 3d 715 (Fla. Dist. Ct. App. 2023) ....................25

*Aztec Motel, Inc. v. State ex rel. Faircloth*,
251 So. 2d 849 (Fla. 1971) ....................26

*Baron Oil Co. v. Nationwide Mutual Fire Insurance Co.*,
470 So. 2d 810 (Fla. Dist. Ct. App. 1985) ....................22 n.8

*Beach Higher Power Corp. v. Granados*,
717 So. 2d 563 (Fla. Dist. Ct. App. 1998) ....................24

*BellSouth Telecommunications, Inc. v. Church & Tower of Florida, Inc.*,
930 So. 2d 668 (Fla. Dist. Ct. App. 2006) ....................19 n.7

*Blue Ridge Insurance Co. v. Jacobsen*,
22 P.3d 313 (Cal. 2001) ....................16, 21, 22 n.8, 25

*Budget Rent-A-Car Systems, Inc. v. State Farm Mutual Automobile Insurance Co.*,
727 So. 2d 287 (Fla. Dist. Ct. App. 1999) ....................28–29

*Buss v. Superior Court*,
939 P.2d 766 (Cal. 1997) ....................2–3, 15

*Caceres Drywall Corp. v. Amerisure Mutual Insurance Co.*,
No. 11-61427-CIV, 2012 WL 13005816 (S.D. Fla. Mar. 19, 2012) ....................11

*Certain Underwriters at Lloyds of London v. Pero Family Farm Food Co., Ltd.*,
No. 20-12711, 2023 WL 2855844 (11th Cir. Apr. 10, 2023) ....................11

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*,
36 A.D.3d 17 (1st Dep't 2006)....8, 9

*Chames v. DeMayo*,
972 So. 2d 850 (Fla. 2007)....15

*Colony Insurance Co. v. G & E Tires & Service, Inc.*,
777 So. 2d 1034 (Fla. Dist. Ct. App. 2000) ....2, 17–18, 18

*Dandong Old North-East Agriculture. & Animal Husbandry Co., Ltd. v. Pasternak Baum & Co.*,
No. 17 CIV. 4571 (KPF), 2018 WL 1399207 (S.D.N.Y. Mar. 19, 2018)....8

*Dear v. Q Club Hotel, LLC*,
No. 15-60474-CIV, 2016 WL 7477734 (S.D. Fla. Dec. 8, 2016) ....25

*Dixie National Bank of Dade County v. Employers Commercial Union Insurance Co. of America*,
463 So. 2d 1147 (Fla. 1985)....29

*Doyle v. City of Coral Gables*,
33 So. 2d 41 (Fla. 1947)....23

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938)....19

*Ezrasons, Inc. v. Rudd*,
275 N.E.3d 141 (N.Y. 2025) ....26

*F.H. Paschen, S.N. Nielsen & Associates LLC v. B&B Site Development, Inc.*,
311 So. 3d 39 (Fla. Dist. Ct. App. 2021)....16–17

*Famiglio v. Famiglio*,
279 So. 3d 736 (Fla. Dist. Ct. App. 2019) ....13–14

*Farmers & Merchants Bank of Monroe v. Federal Reserve Bank of Richmond*,
262 U.S. 649 (1923)....8 n.5

*Fireman's Fund Insurance Co. v. Wood Investments, Inc.*,
No. 8:23-CV-02200-JWH-KES, 2025 WL 2370915 (C.D. Cal. June 23, 2025) ....24

*Forest Construction, Inc. v. Farrell-Cheek Steel Co., Florida Diversified Properties Division*,
484 So. 2d 40 (Fla. Dist. Ct. App. 1986) ....16

*Fuller v. Kemp*,
33 N.E. 1034 (N.Y. 1893) ....20

*Head v. Lane*,
495 So. 2d 821 (Fla. Dist. Ct. App. 1986) ....................24

*Hendricks v. Stark*,
126 So. 293 (Fla. 1930)....................18, 24

*Hirsch v. Berger Import & Mfg. Corp.*,
67 A.D.2d 30 (1st Dep't 1979)....................20

*Home Building & Loan Association v. Blaisdell*,
290 U.S. 398 (1934)....................15

*Homesite Insurance Co. of the Midwest v. Gree USA, Inc.*,
No. 2:16-CV-06769-ODW-JC, 2017 WL 2271121 (C.D. Cal. May 24, 2017)....................30

*Hudson v. Yonkers Fruit Co.*,
179 N.E. 373 (N.Y. 1932) ....................19–20

*James River Insurance Co. v. Arlington Pebble Creek, LLC*,
188 F. Supp. 3d 1246 (N.D. Fla. 2016)....................19

*JDS Development LLC v. Parkside Construction Builders Corp.*,
231 A.D.3d 223 (1st Dep't 2024)....................23

*JM Family Enterprises, Inc. v. Winter Park Imports, Inc.*,
10 So. 3d 1133 (Fla. Dist. Ct. App. 2009)....................27

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*,
162 F.3d 1290 (11th Cir. 1998) ....................23–24

*Kaweblum v. Thornhill Estates Homeowners Association, Inc.*,
755 So. 2d 85 (Fla. 2000)....................27

*Keywell Corp. v. Weinstein*,
33 F.3d 159 (2d Cir. 1994) ....................7

*Kuber v. Berkshire Life Insurance Co. of America*,
No. 19-80211-CV, 2019 WL 7899140 (S.D. Fla. Oct. 3, 2019) ....................15–16

*Lago v. Krollage*,
575 N.E.2d 107 (N.Y. 1991) ....................26–27

*Linear Corp. v. Standard Hardware Co.*,
423 So. 2d 966 (Fla. Dist. Ct. App. 1982) ....................24

*Matter of Express Industries & Terminal Corp. v. New York State Department of Transportation*,
93 N.Y.2d 584 (N.Y. 1999) ....................23

*Mazzaferro v. RLI Ins. Co.*,
50 F.3d 137 (2d Cir. 1995) ....................11

*Mcintosh v. Missile View MHP, LLC*,
No. 05-2022-CA-056512, 2025 WL 3284234 (Fla. Cir. Ct. Apr. 2, 2025) ....................25

*McKenzie Check Advance of Florida, LLC v. Betts*,
112 So. 3d 1176 (Fla. 2013) ....................27

*Melville v. Kruse*,
66 N.E. 965 (N.Y. 1903) ....................20

*Millennium Holdings LLC v. Glidden Co.*,
53 N.E.3d 723 (N.Y. 2016) ....................29

*MONY Life Insurance Co. v. Perez*,
146 F.4th 1018 (11th Cir. 2025) ....................25

*Moscato Corp. v. Mutchnik Constuction Group, Inc.*,
411 So. 3d 570 (Fla. Dist. Ct. App. 2025) ....................24

*Murphy v. Young Men's Christian Association of Lake Wales, Inc.*,
974 So. 2d 565 (Fla. Dist. Ct. App. 2008) ....................14

*Nassoiy v. Tomlinson*,
42 N.E. 715 (N.Y. 1896) ....................19

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Turner Construction Co.*,
119 A.D.3d 103 (1st Dep't 2014) ....................28

*Nationwide Mutual Fire Insurance Co. v. Royall*,
588 F. Supp. 2d 1306 (M.D. Fla. 2008) ....................18

*Nicon Construction, Inc. v. Homeowners Choice Property & Casualty Insurance Co.*,
249 So. 3d 681 (Fla. Dist. Ct. App. 2018) ....................12

*Norfolk & Western Railway Co. v. American Train Dispatchers Association*,
499 U.S. 117 (1991) ....................8 n.5

*North Star Reinsurance Corp. v. Continental Insurance Co.*,
624 N.E.2d 647 (N.Y. 1993) ....................29

*Payson v. 50 Sutton Place South Owners, Inc.*,
107 A.D.3d 506 (1st Dep't 2013)....................14

*Peers v. McLaughlin*,
26 P. 119 (Cal. 1891)....................21

*Pegasus Aviation IV, Inc. v. Aerolíneas Austral Chile, S.A.*,
No. 08 CIV. 11371 NRB, 2012 WL 967301 (S.D.N.Y. Mar. 20, 2012)....................7–8

*Pierce Law Group, LLP v. Factor*,
408 So. 3d 148 (Fla. Dist. Ct. App. 2025)....................15

*Professional Insurance Corp. v. Cahill*,
90 So. 2d 916 (Fla. 1956)....................24

*Property Registration Champions, LLC v. Mulberry*,
373 So. 3d 675 (Fla. Dist. Ct. App. 2023)....................11–12

*Public Service Mutual Insurance Co. v. Liberty Surplus Insurance Corp.*,
51 F. Supp. 3d 937 (E.D. Cal. 2014)....................30

*Raines v. Palm Beach Leisureville Community Association*,
317 So. 2d 814 (Fla. Dist. Ct. App. 1975)....................12

*Ranger Insurance Co. v. Bal Harbour Club, Inc.*,
549 So. 2d 1005 (Fla. 1989)....................22–23

*Rolyn Companies, Inc. v. R & J Sales of Texas, Inc.*,
671 F. Supp. 2d 1314 (S.D. Fla. 2009)....................11

*Roofing Experts of South Florida, Inc. v. USAA Casualty Insurance Co.*,
No. 19-80653-CIV, 2019 WL 7881719 (S.D. Fla. Aug. 15, 2019)....................12

*Rosenblatt v. Birnbaum*,
212 N.E.2d 37 (N.Y. 1965)....................20

*Sanislo v. Give Kids the World, Inc.*,
157 So. 3d 256 (Fla. 2015)....................14

*Save Mart Supermarkets v. Underwriters at Lloyd's London*,
843 F. Supp. 597 (N.D. Cal. 1994)....................11

*Scocozzo v. General Development Corp.*,
191 So. 2d 572 (Fla. Dist. Ct. App. 1966)....................18

*Seduction Cosmetic Center Corp. v. Dunbar*,
427 So. 3d 1031 (Fla. Dist. Ct. App. 2025) ....................10–11

*In re Standard Jury Instructions--Contract & Business Cases*,
116 So. 3d 284 (Fla. 2013)....................18

*State ex rel. Buckwalter v. City of Lakeland*,
150 So. 508 (Fla. 1933)....................15

*State Farm Fire & Casualty Co. v. Fleet Financial Corp.*,
724 So. 2d 1218 (Fla. Dist. Ct. App. 1998) ....................16

*Steadfast Insurance Co. v. Sheridan Children's Healthcare Services, Inc.*,
34 F. Supp. 2d 1364 (S.D. Fla. 1998)....................25–26

*Stevenson v. Stevenson*,
661 So. 2d 367 (Fla. Dist. Ct. App. 1995) ....................18

*Sundance Apartments I, Inc. v. General Electric Capital Corp.*,
581 F. Supp. 2d 1215 (S.D. Fla. 2008)....................25

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 118 (2d Cir. 2013) ....................2 n.2

*The Turner Corp. v. Lexington Insurance Co.*,
No. N25C-03-301 PRW CCLD, 2026 WL 2227785(Del. Super. Ct. Aug. 3, 2026) ...20–21

*Travelers Indemnity Co. v. Figg Bridge Engineers, Inc.*,
389 F. Supp. 3d 1060 (S.D. Fla. 2019)....................18–19

*Weiss v. Weiss*,
266 A.D. 795 (2nd Dep't 1943) ....................20

*Wendy's of N.E. Florida, Inc. v. Vandergriff*,
865 So. 2d 520 (Fla. Dist. Ct. App. 2003) ....................25 n.9

*Winter Garden Ornamental Nursery, Inc. v. Cappleman*,
201 So. 2d 479 (Fla. Dist. Ct. App. 1967) ....................11

**STATUTES**

California Civil Code § 1668 ....................8

California Civil Code § 3513 ....................9, 15

California Civil Code § 3521 ....................21

California Insurance Code § 533 ....................1, 8

Florida Statutes § 607.0831 ....................27

Florida Statutes § 607.08411 ....................27

Florida Statutes § 607.0859 ....................27

Florida Statutes § 725.04 ....................25

Florida Statutes § 783.31 ....................28

Sentinel Insurance Company, Limited ("Hartford") files its opposition to Defendants Bursor & Fisher, P.A. ("B&F") and Scott Bursor's ("Bursor") memorandum in support of their motion to dismiss, ECF No. 67 ("Motion").[1]

## INTRODUCTION

Defendants kick off their Motion by saying this case is remarkable. This case is remarkable: Defendants assert they are *entitled* to insurance coverage for rape, battery, intentional infliction of emotional distress, and gender-motivated crimes of violence. Liability insurance does not cover those alleged crimes and intentional torts, regardless of Defendants' denials. Because Hartford paid defense and settlement costs under reservations of rights and a reimbursement agreement, Hartford is entitled to reimbursement from Defendants under any applicable state's law.

Hartford alleges California and/or Florida law applies to Hartford's claims. Defendants know they lose under those states' laws, so argue the Court can rule out California law and argue Hartford's claims are invalid under Florida law while declaring there is no conflict with New York law. Defendants are wrong.

Defendants' choice of law argument ignores that one state's law may determine policy validity/legality issues while another may govern interpretation. Five of the six at-issue policies were entered in California, issued at B&F's California address. For those policies, California law indisputably governs whether rape, battery and other intentional misconduct is insurable. Statutorily, the answer is no: "[a]n insurer is not liable for loss caused by the wilful act of the insured." Cal. Ins. Code § 533. Hartford cannot insure the alleged crimes and intentional torts as a matter of statute and public policy; and Hartford's reimbursement follows regardless of

[1] Citations to docket entries use ECF pages, rather than pagination at the bottom.

whether Florida or California law governs interpretation – the sole focus of Defendants' choice of law argument.

Nor can Defendants rule out California law for interpretation issues at the dismissal (or even summary judgment) stage. On this record, the Court cannot foreclose that California was B&F's domicile when the policies were issued. All six policies went through B&F's California broker; five were issued to B&F's California address. In seeking to rule out California, Defendants aver to various of their own corporate filings, *see* ECF No. 70. The Court cannot consider those filings on a motion to dismiss, and were the Motion converted to a summary judgment motion, the Court would have to deny it pending discovery under Rule 56(f) into, *inter alia*, why, if B&F's domicile was not California, B&F used a California broker and directed Hartford to issue five policies to B&F's California address as B&F's principal address, as shown in the Declarations of those policies.[2]

Even if California law ultimately did not govern interpretation of any policy, Florida law – not New York – would. Contrary to Defendants' arguments, if New York foreclosed Hartford's reimbursement rights (we disagree it does), it would conflict with Florida law, which recognizes Hartford's reimbursement rights. Defendants' Florida law argument is to contort one case, *Colony Insurance Co. v. G & E Tires & Service, Inc.*, 777 So. 2d 1034 (Fla. Dist. Ct. App. 2000). But *Colony*, and Florida law, *allows* Hartford's reimbursement claims and denies Defendants' "rejection" theories.

There is no circumstance where the Court could, as Defendants' urge, rule Hartford has no reimbursement rights. California provides Hartford reimbursement rights under *Buss v.*

[2] Under Rule 12(b)(6), if the Court can draw any "reasonable inference" that Defendants may be liable from the "pleaded factual content", the claims survive. *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The allegations are "liberally" construed in Hartford's favor and accepted as true. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 122 (2d Cir. 2013) (citing various).

*Superior Court* and its progeny; Defendants do not even try to argue otherwise. Florida provides Hartford's reimbursement rights under *Colony* and the cases following (and preceding) it, as Defendants, by taking Hartford's money, are deemed to have accepted Hartford's reimbursement conditions. And, if New York law differed, that conflict would require application of California or Florida law.

Hartford did what the law encourages: reserve, defend, pay the claimant, and seek reimbursement from the insured later. This framework serves the goal of compensating victims, shifting recovery risks to insurers if insureds are judgment proof. Defendants are not judgment proof; Defendants must reimburse Hartford. That is the right result, legally and ethically.

Defendants seek dismissal of all seven of Hartford's counts. Below, we address Defendants' arguments for each. Defendants spend most of their brief arguing New York law and citing New York cases; we do not. Rather, we focus on Florida law, as Defendants know they lose under California law. And, were Defendants right about New York law (they are not), it would yield to Florida law, the state Defendants argue is/was B&F's domicile.

## ARGUMENT

The "Underlying Action," 1:24-cv-00245-JGLC-RFT (S.D.N.Y.), was *solely* for rape, battery, intentional infliction of emotional distress, and gender-motivated crimes of violence. Negligence never appears in the underlying complaints. Underlying Action, ECF No. 388, https://perma.cc/Q9JF-BQ64, and ECF No. 424, https://perma.cc/BD9C-DJ4S.[3] Hartford does not have space to describe the horrific allegations in those documents, which facially and

---

[3] The sole changes between the First Amended Complaint and the original Complaint in the Underlying Action are the striking/redactions ordered by Judge Clarke, *see* Underlying Action, ECF No. 345 at 29–30, https://perma.cc/R2UL-JZM6; and *compare* Underlying Action ECF Nos. 53-1 and 388. These documents have been unsealed in the Underlying Action and are available on Law360, ECF No. 388, ECF No. 424, and Westlaw, ECF No. 388, ECF No. 424.

indisputably describe intentional, not accidental, misconduct. Bursor, B&F's sole owner and officer, dominated and controlled B&F, wielding B&F to further his as-alleged abuse, such that B&F was asserted to have actual malice and knowledge of Bursor's wrongdoing. *See* Exhibits 1 ¶¶ 255–62 and 2 ¶¶ 283–90 (sections entitled "B&F's Liability").[4]

Defendants tendered the Underlying Action to Hartford, seeking coverage under six policies for policy periods August 4, 2018 to August 4, 2024. All six policies were issued through B&F's California broker: five at B&F's California address, the sixth in Florida. Hartford defended B&F under a reservation and, at Defendants' request and consent, paid to settle the claims against both Defendants. Hartford conditioned its agreement to front the settlement and remaining defense costs on "Hartford's right to seek reimbursement for the amount of the settlement and all defense costs it has paid that are attributable to the non-covered claims in the lawsuit." Amended Complaint ¶ 88. Defendants accepted Hartford's payments.

Hartford's lawsuit seeks full reimbursement. Hartford pleads three direct claims: Count I: Unjust Enrichment; Count II: Specific Performance and Contractual Reimbursement; and Count VI: In the Alternative – Accounting. Hartford pleads two subrogation claims against Bursor, gained from B&F by Hartford's payments: Count III: Contribution and Indemnity and Count IV: Breach of Fiduciary Duty. Hartford pleads Count VII: In the Alternative – Breach of Contract against B&F, if B&F impaired Hartford's recovery rights. Counts V and VI are alternative counts, if partial payment was owed.

To win, Defendants must show (i) all the underlying claims are lawfully insurable, and (ii) that Hartford lacks any reimbursement rights as a matter of law under any of its allegations. Defendants cannot show either. The underlying claims are statutorily uninsurable under

---

[4] It is inexcusable for Defendants to suggest otherwise. *See* Motion at 6; ECF No. 62 at 3.

California law, which bars coverage and entitles Hartford to recover under at least five policies as a matter of public policy (Florida and New York's public policies are in accord). Even *were* the claims insurable, Hartford still has reimbursement rights under California law (undisputed) and Florida law (disputed based on a misreading) because the claims were uncovered anyway, and Hartford did what the law encourages insurers do: pay the underlying claimant under a reservation and seek reimbursement from the insured(s) later where it pays for uncovered claims.

Because Defendants' arguments ping-pong between the various counts; below is a chart broadly summarizing the Defendants' arguments and Hartford's responses:

| **COUNTS** | **DEFENDANTS' ARGUMENTS** | **HARTFORD'S RESPONSES** |
|---|---|---|
| I – Unjust Enrichment | 1. California law does not apply; | 1. First five policies were issued in California, so California law and remedy is part of those; fact issue on principal place of business. |
| | 2. Voluntary payments; | 2. Inapplicable by Fla. Stat. § 725.04, California Supreme Court (*Blue Ridge*), and as to the reimbursement contracts, because Defendants agreed to reimburse Hartford. |
| | 3. Valid and enforceable express contracts generally preclude unjust enrichment claims; | 3. Inapplicable to insurer reimbursement and where proposed interpretation violates public policy, *i.e.*, not valid and enforceable; Defendants admit policies do not discuss reimbursement, so rule does not apply. |
| | 4. "WAIVER OF SUBROGATION" endorsement's first provision applies to Hartford's claims against B&F. | 4. This endorsement applies to subrogation only; the endorsement does not apply to B&F, and does not apply generally to Hartford's future, unaccrued claims that did not exist at time of waiver. |

| | | |
|---|---|---|
| II - Specific Performance and Contractual Reimbursement | 5. 1–4 plus no viable contracts. | 5. Defendants' taking Hartford's money created contracts as a matter of law that could not be rejected without also refusing Hartford's money; this applies both to reservations and the reimbursement contract at the end of the Underlying Action. Parties cannot take another's property, including money, with one hand and reject conditions with the other. |
| III – Equitable Contribution and Indemnity | 6. B&F's Articles of Incorporation prospectively released Bursor of all duties and liability.<br><br>7. "WAIVER OF SUBROGATION" endorsement's second provision, applying to contracts requiring waiver, applies to Bursor;<br><br>8. No contribution or indemnity when there is a settlement.<br><br>9. The anti-subrogation rule applies to protect Bursor because he is too "close" with B&F; argue "retroactive" and "undisclosed" conflict requires that result. | 6. B&F's articles' exculpatory provisions are void in this context involving intentional/criminal acts, because Bursor is B&F's fiduciary, and per common law and Florida's anti-indemnity statutes.<br><br>7. The "WAIVER OF SUBROGATION" second subparagraph does not apply because B&F's articles contains no required waiver, let alone for Hartford's rights; Defendants, instead, point to permissive indemnification.<br><br>8. Florida law allows contribution and indemnity on settlements.<br><br>9. The anti-subrogation rule only applies when insured is covered for claim; neither B&F nor Bursor had coverage by public policy and exclusions; officers not protected by anti-subrogation rule where they engaged in knowing misconduct. And, Defendants declared a "conflict" on March 19, 2024. |

| | | |
|---|---|---|
| IV – Breach of Fiduciary Duty | 10. 6–7, 9; and cannot rely on underlying allegations;<br><br>11. No punitive damages for subrogee. | 10. Allegations are sufficient to give notice or objection is curable; leave may be beneficial given recent unsealing requirements in Underlying Action.<br><br>11. Subrogees can seek punitive damages; fail to discuss contractual /conventional subrogation. |
| V & VI – Declaratory Judgment and Accounting | 12. Argue moot because other counts fail. | 12. Other counts survive, so Counts V & VI are not moot. |
| VII – Breach of Contract | 13. Argues "conclusory" and fails because subrogation claims fail. | 13. Not "conclusory", but alternative and fact dependent. Information is solely in B&F/Bursor's possession; and, the subrogation claims survive. |

## I. THE UNDERLYING CLAIMS AGAINST DEFENDANTS ARE UNINSURABLE UNDER CALIFORNIA LAW AND PUBLIC POLICY

Defendants' choice of law argument glides over the threshold issue for the Court: Which state's law governs the validity and insurability of the underlying claims? This is distinct from which state's law governs policy interpretation.

For the five policies issued at B&F's California address, the only state's law applicable to validity/insurability issues is California law. California is the state regulating contracts issued within its borders. *Keywell Corp. v. Weinstein*, 33 F.3d 159, 163 (2d Cir. 1994) ("[T]he *validity* of the contract should be determined by the law of the jurisdiction in which it was made.") (citations omitted); *Pegasus Aviation IV, Inc. v. Aerolíneas Austral Chile, S.A.*, No. 08 CIV. 11371 NRB, 2012 WL 967301, at *5 (S.D.N.Y. Mar. 20, 2012) ("[C]hoice of law provisions . . . do not control our determination because defendants challenge the *validity* of the contracts, not

their *interpretation.*") (citing *Ackerley Media Grp., Inc. v. Sharp Elecs. Corp.,* 170 F. Supp. 2d 445, 448 (S.D.N.Y. 2001)).

Contracts are not created in a vacuum. The contracts clause of the Constitution, Article I, Section 10, Clause 1, instructs that local state law, including remedies thereunder, impliedly enters all contracts.[5] Thus, California law and public policy are implied into Hartford's California-issued policies. True, New York law points to an insured's principal place of business for *interpretation* of multi-state insurance policies. *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 25 (1st Dep't 2006), *aff'd*, 876 N.E.2d 500 (N.Y. 2007). But interpretation and validity/legality are separate questions. *Dandong Old N.-E. Agric. & Animal Husbandry Co., Ltd. v. Pasternak Baum & Co.*, No. 17 CIV. 4571 (KPF), 2018 WL 1399207, at *8 (S.D.N.Y. Mar. 19, 2018) ("The parties' arguments presume the existence of a valid contract and quibble over its interpretation. The Court's analysis starts one step back, as it must, and looks to whether there is a valid agreement at all.").

Defendants argue interpretation while glossing over validity. For the first five policies, California law determines the validity/insurability. Defendants' interpretation violates California law and statutory public policy. California Insurance Code, Section 533 provides, "[a]n insurer is not liable for a loss caused by the wilful act of the insured." California Civil Code, Section 1668 provides, "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Indeed,

---

5 *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129–30 (1991) ("A contract depends on a regime of common and statutory law for its effectiveness and enforcement. 'Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.'") (quoting *Farmers & Merchs. Bank of Monroe v. Fed. Rsrv Bank of Richmond,* 262 U.S. 649, 660 (1923)).

"law[s] established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513. Because the underlying claims are uninsurable, any argument that Hartford has no reimbursement rights must fail.

## II. HARTFORD'S CLAIMS ARE PROPER UNDER CALIFORNIA AND FLORIDA LAW, THE ONLY LAW APPLICABLE TO INTERPRETATION WERE DEFENDANTS CORRECT ABOUT NEW YORK LAW

Even if the claims against Defendants were potentially insurable, Hartford's claims still would be proper as a matter of contract interpretation. For contract interpretation issues, the parties agree the law of the state of B&F's principal place of business would control. *Foster Wheeler Corp.*, 36 A.D.3d at 27. Defendants say that is Florida; Hartford says it may be California. Under California or Florida law, Hartford's reimbursement claims are proper.

Defendants spend most of their brief arguing for New York law and citing New York cases. Those arguments and cases are irrelevant even were Defendants' New York law discussions accurate, which they are not. To deny Defendants' Motion, it is enough that Hartford's claims are viable under California or Florida law. Under Florida law, Hartford clearly has reimbursement rights; unless New York law provides the same, any conflict requires application of (per Defendants' arguments) Florida law. Under no circumstance would the Court apply New York law if, as Defendants argue, Hartford's claims fail thereunder. Definitionally, there would be a conflict, and under *Foster Wheeler*, California or Florida law would control.

### A. Hartford Did Not Waive Its Direct Reimbursement Rights

Defendants seek dismissal of Hartford's direct claims – Unjust Enrichment, Specific Performance and Contractual Reimbursement, and Accounting, Counts I, II, and VI – quoting piecemeal to "WAIVER OF SUBROGATION" endorsements in B&F's five California-issued policies, ECF No. 68-14 at 175:

> **WAIVER OF SUBROGATION**
>
> This endorsement modifies insurance provided under the following:
>
> **BUSINESS LIABILITY COVERAGE FORM**
>
> We waive any right of recovery we may have against:
>
> 1. Any person or organization shown in the Declarations, or
> 2. Any person or organization with whom you have a contract that requires such waiver.

Hartford's sixth policy, issued in Florida, deleted this endorsement, *see* Motion at 18, so this argument – Defendants' lead argument – is irrelevant under that policy.

Moreover, Defendants' argument under the five California-issued policies fails because – self-evident from the bold-and-all-caps title – this endorsement only waives (qualifying) *subrogation* claims. Counts I, II, and VI are not subrogation but "direct" claims, *see* Motion at 1. For Defendants to have a viable argument under this endorsement, Defendants must show the endorsement applies (1) *beyond* subrogation; (2) to B&F; and (3) to claims accruing solely *post*-waiver. Defendants can make none of these showings. This argument never gets off the ground.

#### 1. The Court Considers Headings; Specific Controls the General.

To manufacture *non*-subrogation waivers, Defendants argue the Court *must* ignore the bold-and-all-caps heading. Courts do not ignore headings. *Seduction Cosm. Ctr. Corp. v.*

*Dunbar*, 427 So. 3d 1031, 1036 (Fla. Dist. Ct. App. 2025) ("When the entirety of the agreement is examined, there are structural and textual clues . . . Article 2 has the heading: 'All Claims Must be Arbitrated.'") (quoting Antonin Scalia & Bryan Garner at 211, *Reading Law: The Interpretation of Legal Texts* 167 (2014) as "headings are permissible indicators of meaning."); *Certain Underwriters at Lloyds of London v. Pero Fam. Farm Food Co., Ltd.*, No. 20-12711, 2023 WL 2855844, at *6 (11th Cir. Apr. 10, 2023) (finding under Florida law, "policy's title was 'consistent with the coverage afforded therein and thus . . . c[ould] be considered in interpreting its plain meaning.'"); *Rolyn Cos., Inc. v. R & J Sales of Tex., Inc.*, 671 F. Supp. 2d 1314, 1329 (S.D. Fla. 2009), *aff'd,* 412 F. App'x 252 (11th Cir. 2011) ("Reading the voluntary-payment provision as a whole, *i.e.,* taking into account the subheading, leads to a rejection of Rolyn's interpretation."); *accord Mazzaferro v. RLI Ins. Co.*, 50 F.3d 137, 140 (2d Cir. 1995) ("A contract of insurance must be read as a whole, including any introductory clause or heading . . .") (quoting *Save Mart Supermkts. v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 607 (N.D. Cal. 1994)). Absent contrary contractual language, headings are *always* considered.

To argue otherwise, Defendants cite two unreported federal cases, Motion at 12, both citing *Winter Garden Ornamental Nursery, Inc. v. Cappleman*, 201 So. 2d 479 (Fla. Dist. Ct. App. 1967). Other courts disagree that "*Winter Garden* prohibits use of titles and captions in ordinary contract construction." *Caceres Drywall Corp. v. Amerisure Mut. Ins. Co.*, No. 11-61427-CIV, 2012 WL 13005816, at *6 (S.D. Fla. Mar. 19, 2012) ("The use of headings and captions aids interpretation, which occurs prior to resort to the construe-against-drafter ambiguity rule."); *id.* *4 ("construing ambiguities against the drafter only comes into play if applying ordinary rules of construction does not produce a clear interpretation."). Indeed, the Florida courts frequently use headings when interpreting plain language. "[R]ather than creating an

ambiguity, the title [WAIVER OF SUBROGATION] is consistent with the substance of the [endorsement]." *Prop. Registration Champions, LLC v. Mulberry*, 373 So. 3d 675, 680 (Fla. Dist. Ct. App. 2023) ("[A] statutory title 'is a permissible indicator of the meaning of [the] text.' . . . This same principle applies when reading the legally binding language of the contract . . .") (citations omitted). Subrogation rights are a "right of recovery"; thus, the heading is considered.

Courts "interpret contracts as a whole, considering 'the conditions and circumstances surrounding the parties and the objects to be obtained in executing the contract.'" *Roofing Experts of S. Fla., Inc. v. USAA Cas. Ins. Co.*, No. 19-80653-CIV, 2019 WL 7881719, at *2 (S.D. Fla. Aug. 15, 2019) (quoting *Nicon Constr., Inc. v. Homeowners Choice Prop. & Cas. Ins. Co.*, 249 So. 3d 681, 682 (Fla. Dist. Ct. App. 2018)). "Defendant[s] would like the Court to simply ignore this heading, which it cannot do." *Id.* Indeed, "a specific clause takes precedence over a general clause." *Raines v. Palm Beach Leisureville Cmty. Ass'n*, 317 So. 2d 814, 817 (Fla. Dist. Ct. App. 1975). The specific clause "WAIVER OF SUBROGATION" informs the reader the waiver is only for subrogation; under Defendants' interpretation, those words are surplusage.

Defendants' other arguments also fail. Defendants assert the endorsement, read alongside the "Waiver of Rights of Recovery (Waiver of Subrogation)" conditions (conceded "subrogation waivers", Motion at 20), creates "conflict" if the "WAIVER OF SUBROGATION" is limited to subrogation. Yet both provisions use nearly *identical* language ("any rights of recovery" versus "any right of recovery"), identifying subrogation only in their headings. There is no plausible inconsistency in reading both provisions as limited to subrogation, as their headings mandate.

Further, these provisions are not duplicative; the endorsement's first provision addresses B&F's request that Hartford waive subrogation against B&F's landlord entities; the second (of two) broadened the contractual waiver option. Neither provision extends Hartford's waivers

beyond subrogation. And, "the conditions and circumstances" here include B&F buying the "WAIVER OF SUBROGATION" specifically for B&F's landlord entities; two pages away is the "WAIVER OF SUBROGATION" addition to the declarations, ECF No. 68-14 at 172 (Form SS 12 00), which indicates to whom the endorsement applies, made plain as both are entitled "WAIVER OF SUBROGATION".

**2. The Waiver Does Not Apply to B&F.**

Defendants argue B&F is an "organization shown in the declarations" and thus exculpated by the "WAIVER OF SUBROGATION" endorsement's first provision. Defendants' interpretation leads to absurdity and surplusage. "Any person or organization shown in the declarations" refers to the like-titled "WAIVER OF SUBROGATION" Declarations addition. Again, the addition clarifies to whom the "WAIVER OF SUBROGATION" endorsement applies.

The Declarations re-confirm this; the waiver endorsement is Form SS 12 15; the list is form IH 12 00; and the Forms are juxtaposed, indicating Form IH 12 00 informs Form SS 12 15:

```
WAIVER OF SUBROGATION:
FORM SS 12 15
  LOCATION: 002  BUILDING: 001
  SEE FORM IH 12 00
```

ECF No. 68-14 at 21. "SEE" informs the reader, when reading Form SS 12 15, she must "see" Form IH 12 00. "LOCATION: 002 BUILDING: 001" is the relevant landlord's building. The above provisions would be meaningless under Defendants' interpretation, which requires reading the "WAIVER OF SUBROGATION" Form SS 12 15 *beyond* Form IH 12 00.

And, if – as Defendants insist – the Court looked beyond Form IH 12 00 to the Declarations generally, *Hartford* is also an "organization shown in the declarations"; Defendants' interpretation would thus mean the endorsement "unambiguously" waives Hartford's rights against *itself*. "Courts should not employ an interpretation of a contractual provision that would

lead to an absurd result." *Famiglio v. Famiglio*, 279 So. 3d 736, 740 (Fla. Dist. Ct. App. 2019) (citing various). Defendants' interpretation creates absurdities and surplusage.[6]

### 3. The Waivers Are Not Prospective.

Even if Defendants showed the "WAIVER OF SUBROGATION" waived non-subrogation claims *and* applied to B&F, the endorsement still does not waive future, *unaccrued* claims. It states: "We waive any right of recovery we **may have**," *i.e.*, it refers to claims that Hartford then had. The last waiver was written in the fifth issued policy before the Underlying Action (November 2023) or Hartford's payments (June 2024) began. Hartford did not "have" the rights it now asserts when these waivers were written; thus, Hartford's claims were not waived. The endorsement does not say "We *will* waive" – indeed, reading these endorsements as waiving future rights renders four of them meaningless, and begs the question of what effect the endorsement's deletion in the sixth policy had.

The endorsement is a waiver that relieves a person of liability it otherwise would have had (here, Defendants assert, for Defendants' liability for their as-alleged intentional conduct). As such, it is "disfavored and will be strictly construed against [Defendants,] the part[ies] claiming to be relieved of liability." *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So. 2d 565, 567–69 (Fla. Dist. Ct. App. 2008); *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015) ("Public policy disfavors exculpatory contracts . . ."); *Payson v. 50 Sutton Place S. Owners, Inc.*, 107 A.D.3d 506, 506 (1st Dep't 2013) ("The motion court's understanding of the unambiguous waiver of subrogation clause comported with the rule strictly

---

[6] Indeed, the listed entities are further referenced in the Declarations as additional insureds, *see* ECF No. 68-14 at 22, 171, meaning they, too, are "organization[s] shown in the declarations" outside the waiver list. Defendants' reading, therefore, renders Form IH 12 00's list wholly surplusage.

construing such waivers.") (citations omitted). Indeed, Defendants' attempted use of this waiver is to see them indemnified for intentional tort claims and punitive damages; parties "cannot waive a right designed to protect both the individual and the public." *Chames v. DeMayo*, 972 So. 2d 850, 860 (Fla. 2007); Cal. Civ. Code § 3513.

Defendants' argument turns these established principles on their head, asking the Court to ignore the biggest, boldest text in favor of an isolationist reading of fine print, twisting that fine print to produce grammatically incorrect and absurd results. The Court should decline. "Where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions." *Pierce L. Grp., LLP v. Factor*, 408 So. 3d 148, 151 (Fla. Dist. Ct. App. 2025). Defendants' interpretation *requires* ignoring provisions and so fails, especially under Rule 12(b)(6).

### B. Hartford's Unjust Enrichment Claim (Count I) States a Valid Claim Under California and Florida Law

Defendants do not dispute Hartford's unjust enrichment claim under California law; they simply argue California law should not apply to California solicited-and-issued policies. Under *Buss v. Superior Court* and its progeny, Hartford's reimbursement rights and remedies are "implied in law" into its policies. 939 P.2d 766, 777 (Cal. 1997) ("The 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs . . . must be deemed 'unjust.'"). This implied-in-law remedy is inseparable from the policies. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 430 (1934) ("The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion.") (collecting cases); *State ex rel. Buckwalter v. City of Lakeland,* 150 So. 508, 513 (Fla. 1933).

Hartford also states a claim under Florida law. *Kuber v. Berkshire Life Ins. Co. of Am.*, No. 19-80211-CV, 2019 WL 7899140, at *1 (S.D. Fla. Oct. 3, 2019) (insurer making non-owed payments under reservation "may seek return of those benefits.") (citing Restatement (Third) of Restitution and Unjust Enrichment § 35 (2011)); *Forest Constr., Inc. v. Farrell-Cheek Steel Co., Fla. Diversified Props. Div.*, 484 So. 2d 40, 42 (Fla. Dist. Ct. App. 1986) ("[T]he law implies an obligation to pay a reasonable cost for the extras not provided for in a contract . . .").

Florida and California's public policies *favor*, not punish, insurers paying under reservations and seeking reimbursement afterwards. *State Farm Fire & Cas. Co. v. Fleet Fin. Corp.*, 724 So. 2d 1218, 1219–20 (Fla. Dist. Ct. App. 1998) ("[V]oluntary payment to an injured party pursuant to a settlement agreement should not extinguish an insurance carrier's right . . . regarding the issue of coverage. In our view, this procedure comports with Florida's public policy by enabling an injured party to be paid the damages due him while avoiding the time and expense of protracted litigation."); *Blue Ridge Ins. Co. v. Jacobsen*, 22 P.3d 313, 321 (Cal. 2001) ("[I]n addition to avoiding the insured's unjust enrichment, a rule allowing unilateral reservation of the right to seek reimbursement of settlement payments for noncovered claims advances significant public policy considerations . . . [such as] transfer[ring] from the injured party to the insurer the risk that the insured may not be financially able to pay the injured party's damages.").

Further, Defendants' arguments that valid and enforceable contracts sometimes defeat unjust enrichment, Motion at 13, while inapplicable to *Buss*-style claims under California or Florida law (which always involve contracts), nonetheless fails, as no valid or enforceable contract exists, or could, to insure intentional misconduct. Indeed, Defendants have repeatedly noted the policies say nothing about reimbursement; they, therefore, cannot defeat Hartford's claims. *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49–50

(Fla. Dist. Ct. App. 2021) ("The proposition that 'the law will not imply a contract where a valid express contract exists' has been described by Professor Corbin as 'misleading.' . . . the subcontract did not defeat recovery under either implied contract theory of recovery, as the subcontract did not cover removal and replacement of the existing asphalt.") (citations omitted).

### C. Hartford's Contract Claims (Count II) Survive

Hartford created separate reimbursement contracts; first, through reservation letters accompanying its defense, Amended Complaint ¶ 91, then, at the end of the Underlying Action, when Hartford fronted the settlement and defense costs for both Defendants in exchange for Defendants' reimbursing "the amount of the settlement and all defense costs [Hartford] has paid that are attributable to the non-covered claims in the lawsuit." *Id.* ¶¶ 88–90.

Defendants argue no contract exists under New York law because they rejected Hartford's reservations. In other words, Defendants assert their purported "rejections" somehow removed Hartford's reimbursement conditions or were a "counteroffer", and further assert any contract is precluded by "Changes" conditions in the policies. Defendants are wrong across the board.

Hartford created contracts, as a matter of law, when Defendants took Hartford's as-conditioned funds. *Both* Defendants are bound by the fronting/reimbursement contract from the end of the Underlying Action, and *both* must repay Hartford the entire settlement and all uncovered defense costs (here, all of them). None of New York, California, or Florida allows Defendants to take Hartford's money without Hartford's conditions. Likewise, Defendants "Changes" argument fails.

#### 1. Reservations of Rights.

Under Florida law, an insurer creates a reimbursement contract when the insurer conditions its defense on reimbursement and the insured takes the defense. *Colony*, 777 So. 2d at 1039 ("Having accepted Colony's offer of a defense with a reservation of the right to seek

reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed. A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered."). Defendants attempt to hijack *Colony*, but *Colony* defeats Defendants' attempt to "reject" Hartford's reimbursement. Defendants "cannot accept tendered performance while unilaterally altering the material terms on which it is offered." That is the law. *Id.*

This rule is not insurance specific. *Hendricks v. Stark,* 126 So. 293, 297 (Fla. 1930) ("[A] person by the acceptance of benefits may be estopped from questioning the validity and effect of a contract; and, where one has an election to ratify or disaffirm a conveyance, he can either claim under or against it, but he cannot do both[.]"); *Stevenson v. Stevenson*, 661 So. 2d 367, 369 (Fla. Dist. Ct. App. 1995) ("[T]he former wife's taking and cashing the $5,500 check was an acceptance of benefits under the contract, and mandates legal ratification of the contract even if she evidenced a contrary intent.") (citing *Scocozzo v. Gen. Dev. Corp.*, 191 So. 2d 572, 579 (Fla. Dist. Ct. App. 1966) (quoting *Hendricks*)). Defendants cannot take Hartford's money with one hand and reject its conditions with the other.

The Florida Supreme Court endorsed this rationale for its standard jury instructions on contract formation: "[A]n offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms. In addition, such an exercise of dominion even though not intended as acceptance ... is a sufficient manifestation of assent...." *In re Standard Jury Instructions--Cont. & Bus. Cases*, 116 So. 3d 284, 312 (Fla. 2013) (citing *Stevenson* and *Scocozzo*). Hartford's money is plainly Hartford's property; Defendants are "bound in accordance with the offered terms" even if taking the money was "not intended as acceptance" or Defendants "evidenced a contrary intent."

To contradict *Colony*, Defendants cite dicta in *Nationwide Mutual Fire Insurance Co. v. Royall*, 588 F. Supp. 2d 1306 (M.D. Fla. 2008), a case disregarded for its main holding. *Travelers Indem. Co. v. Figg Bridge Eng'rs, Inc.*, 389 F. Supp. 3d 1060, 1080 (S.D. Fla. 2019) ("The undersigned joins *James River* in 'respectfully disagree[ing] with the *Royall* court's reasoning.' . . . *Royall* does not point to any persuasive decision from the Florida Supreme Court that would suggest disagreement with *Jim Black* or *Colony Insurance*.") (quoting *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246, 1261 (N.D. Fla. 2016)). As *Royall* contradicts *Colony* – and the Florida Supreme Court – *Royall* and any other irreconcilable federal (or other states') cases are disregarded under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

"Under Florida law, [Hartford] wins. It effectively reserved its right to seek reimbursement when it offered to defend [B&F], and [B&F] accepted its defense, so it is entitled to reimbursement now[.]" *James River*, 188 F. Supp. 3d at 1261. Attempts to reject *just* Hartford's conditions are feckless; acceptance of Hartford's conditions was imputed when Defendants took Hartford's money, no matter what Defendants said. *Id.* ("Arlington *never* rejected James River's defense—it only purported to reject its reservation of rights. . . . It continued to accept James River's defense, which was predicated on an offer that included a reservation of rights."). To reject Hartford's conditions, Defendants must *refuse* Hartford's money.[7] Defendants cannot "unreserve" Hartford's rights.

In New York, too, Defendants "could only accept the money as it was offered" – they "could not accept the benefit, and reject the condition; for, if [Defendants] accepted at all, it was *cum onere*." *Nassoiy v. Tomlinson*, 42 N.E. 715, 716–17 (N.Y. 1896) ("The use of the check was

[7] Where insureds refuse a conditioned defense but have coverage, "the insured will be entitled to full reimbursement of the insured's litigation costs." *BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 671 (Fla. Dist. Ct. App. 2006).

*ipso facto* an acceptance of the condition."). "The use of the check in violation of the condition would be an act of conversion. What is said or written by the creditor may be a refusal to assent. The law imputes to him an assent on the basis of his acts." *Hudson v. Yonkers Fruit Co.*, 179 N.E. 373, 375 (N.Y. 1932) (Cardozo, Ch. J.). "[T]he law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent . . . will be implied, and no words of protest can affect the legal quality of his act." *Fuller v. Kemp*, 33 N.E. 1034, 1035 (N.Y. 1893); *see also Hirsch v. Berger Imp. & Mfg. Corp.*, 67 A.D.2d 30, 35 (1st Dep't 1979) ("[W]here a check is offered in settlement of an unliquidated or disputed claim, the law permits but two alternatives, either reject, or accept in accordance with the condition.") (quoting *Kemp*).

Defendants' attempts to reject *just* Hartford's conditions are ineffective: "What is said is overridden by what is done, and assent is imputed as an inference of law." *Rosenblatt v. Birnbaum*, 212 N.E.2d 37, 40 (N.Y. 1965) ("Even though [defendant] purported to repudiate the $300 per month custodial arrangement by a letter from her lawyer . . . her indorsement and cashing of these checks committed her to the custodial condition . . . it is stated that there was no intention to accept the check in full satisfaction and protest was registered. However, such protest is unavailing.") (citations omitted).

Defendants' retort is *American Western Home Insurance Co. v. Gjonaj Realty & Management Co.*, 192 A.D.3d 28 (2d Dep't 2020), a case openly disregarding New York cases holding "an insurer may recover its defense costs[.]" *Id.* at 33–34. *Gjonaj* argued reimbursement would constitute "a pro tanto supersession of the policy without separate agreement and separate consideration." *Id.* at 40 (quotations omitted). *Gjonaj* is wrong: "Performance by a promisee of an act which he is not obligated to perform . . . is sufficient consideration for a promise . . ." *Weiss v. Weiss*, 266 A.D. 795, 795 (2d Dep't 1943); *Melville v.*

*Kruse*, 66 N.E. 965, 966 (N.Y. 1903) ("[T]here was no consideration for it, unless the plaintiff by implication promised to do something that she was not already bound to do . . ."); *see also The Turner Corp. v. Lexington Ins. Co.*, No. N25C-03-301 PRW CCLD, 2026 WL 2227785, at *11 (Del. Super. Ct. Aug. 3, 2026) (predicting New York would allow reimbursement if "(1) a provision in the insurance policy allow[s] the insurer to do so; or (2) an agreement between the insurer and insured allow[s] for recoupment.").

Defendants' assertions contravene California and Florida law while twisting Hartford's arguments. Hartford does not rest *solely* on reservations. At minimum, *some* of Hartford's payments were unowed; the public policy of California and Florida (and New York for that matter) precludes insurance for *all* the claims and punitive damages described in the Underlying Action. And, Defendants' taking Hartford's conditioned funds created a contract as a matter of law. *Gjonaj* is inapplicable and contradicts precedential authority, thus cannot persuade.

Finally, in California, the *Blue Ridge* court rejected these "objection" arguments in the insurer-reimbursement context as attempts to manufacture non-owed coverage and as "violat[ing] basic notions of fairness." 22 P.3d at 321. "A person who takes the benefit must bear the burden." Cal. Civ. Code § 3521. "[N]o person, whether minor or adult, can be permitted to adopt that part of an entire transaction which is beneficial and reject its burdens." *Peers v. McLaughlin*, 26 P. 119, 120 (Cal. 1891).

**2. The Fronting and Reimbursement Agreement.**

Hartford created another reimbursement contract when Hartford fronted the settlement and defense costs in exchange for reimbursement from Defendants. Both Defendants became bound upon taking Hartford's money, no matter what they said while doing so. Defendants nevertheless argue they "rejected" Hartford's offer – but get to keep its money – and that, somehow, their email was a counteroffer. Both arguments fail.

### a. There Was No "Rejection."

Defendants argue their email secretly rejected Hartford's reimbursement conditions. Motion at 17. Defendants gloss over their words: "but acknowledge that Hartford **is reserving** any right that it believes it has." Notwithstanding ("but") Defendants' disagreement on Hartford's future success, Defendants acknowledged Hartford **did** preserve its rights. This, alone, entitles Hartford to full reimbursement. Nevertheless, Defendants could not reject Hartford's conditions while taking Hartford's money.

Defendants also complain that Hartford's offer stated Hartford would withdraw its defense if Defendants did not accept. Under Florida and California law, insurers unambiguously can do this, especially when claims are uncovered.[8] No one *forced* Defendants to take Hartford's money. Coverage aside, Hartford was entitled to condition its agreement to front the settlement on withdrawing its defense and was never required to fund Defendants' war of attrition.

### b. Defendants' "Counteroffer" Argument Fails.

Defendants further argue their email was a "counteroffer" defeating Hartford's conditions. As stated above, Defendants did not actually reject Hartford's conditions. Regardless, without reimbursement, Defendants' "counteroffer" would simply require Hartford to indemnify intentional torts and punitive damages – an *illegal* contract. Further, Defendants cannot evade public policy by settling. Indeed, one landmark case on this issue involved a $25,000 settlement; the Florida Supreme Court still held public policy "prohibits an insured from

---

[8] *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. Dist. Ct. App. 1985) ("[T]he insurer . . . concluding no coverage exists, may withdraw its defense . . .") (collecting cases); *Blue Ridge*, 22 P.3d at 320 ("Blue Ridge notified the Jacobsens of its intention to accept what was ultimately determined to be a reasonable settlement offer, and offered the Jacobsens the opportunity to assume their own defense. Under such circumstances, Blue Ridge satisfied the prerequisites for seeking reimbursement for noncovered claims . . .").

being indemnified for a loss resulting from an intentional act of religious discrimination." *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So. 2d 1005, 1009 (Fla. 1989).

More fundamentally, a communication lacking all the "material terms of the purported contract" is "not an offer[.]" *Matter of Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 586–87 (N.Y. 1999). Consideration is material to all contracts. Defendants' email, lacking *any* consideration for Hartford's performance, cannot evidence an offer. This is true for all Defendants' "rejections." Defendants give *nothing* for Hartford's performance; they seek only to take. The law does not reward takers. "One cannot have one's cake and eat it, too." *JDS Dev. LLC v. Parkside Constr. Builders Corp.*, 231 A.D.3d 223, 236 (1st Dep't 2024). Defendants' argument that Hartford must simply suffer at their leisure contravenes "one of the first academic precepts tossed to the law student on commencing the study of law—for every wrong there is a remedy." *Doyle v. City of Coral Gables*, 33 So. 2d 41, 42 (Fla. 1947).

**c. The "Changes" Provision Does Not Preclude Future Contracts.**

Defendants point to certain "Changes" conditions, merger/integration provisions, as stating each policy "'contains all the agreements between [the Insured] and [Hartford] concerning the insurance afforded' and its 'terms can be amended or waived only by endorsement issued by [Hartford] and made a part of this policy.'" Motion at 22. Defendants argue these provisions prevent *any* future contract not endorsed to the policies. This argument fails for at least three reasons.

First, Hartford's contracts do not "concern[] the insurance afforded." These contracts require Defendants to reimburse *Hartford* – practically the opposite of insurance.

Second, provisions stating policies "contain[] all the agreements" preclude only "prior or contemporaneous agreements", *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d

1290, 1309 (11th Cir. 1998), not *future* agreements. *Fireman's Fund Ins. Co. v. Wood Invs., Inc.*, No. 8:23-CV-02200-JWH-KES, 2025 WL 2370915, at *7 (C.D. Cal. June 23, 2025) ("The integration clause states that the Master Policy 'contains all the agreements between [Wood] and [Fireman's Fund] concerning the insurance afforded'—***not*** that the Master Policy is the only contract that could ever exist between the parties."). Otherwise, all but one policy would be void per the original "Changes" condition.

Third, "[t]he law has clearly been established that a written contract may be modified by a subsequent oral agreement or subsequent conduct of the parties, even though the written contract purports to prohibit such modification." *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 565 (Fla. Dist. Ct. App. 1998) (collecting cases). These provisions are waived when subsequent agreements are performed, *Linear Corp. v. Standard Hardware Co.*, 423 So. 2d 966, 968 (Fla. Dist. Ct. App. 1982) ("[T]he parties' conduct supports finding both a waiver . . . and that a subsequent modification occurred.") (collecting cases), and unenforceable when enforcement would "work a fraud on either party" – *i.e.*, when performance has occurred and a benefit received. *Pro. Ins. Corp. v. Cahill*, 90 So. 2d 916, 917–18 (Fla. 1956) (collecting cases); *Moscato Corp. v. Mutchnik Constr. Grp., Inc.,* 411 So. 3d 570, 572 (Fla. Dist. Ct. App. 2025) (quoting *Cahill*). Defendants are estopped, having taken Hartford's money, to invoke such provisions now. *Head v. Lane*, 495 So. 2d 821, 824 (Fla. Dist. Ct. App. 1986) ("[E]stoppel occurs where a person attempts to repudiate the obligations and validity of a transaction after accepting the benefits resulting from it."); *Hendricks,* 126 So. at 297.

Hartford *fully* performed, paying millions in settlement and defense costs. Even if the "Changes" provisions applied (they do not), Defendants cannot, and are estopped to, invoke such provisions, especially having taken the full benefit of Hartford's performance.

### 3. Voluntary Payments Is No Defense to Hartford's Claims

Defendants raise, presumably to Counts I, II, and VI, the voluntary payment defense. "The defense may not be used in this case, however, because it is not available in contract cases." *Avatar Props., Inc. v. Gundel*, 372 So. 3d 715, 724 (Fla. Dist. Ct. App. 2023) (citing Fla. Stat. § 725.04 ("When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed . . .")). Under California law, voluntary payment is no defense absent a pre-existing judgment of noncoverage. *Blue Ridge*, 22 P.3d at 322.

"Section 725.04 clearly applies to claims to recover overpayments that were unenforceable based on the parties' contract[,]" *Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1225 (S.D. Fla. 2008), including "claims to recover overpayments . . . that allegedly exceeded or did not fall under terms or categories expressed in the parties' contract." *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2016 WL 7477734, at *5 (S.D. Fla. Dec. 8, 2016); *Mcintosh v. Missile View MHP, LLC*, No. 05-2022-CA-056512, 2025 WL 3284234, at *12 (Fla. Cir. Ct. Apr. 2, 2025) ("Florida Statutes § 725.04 explicitly provides that when a party makes a payment under a contract but was under no enforceable obligation to do so, the defense of voluntary payment cannot be used to bar recovery.").

Defendants' *MONY Life Insurance Co. v. Perez*, 146 F.4th 1018 (11th Cir. 2025) citation involves no reservation *at all*,[9] let alone another reimbursement agreement (instead, "MONY could have sued Perez in tort for fraud or misrepresentation" but "[did] not appeal[] the denial of its motion to amend," *id.* at 1027–28). Neither *MONY* or *Steadfast Insurance Co. v. Sheridan*

---

9 *C.f. Wendy's of N.E. Fla., Inc. v. Vandergriff*, 865 So. 2d 520, 522 (Fla. Dist. Ct. App. 2003) ("Because Appellees expressed no such reservation . . . *Colony Insurance* is inapplicable . . .").

*Children's Healthcare Services, Inc.*, 34 F. Supp. 2d 1364 (S.D. Fla. 1998) discusses Section 725.04; *Steadfast* also involved a settlement over the insured's objections (unlike here), no separate reimbursement agreement, and predates *Colony*. Indeed, Defendants' cases largely lack context or do not actually hold what Defendants say they do.

California and Florida public policy favor insurers paying first and chasing later. The voluntary payment defense is further plainly inapplicable where Defendants contractually *agreed* to reimbursement. This defense fails.

### D. Hartford's Subrogation Claims (Counts III & IV) Survive

Hartford pleads two subrogation counts against Bursor with B&F's rights: Counts III (Contribution and Indemnity) and IV (Breach of Fiduciary Duty). New York, California, and Florida all allow equitable subrogation; Hartford's contractual/conventional subrogation rights presumably fall under *Foster Wheeler*. And, the claims from B&F against Bursor – contribution, indemnity, fiduciary – are governed by the "internal affairs" doctrine, meaning Florida law "controls in the event of any conflict [with] New York law[.]" *Ezrasons, Inc. v. Rudd*, 275 N.E.3d 141, 150 (N.Y. 2025).

Defendants argue Hartford's subrogation claims fail, asserting B&F exculpated Bursor, and asserting the "WAIVER OF SUBROGATION" endorsement's second provision applies to Bursor, both via B&F's Articles of Incorporation. Defendants' arguments fail.

#### 1. B&F's Exculpatory Provision is Void.

B&F's exculpatory provisions are void at least here. Defendants note B&F's articles are "a contract". *Aztec Motel, Inc. v. State ex rel. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971). Again, public policy invalidates prospective exculpatory contracts relating to intentional misconduct (or gross negligence). Further, such provisions are "wholly void . . . where a special relationship

exists between the parties[.]" *Lago v. Krollage*, 575 N.E.2d 107, 110 (N.Y. 1991). Bursor is B&F's officer and fiduciary, the quintessential "special relationship."

Florida also has anti-indemnity statutes for "director[s] or officer[s]" regarding, *inter alia*, "[w]illful or intentional misconduct or a conscious disregard for the best interests of the corporation" or "criminal" acts. Fla. Stat. § 607.0859(1); *see also* Fla. Stat. § 607.0831(1). And, Florida statutorily mandates Bursor's duties, stating, *inter alia*, Bursor "shall act: (a) In good faith; and (b) In a manner [Bursor] reasonably believes to be in the best interests of [B&F] . . ." Fla. Stat. § 607.08411. "Shall" is "mandatory, not discretionary." *Kaweblum v. Thornhill Ests. Homeowners Ass'n, Inc.*, 755 So. 2d 85, 87 (Fla. 2000).

"[W]here public policy would be frustrated by permitting the enforcement of an exculpatory clause that effectively immunizes a party from liability from breach of a positive statutory duty to protect the well-being of others, the exculpatory clause will not be enforced." *JM Fam. Enters., Inc. v. Winter Park Imps., Inc.*, 10 So. 3d 1133, 1133 (Fla. Dist. Ct. App. 2009) (collecting cases) (quoting 11 Fla. Jur.2d *Contracts* § 126); *McKenzie Check Advance of Fla., LLC v. Betts,* 112 So. 3d 1176, 1183 (Fla. 2013) ("[A] contractual provision that defeats the purpose of a remedial statute violates public policy and is thus unenforceable.").

Defendants' arguments would erase Bursor's statutory/fiduciary duties while subverting public policy *and* Florida's anti-indemnity statutes, especially for intentional or criminal claims. The exculpatory provision is void at least here, if not entirely.

### 2. B&F's Indemnity Provision is Neither Required Nor a Waiver.

Defendants argue Bursor is within the second subparagraph of the "WAIVER OF SUBROGATION" endorsement for "a contract that **requires** such **waiver**." ECF No. 68-14 at 175. Defendants are wrong. First, this provision applies only to contracts requiring waiver of

*Hartford's* subrogation rights; nothing in B&F's articles mentions Hartford at all. Moreover, that provision contemplates (1) required (2) waivers.

Defendants argue B&F's articles are a contract requiring waiver because "[B&F] shall have the power, in its by-laws or in any resolution of its stockholders or directors, to undertake to indemnify the officers and directors", ECF No. 68-15 at 5. That is a *permissive indemnification* provision, not a (1) *required* (2) *waiver*. Defendants also shamelessly ellipses over "**in its by-laws or in any resolution**"; Defendants show neither. Defendants' *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Turner Construction Co.*, 119 A.D.3d 103, 109 (1st Dep't 2014) citation is also irrelevant. That case involved language agreeing to take no "recourse" against "any insured". Hartford's waivers extend only to contracts (1) *requiring* B&F to (2) *waive* Hartford's subrogation rights, and to B&F's listed landlord entities (also for Hartford's subrogation rights). Defendants' remaining arguments are tautological.

Defendants' sole asserted contract, B&F's articles, contains no "such waiver", required or otherwise, let alone one regarding Hartford's rights; nor is Bursor listed in the "WAIVER OF SUBROGATION" list. And, such exculpation would be void regardless.

**3. Contribution and Indemnification are Allowed for Settlements.**

Defendants argue Hartford cannot assert B&F's contribution or indemnification claims because the Underlying Action settled. Florida statutorily allows contribution where settlements extinguish another defendant's liability; "[w]hether or not judgment has been entered[,]" "contribution may be enforced by separate action." Fla. Stat. § 783.31(4)(a). Florida also allows indemnity for settlements. *Atl. Coast Dev. Corp. v. Napoleon Steel Contractors*, 385 So. 2d 676, 681 (Fla. Dist. Ct. App. 1980) (affirming "common law indemnity" for "ultimate settlement"); *Budget Rent-A-Car Sys., Inc. v. State Farm Mut. Auto. Ins. Co.*, 727 So. 2d 287, 289 (Fla. Dist.

Ct. App. 1999) (finding "likely that Budget has a valid claim for common law indemnity . . . for the portion of the settlement in excess of the statutory requirements").

**4. The Anti-Subrogation Defense Fails.**

Hartford showed the anti-subrogation rule is inapplicable without coverage. Beyond Bursor's non-coverage, the underlying claims were all excluded, including under "expected or intended" exclusions, ECF No. 68-14 at 63, 182, *and* uninsurable. Defendants intentionally misconstrue Hartford's argument, arguing Hartford cannot "simply deny" Bursor was insured. Motion at 30. The anti-subrogation rule "requires that the insurer seek to enforce its right of subrogation against that covered party on a risk insured[.]" *Millennium Holdings LLC v. Glidden Co.*, 53 N.E.3d 723, 729 (N.Y. 2016); *N. Star Reins. Corp. v. Cont'l Ins. Co.*, 624 N.E.2d 647, 654 (N.Y. 1993) (concluding that as "exclusions" rendered "policy inapplicable to the loss, the antisubrogation rule does not apply").

Even where a corporation *is* covered, the anti-subrogation rule does not shield officers/directors "act[ing] affirmatively with furtive design or ill will" or with "actual knowledge" of wrongdoing. *See Dixie Nat'l Bank of Dade Cnty. v. Emps. Com. Union Ins. Co. of Am.*, 463 So. 2d 1147, 1150 (Fla. 1985) ("[T]here was no evidence that the directors committed bad faith or fraud; therefore, Employers did not have a subrogable cause of action . . ."). Defendants' arguments would allow Bursor to embezzle or defraud B&F, make B&F use insurance, then see Bursor avoid liability under the anti-subrogation rule. Indeed.

Defendants also argue Hartford's claims "retroactively inject" an "undisclosed" conflict. Motion at 30. **Defendants** declared "a conflict" on March 19, 2024 to argue "independent counsel [was] warranted." ECF No. 68-6 at 3. Regardless, crying conflicts cannot expand the anti-subrogation rule. Without coverage, the rule is inapplicable.

**5. Hartford's Punitive Damages Claims Survive.**

Defendants argue Hartford cannot seek punitive damages because subrogees only recover amounts paid. Neither New York or Florida case Defendants cite holds subrogees cannot seek punitive damages; and "the rule is not so limited. In reality, when an insurer subrogates [to] the rights of the insured, it steps into the shoes of the insured and can thus seek damages and relief beyond simply the amount the insurer paid out." *Homesite Ins. Co. of the Midwest v. Gree USA, Inc.*, No. 2:16-CV-06769-ODW-JC, 2017 WL 2271121, at *2 (C.D. Cal. May 24, 2017) (citing *Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 51 F. Supp. 3d 937, 951 (E.D. Cal. 2014) (refusing to strike punitive damages claim subrogee-insurer gained from insured). Defendants' argument also avoids the conventional subrogation provisions, which include legal assignments.

**6. Defendants' Pleading Complaints are Curable.**

Defendants argue Hartford's fiduciary claims cannot rely on the underlying pleadings. Hartford disagrees amendment is necessary, *see* Amended Complaint ¶ 117 (Bursor's "actions all were also breaches of [Bursor's] fiduciary duties"); Rule 8 is meant to give Defendants notice they plainly have. Nonetheless, these objections are curable. Last week, Magistrate Judge Tarnofsky enforced the underlying unsealing order; Defendants' deadline to comply is currently September 7, 2026. *See* Underlying Action, ECF Nos. 345, 469, 471. Should the Court deem it preferable, Hartford requests leave to amend with evidence from the Underlying Action, held in a digital repository set up by Defendants, including Defendants' admitting the existence of Bursor's recorded threats to rape the underlying plaintiff, *see* Underlying Action, ECF No. 345 at 20, and docket entries or testimony by Defendants, which include in-court and sworn statements.

**E. Counts V and VI Survive**

Defendants argue Counts V and VI are moot if Hartford's other claims fail. Motion at 28. Hartford's claims survive; so, those counts are not moot.

### F. Count VII is in Alternative and Fact-Dependent

Defendants argue Count VII is "conclusory" and fails alongside Hartford's subrogation claims. Motion at 33. Hartford's subrogation claims survive; and, Count VII is not conclusory, but alternative, to the extent B&F failed to preserve Hartford's recovery rights (for example, via waiver against Bursor), *per se* a fact issue. At the pleadings stage, Hartford cannot know the extent B&F may have injured Hartford's rights against Bursor or anyone else.

## CONCLUSION

Ruling in Defendants' favor would be to sanction conversion at best and to violate public policy at worst. Hartford never agreed, and it would be unlawful, to insure against rape, battery, intentional infliction of emotional distress, and crimes of violence motivated by gender animus. The Court should deny the Motion.

Dated: August 24, 2026

Respectfully submitted,

*/s/ James P. Ruggeri*

James P. Ruggeri (NY Bar No. 2389575)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006
(202) 469-7752
jruggeri@ruggerilaw.com

*Attorney for Sentinel Insurance Company, Ltd.*

**CERTIFICATE OF LOCAL CIVIL RULE 7.1(c) COMPLIANCE**

The undersigned certifies that the above-filed motion consists of 8,747 words, except for the caption, tables of contents and authorities, signature block, and required certificate, as counted by Microsoft Word's Word Count.

*/s/ James P. Ruggeri*

James P. Ruggeri