**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>BURSOR & FISHER, P.A., and SCOTT BURSOR,<br><br>Defendants. | Case No. 1:25-cv-10000-AT-VF |

# DEFENDANTS' MEMORANDUM OF LAW IN <u>FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>

COHEN ZIFFER FRENCHMAN & MCKENNA LLP
Kenneth H. Frenchman
Jason M. Sumbaly
1325 Avenue of the Americas, 31st Floor
New York, NY 10019
(212) 584-1890
kfrenchman@cohenziffer.com
jsumbaly@cohenziffer.com

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT .......... 1**

**ARGUMENT .......... 3**

I. NEW YORK OR FLORIDA LAW CONTROLS .......... 3

II. HARTFORD'S RECOUPMENT CLAIMS FAIL (COUNTS I, II, V, VI) .......... 4

A. The Waiver of Subrogation Endorsement Bars Hartford's Claims .......... 4

1. Hartford's reliance on the "Subrogation" caption fails. .......... 4

2. The Waiver is Enforceable .......... 5

B. Hartford Fails to State a Claim for Unjust Enrichment .......... 5

C. Hartford's Reservations of Rights Did Not Create a Reimbursement Contract Because Defendants Explicitly Rejected Hartford's Conditions .......... 6

D. The Changes Provision Bars Hartford's Reimbursement Contract Claims .......... 9

III. HARTFORD'S SUBROGATION CLAIMS FAIL (COUNTS III, IV) .......... 11

A. The Anti-Subrogation Rule Applies .......... 11

B. The Firm's Articles Eliminated Bursor's Liability .......... 11

C. Hartford's Request for Leave to Amend Should Be Denied .......... 11

**CONCLUSION .......... 12**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerley Media Grp. v. Sharp Electronics Corp.*,
170 F. Supp.2d 445 (S.D.N.Y. 2001)....................3, 4

*Axis Reins. Co. v. Telekenex, Inc.*,
913 F. Supp.2d 793 (N.D. Cal. 2012)....................4

*Caceres Drywall Corp. v. Amerisure Mut. Ins. Co.*,
2012 WL 13005816 (S.D. Fla. Mar. 19, 2012)....................4

*Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*,
556 F. App'x 932 (11th Cir. 2014)....................8

*Chambers v. Slade Indus.*,
2018 WL 11450160 (S.D.N.Y. Oct. 25, 2018)....................3

*Colony Ins. Co. v. G&E Tires & Serv.*,
777 So. 2d 1034 (Fla. Dist. Ct. App. 2000)....................6, 7, 8

*F.H. Paschen, S.N. Nielsen & Assocs. v. B&B Site Dev.*,
311 So. 3d 39 (Fla. Dist. Ct. App. 2021)....................6

*H & M Hennes & Mauritz LP v. Skanska USA Bldg.*,
617 F. Supp. 2d 152 (E.D.N.Y. 2008)....................5

*Itnor Corp. v. Markel Int'l Ins. Co.*,
981 So. 2d 661 (Fla. Dist. Ct. App. 2008)....................4, 5

*James River Ins. Co. v. Arlington Pebble Creek*,
188 F. Supp. 3d 1246 (N.D. Fla. 2016)....................7

*Jim Black & Assocs. v. Transcon. Ins. Co.*,
932 So. 2d 516 (Fla. Dist. Ct. App. 2006)....................7

*Kuber v. Berkshire Life Ins. Co.*,
2019 WL 7899140 (S.D. Fla. Oct. 3, 2019)....................6

*Millennium Holdings LLC v. Glidden Co.*,
27 N.Y.3d 406 (2016)....................11

*Mt. Hawley Ins. Co. v. Plymouth Plaza*,
2023 WL 6973729 (S.D. Fla. Aug. 29, 2023)....................5

*Nassoiy v. Tomlinson*,
42 N.E. 715 (N.Y. 1896)....................8

*Nat'l Cas. Co. v. State Ins. Fund*,
227 A.D.2d 115 (1st Dep't 1996)....................11

*Nationwide Mut. Fire Ins. Co. v. Royall*,
588 F. Supp. 2d 1306 (M.D. Fla. 2008) ........ 6

*Okeechobee Resorts, L.L.C. v. E Z Cash Pawn*,
145 So. 3d 989 (Fla. Dist. Ct. App. 2014) ........ 10

*P.D.K., Inc. v. Madeline*,
291 So. 3d 134 (Fla. Dist. Ct. App. 2020) ........ 10

*Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A.*,
2012 WL 967301 (S.D.N.Y. Mar. 20, 2012) ........ 4

*Reed Const. Data Inc. v. McGraw-Hill Companies*,
638 Fed. App'x 43 (2d Cir. 2016) ........ 3

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017) ........ 8

*Robbie v. City of Miami*,
469 So. 2d 1384 (Fla. 1985) ........ 8

*Scott A. Saveraid Tr. v. QBE Specialty Ins. Co.*,
2025 WL 3122865 (M.D. Fla. Sept. 23, 2025) ........ 6

*In re Standard Jury Instructions--Cont. & Bus. Cases*,
116 So. 3d 284 (Fla. 2013) ........ 8, 9

*Steadfast Ins. Co. v. Sheridan Children's Healthcare Servs.*,
34 F. Supp. 2d 1364 (S.D. Fla. 1998) ........ 11

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
14 Cal.App.4th 637 (1993) ........ 4

*The Turner Co. v. Lexington Ins. Co.*,
2026 WL 2227785 (Del. Super. Ct. Aug. 3, 2026) ........ 6

*Those Certain Underwriters, at Lloyd's, London v. GMC Land Servs.*,
2007 WL 9698312 (S.D. Fla. Nov. 8, 2007), *aff'd*, 315 F. App'x 785 (11th Cir. 2009) ........ 4

*Travelers Cas. & Sur. Co. v. Honeywell Int'l.*,
63 A.D.3d 451 (1st Dep't 2009) ........ 3

*Wendy's of N.E. Fla., Inc. v. Vandergriff*,
865 So. 2d 520 (Fla. Dist. Ct. App. 2003) ........ 7

*Winter Garden Ornamental Nursery v. Cappleman*,
201 So. 2d 479 (Fla. Dist. Ct. App. 1967) ........ 4, 5

**Statutes**

Fla. Stat. § 607.0859(1) ........ 11

Defendants Bursor & Fisher, P.A. (the "Firm") and Scott Bursor ("Bursor," and together, "Defendants") respectfully submit this memorandum of law in further support of their motion to dismiss and strike certain allegations from Plaintiff Sentinel Insurance Company, Limited's ("Hartford") Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

Defendants' Motion requires the Court to answer only one question: whether Hartford may recover defense and indemnity payments it made as an insurer based on the plain language of the insurance policies or under applicable law. The answer is an unequivocal "no."

Hartford asks the Court to rely on legal conclusions couched as factual allegations, defer to manufactured facts contradicted by undisputable public records, rewrite plain policy terms, and accept misstatements of law. Based on the *facts* alleged in the Amended Complaint, however, each cause of action must be dismissed with prejudice. Hartford does not dispute that most of its allegations are legal conclusions, contrary to undisputed public records, or otherwise unsupported. Its only argument is that the Court should nonetheless presume their truth. Even at the motion to dismiss stage, however, New York law will not afford the presumption of truth to Hartford's conclusory, legal, or inaccurate allegations.

*First*, Hartford alleges that the Firm's principal place of business *could be* California. But the Firm's principal place of business—based on unchallenged judicially noticeable public filings and an affidavit—is undisputably Florida, and the Court must disregard Hartford's factually incorrect allegation. Hartford's attempt to distinguish between law applicable to validity versus interpretation of a contract is meritless because the Amended Complaint contains no allegations as to policy validity and, even if it did, New York or Florida law apply.

*Second*, under any law, Hartford's claims fail because Hartford waived any rights of recovery against both Defendants under the Policies. Hartford asks the Court to rewrite its

unambiguous express waiver based on a heading, relying on case law considering headings to resolve *ambiguous* language or *in support of* the plain language. Here, the waiver language is clear and Hartford's reliance on the heading would improperly restrict the plain language. Hartford's waiver requires dismissal of each cause of action.

*Third*, Hartford's direct recoupment claims (Counts I, II, V, and VI) independently fail because: (1) unjust enrichment is unavailable where a contract governs the dispute; (2) specific performance and contractual reimbursement are based on alleged contracts not incorporated in the Policies and lack mutual assent; and (3) declaratory judgment and accounting are moot because Hartford cannot legally recoup.

*Fourth*, Hartford's subrogation claims (Counts III and IV) independently fail because: (1) the anti-subrogation rule applies to insureds and extends to alleged non-insureds; (2) the Firm waived its right to recover from Bursor, extinguishing Hartford's subrogation rights; and (3) unproven allegations from the settled underlying action and legal conclusions are legally insufficient to state a cause of action. Practically, Hartford's subrogation claims would require Bursor—the Firm's sole owner—to cooperate with Hartford on behalf of the Firm while defending himself.

*Fifth*, Count VII—alternative breach of contract—fails because no subrogation rights exist that could have been impaired.

In sum, Hartford neither provides any basis to sustain its Amended Complaint, nor presents any facts that would cure the deficiencies (because none exist). The allegations lead to only one conclusion: Hartford is not entitled to any recovery.

## ARGUMENT

### I. NEW YORK OR FLORIDA LAW CONTROLS

Hartford concedes that New York's choice-of-law rules apply. Opp. at 8. As such, the laws of the Firm's domicile will apply but only to the extent those laws conflict with New York law. The Firm's domicile is and always was Florida[1] (Mot. at 9-10), and Hartford's conclusory allegations that the Firm's principal place of business *may be* in California must be rejected. *Chambers v. Slade Indus.*, 2018 WL 11450160, *2 (S.D.N.Y. Oct. 25, 2018).

Faced with this reality, Hartford invents a new argument[2] based on the Policies' validity to support its reimbursement claims.[3] Opp. at 7-9. This argument fails because the Amended Complaint does not allege any facts or assert any causes of action putting the Policies' validity at issue. Instead, the Amended Complaint confirms the Policies' validity. *See* Compl. ¶¶ 11, 14. Even if any such allegations did exist, California law would not apply—New York or Florida would. To argue for California law, Hartford relies on *Keywell*. Opp. at 7. But *Ackerley*, cited in Opposition (*id.* at 7-8), "reject[ed] such an antiquated approach to the choice-of-law question—which nevertheless seems to linger in causes such as … *Keywell Corp.*" *Ackerley Media Grp. v. Sharp Electronics Corp.*, 170 F. Supp.2d 445, 450 (S.D.N.Y. 2001). In rejecting *Keywell*, *Ackerley* relied on "the New York Court of Appeals" which "jettisoned this traditional view[,]" and the Second Circuit which "'rejected this lavish adherence to the traditional [view].'" *Id.* Ultimately, "'[i]n

---

[1] The court may take judicial notice of these public records. *Reed Const. Data Inc. v. McGraw-Hill Companies*, 638 Fed. App'x 43, 47 n.2 (2d Cir. 2016).

[2] *See* ECF No. 24 at 8-10 (in this Action, arguing application of California's public policy but never raising validity/insurability); *see also* ECF No. 46 (the Court finding "a substantial portion of the relevant events happened in New York").

[3] *Travelers Cas. & Sur. Co. v. Honeywell Int'l.*, 63 A.D.3d 451, 452 (1st Dep't 2009) (laws of principal place of business applied where insured's address in some policies, the broker, amendatory endorsements and other "incidental connections" pointed to another state).

determining the law applicable to matters bearing upon the execution, interpretation, validity and performance of a contract'" New York applies the "modern 'grouping of contacts' analysis[.]" *Id*; *Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A.*, 2012 WL 967301, *5 (S.D.N.Y. Mar. 20, 2012) ("New York rules apply a 'center of gravity' or 'grouping of contacts' analysis when deciding which forum's law to apply to the validity of a contract"). As Hartford acknowledges, this leads to application of Florida law, but only if it conflicts with New York law. Opp. at 8.[4]

## II. HARTFORD'S RECOUPMENT CLAIMS FAIL (COUNTS I, II, V, VI)

### A. The Waiver of Subrogation Endorsement Bars Hartford's Claims

#### 1. Hartford's reliance on the "Subrogation" caption fails.

Hartford cannot use the "Subrogation" heading to limit the Endorsement's plain, unambiguous language that "waives any right of recovery." Mot. at 12-13. Under Florida law, "the caption … may [not] be used to create an ambiguity." *Itnor Corp. v. Markel Int'l Ins. Co.*, 981 So. 2d 661, 663 (Fla. Dist. Ct. App. 2008); *see Winter Garden Ornamental Nursery v. Cappleman*, 201 So. 2d 479, 480 (Fla. Dist. Ct. App. 1967) (a caption may "explain an ambiguity in the operative part of the clause," but cannot be used "to create ambiguity where none exists"); *Those Certain Underwriters, at Lloyd's, London v. GMC Land Servs.*, 2007 WL 9698312, at *5 (S.D. Fla. Nov. 8, 2007) (relying on *Winter Garden* as "binding"), *aff'd*, 315 F. App'x 785 (11th Cir. 2009). Hartford's cases support this principle. *See, e.g.*, *Caceres Drywall Corp. v. Amerisure Mut. Ins. Co.*, 2012 WL 13005816, at *6 (S.D. Fla. Mar. 19, 2012) ("The Court is not using the title to create ambiguity; it is using the title to amplify what is already clear."). Accordingly, Florida courts have

[4] California applies the same "grouping of contact" factors to determine what state's law govern "a dispute over the validity of a contract[.]" *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 646 (1993). And California law *would not* override that analysis solely to apply § 533. *Axis Reins. Co. v. Telekenex, Inc.*, 913 F. Supp.2d 793, 805-08 (N.D. Cal. 2012) (applying "grouping of contact" analysis where insurer argued § 533's public policy controlled).

repeatedly rejected precisely what Hartford seeks here—"cast[] doubt on the meaning of 'any [rights of recovery]' in the body of the endorsement" by reference to the "more restricted word '[Subrogation].'" *Winter Garden*, 201 So. 2d at 480; *see Itnor Corp.*, 981 So. 2d at 663 ("Although the caption refers only to employees of independent contractors, the remaining language clearly includes the independent contractors.").

Even if considered, the heading supports Defendants' position. *See Mt. Hawley Ins. Co. v. Plymouth Plaza*, 2023 WL 6973729, at *8 (S.D. Fla. Aug. 29, 2023) (an insurer's attempt to recoup from its insured "precisely fits the definition of subrogation"), *adopted*, 2023 WL 8111899 (S.D. Fla. Nov. 22, 2023).

**2. The waiver is enforceable.**

Hartford contends that the phrases "we waive" and "may have" limit the Endorsement to claims existing at policy issuance. Opp. at 15. That reading is untenable because courts routinely enforce identical language to release prospectively acquired rights. *See H & M Hennes & Mauritz LP v. Skanska USA Bldg.*, 617 F. Supp. 2d 152, 155, 160 (E.D.N.Y. 2008). Nor is the Endorsement an exculpatory provision because it does not prevent an injured claimant from recovering from the party at fault. *See id.* at 159. The Policies' plain language therefore requires dismissal of Hartford's recoupment claims.[5]

**B. <u>Hartford Fails to State an Unjust Enrichment Claim</u>**

Hartford concedes that its unjust enrichment claim fails under New York law. Opp. at 16. Florida law compels the same result. Mot. at 13-14. Both states bar unjust enrichment where an

[5] These claims against Bursor independently fail because Hartford denied coverage, did not defend, and never reserved rights to seek reimbursement from him. Mot. at 23-26.

insurance policy governs the dispute—regardless of any reimbursement provision.[6] Mot. at 13-14; *see also Scott A. Saveraid Tr. v. QBE Specialty Ins. Co.*, 2025 WL 3122865, at *3-4 (M.D. Fla. Sept. 23, 2025). Hartford misstates Florida law. Opp. at 16. Florida courts predicate reimbursement on a contract theory of offer and acceptance, not quasi-contract like in *Buss*. Mot. at 13.[7]

Hartford's unjust enrichment claim must therefore be dismissed.

### C. Hartford's Reservations of Rights Did Not Create a Reimbursement Contract Because Defendants Explicitly Rejected Hartford's Conditions

New York and Florida courts recognize that "fundamentally, the relationship between an insurer and an insured is governed by the law of contracts." *Nationwide Mut. Fire Ins. Co. v. Royall*, 588 F. Supp. 2d 1306, 1317 (M.D. Fla. 2008). Hartford must therefore demonstrate a contractual entitlement to reimbursement based on mutual assent. *The Turner Co. v. Lexington Ins. Co.*, 2026 WL 2227785, at *11-12 (Del. Super. Ct. Aug. 3, 2026). Hartford's sole argument is that Defendants' acceptance of its payments overrides their express and repeated refusals and implies consent. But acceptance of payments consistent with Hartford's obligations under the Policies cannot transform an express rejection into consent, particularly when the rejections preceded payment.

Hartford, without support, argues that Defendants "contort" and "hijack" *Colony Ins. Co. v. G&E Tires & Serv.*, 777 So. 2d 1034 (Fla. Dist. Ct. App. 2000). In *Colony*, the insurer denied coverage and refused to defend the insured *three times* and, "only after reserving … its right to be reimbursed," "accede[d] to [the insured]'s fourth request to undertake the defense." *Id.* at 1035-

---

[6] The Policies address reimbursement to Hartford only in certain specified circumstances. *See* Ex. 14, NY Changes, § III.D.c; Umbrella § IV.F.

[7] Hartford relies on inapposite cases. *See Kuber v. Berkshire Life Ins. Co.*, 2019 WL 7899140, at *2 (S.D. Fla. Oct. 3, 2019) ("issue of which party bears the burden of proving that [disability claimant] is or is not disabled"); *F.H. Paschen, S.N. Nielsen & Assocs. v. B&B Site Dev.*, 311 So. 3d 39, 49 (Fla. Dist. Ct. App. 2021) (specific to construction contracts).

36. The insurer also informed the insured that it would seek declaratory relief, and did, less than two months later. *Id.* at 1036-38. The insured never rejected the reimbursement condition, and the court found that the insured's acceptance of the insurer's conditional defense "manifested acceptance of the terms on which [the insurer's] offer to pay for the defense was tendered." *Id.* at 1039.[8]

Here, Hartford never denied coverage to the Firm or "conditioned" its defense on reimbursement. Defendants expressly rejected Hartford's boilerplate reservation, and *Hartford paid anyway*, more than a year after litigation began, nine months after acknowledging coverage for the Firm, and six months after its second acknowledgment and Defendants' express rejection. Mot. at 5-7, 17-18.

The only other case Hartford cites is likewise inapposite. Opp. at 19. In *James River*, the insurer conditioned its defense from the outset, expressing that "[b]y accepting this defense under reservation of rights, [the insured] acknowledges and ***accepts all of the terms of this reservation of rights***." *James River Ins. Co. v. Arlington Pebble Creek*, 188 F. Supp. 3d 1246, 1252 (N.D. Fla. 2016) (emphasis added). The insured accepted the defense and only objected to the condition "two years after [the insurer] undertook the defense." *Id.* at 1262. Here, Hartford never conditioned its defense on any terms and, regardless, Defendants promptly rejected those terms months *before* Hartford made any payments. Mot. at 17-18.

---

[8] Curiously, Hartford fails to cite other Florida cases confirming recoupment must be based in contract*.* *See Jim Black & Assocs. v. Transcon. Ins. Co.*, 932 So. 2d 516, 518 (Fla. Dist. Ct. App. 2006) (recoupment permitted where insured "did not question or comment on [insurer's] reservation of rights letter and…accepted [insurer]'s defense using agreed-upon counsel"); *cf. Wendy's of N.E. Fla., Inc. v. Vandergriff*, 865 So. 2d 520, 522 (Fla. Dist. Ct. App. 2003) (insurer's "unilateral attempt to assert such [reimbursement] right some 16 months after accepting [insured's] defense has no legal effect, as [insured] never agreed to [insurer's] untimely assertion").

Like *Colony*, other Florida courts have relied on the Restatement (Second) of Contracts § 69 to determine whether an insured's silence constituted acceptance. *See Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, 556 F. App'x 932, 933 (11th Cir. 2014). Here, Defendants were not silent and expressly rejected each attempt by Hartford, before it made any payments, to manufacture such right. Defendants' words and conduct unambiguously manifested their lack of assent to any purported conditions. *Hartford paid anyway*.

The non-insurance cases Hartford cites (Opp. at 20-21) are irrelevant where, as here, a party offers to pay a disputed contractual obligation, attaches conditions not found in the contract that the counterparty *explicitly rejects*, and then proceeds anyway.[9] No reasonable party could believe the counterparty agreed to the rejected terms. *See Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 753 (S.D.N.Y. 2017) ("To hold that the plaintiff's written rejection of the Dispute Resolution Agreement is irrelevant in light of her continued employment would contravene the directive to consider the 'objective manifestations of the intent of the parties' as expressed by their 'words and deeds.'").

Hartford relies on the "Sources and Authorities" section of a pattern jury instruction that merely suggests that "[a]n offeree's silent acceptance of benefits from the offeror constitutes acceptance." *In re Standard Jury Instructions--Cont. & Bus. Cases*, 116 So. 3d 284, 312 (Fla. 2013) (citing *Hendricks v. Stark*, 126 So. 293, 297 (1930)). But this is a limited exception to the general rule that "[o]rdinarily, ***if* a party does not say or do anything** in response to another party's offer,

[9] The accord and satisfaction cases are inapplicable because they involve offers made at the time of payment expressly conditioned on specific terms (like full satisfaction of a disputed claim)—where the receiving party already holds the funds before deciding whether to accept the conditions—and the receiving party accepts by cashing the check. *See, e.g.*, *Nassoiy v. Tomlinson*, 42 N.E. 715, 716-17 (N.Y. 1896). Under those circumstances, accepting payment may objectively manifest assent to the stated conditions. *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985).

then [he] has not accepted the offer." *Id.* at 312 (emphasis added). Not only were Defendants not "silent," Hartford's reservation did not amount to an "offer" and, even if it did, Defendants explicitly and repeatedly rejected such "offer" before accepting the purported benefits (i.e., defense and settlement payments pursuant to the Policies).

Hartford alleges no facts to support these theories. Rather, Hartford's factual allegations and incorporated documents establish clear, repeated, and timely rejections by Defendants of any purported reimbursement terms. Hartford had knowledge of Defendants' manifestations, and ample opportunity to clarify or otherwise refuse to pay without unequivocal assent, but *paid anyway*. Thus, not only is it implausible that Hartford was unaware Defendants rejected the purported conditions—knew there was no mutual assent—but equally implausible that Defendants, having made their lack of assent clear, accepted payments subject to terms they expressly rejected.

### D. The Changes Provision Bars Hartford's Reimbursement Contract Claims

The Policies "contain[] all the agreements between [the Insured] and [Hartford] concerning the insurance afforded" and their "terms can be amended or waived only by endorsement issued by [Hartford] and made a part of this policy." Ex. 14. Hartford alleges a separate contract, but none is endorsed or made part of the policy. That omission is fatal to Hartford's recoupment claims under applicable law.

First, Hartford disingenuously argues that its alleged reimbursement contracts do not "concern[] the insurance afforded" because they "require Defendants to reimburse *Hartford*—practically the opposite of insurance." Opp. at 23. That argument is nonsensical and contradicts Hartford's allegations (Compl. ¶¶88–90).

Second, Hartford's interpretation of "contain[] all the agreements" relies on a case interpreting that clause in an entirely different context and is inapplicable here based on the

provision's plain language, which applies to all prior agreements that would be contained in the policy, and provides the process—not followed here—for incorporating any future agreements. Opp. at 23-24.

Hartford's argument that the Changes provision was waived is wrong. First, no oral modification is alleged. Second, Defendants' rejections were based on the Policies and expressly stated that the Policies do not permit Hartford to seek reimbursement. In other words, Defendants relied on the contracts, which contain no right for Hartford to seek reimbursement for defense or settlement payments, and invoked that language in their rejections. Exs. 5, 12; *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn*, 145 So. 3d 989, 993, 995 (Fla. Dist. Ct. App. 2014) (contracts requiring modifications to be in writing are enforced and the limited exception applies only if a party can show "that the parties accepted and acted upon the alleged modification (i.e., ***mutual assent and a course of dealing consistent with the alleged amendment***) and that a refusal to enforce the modification would '***work a fraud*** ....'") (emphasis added). Here, the allegations reflect a *lack of* mutual assent and Hartford's unilateral decisions to pay anyway.

Finally, Hartford's estoppel argument cannot overcome the Changes provision without mutual assent. *See Okeechobee Resorts*, 145 So. 3d at 992, 995; *P.D.K., Inc. v. Madeline*, 291 So. 3d 134, 136 (Fla. Dist. Ct. App. 2020) ("Although the appellant raised estoppel and detrimental reliance, *Okeechobee Resorts* disposes of reliance on those theories of oral modification without mutual assent to the modification.").

Hartford does not allege, and the allegations confirm that there was no, mutual assent permitting reimbursement to support Counts I, II, V, and VI.[10]

---

[10] Hartford argues that Section 725.04 prohibits application of the voluntary payment doctrine here. Florida law independently requires an insurer to obtain a written agreement from its insured

## III. HARTFORD'S SUBROGATION CLAIMS FAIL (COUNTS III, IV)

### A. The Anti-Subrogation Rule Applies

The anti-subrogation rule prevents recovery from Bursor irrespective of his insured status. New York Courts have applied the anti-subrogation rule "to third parties who are not covered by the insurance policy" based on "the existence of a conflict of interest," including "the president and principal shareholder of a closely held corporation." *Millennium Holdings LLC v. Glidden Co.*, 27 N.Y.3d 406, 417 (2016). Hartford "cannot simply deny that it insured [Bursor] in order to circumvent the anti-subrogation rule." *Nat'l Cas. Co. v. State Ins. Fund*, 227 A.D.2d 115, 117 (1st Dep't 1996); Mot. at 22-23.

### B. The Firm's Articles Eliminated Bursor's Liability

Hartford's subrogation claims also fail because the Firm's Articles waived the Firm's right to assert liability against Bursor "[t]o the fullest extent permitted by law" for "breach of any duty owed to the [Firm]." Ex. 15. Standing in the Firm's shoes, Hartford cannot recover what the Firm itself could not recover.

Hartford's reliance on Florida's anti-indemnity statutes is misplaced. Opp. at 27. Those statutes prohibit indemnification only where there has been a judgment or conviction for "[w]illful or intentional misconduct" or "criminal" acts. Fla. Stat. § 607.0859(1). Here, the Underlying Action settled; no judgment or conviction was entered (and Defendants have consistently and vehemently denied all material underlying allegations).

### C. Hartford's Request for Leave to Amend Should Be Denied

Hartford's request for leave to amend should be denied because amendment would be futile. Hartford cannot cure its breach-of-fiduciary-duty claim by adducing discovery from the

---

allowing it to seek reimbursement for amounts paid to settle uncovered claims. *See Steadfast Ins. Co. v. Sheridan Children's Healthcare Servs.*, 34 F. Supp. 2d 1364, 1367 (S.D. Fla. 1998).

Underlying Action (Opp. at 37) because those claims would still rest on "recitations of unproven allegations made in other complaints," which are insufficient to state a claim. Mot. at 25-26.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Hartford's Amended Complaint with prejudice.

September 8, 2026

COHEN ZIFFER FRENCHMAN & MCKENNA LLP

By: ______________________________

Kenneth H. Frenchman
Jason M. Sumbaly
1325 Avenue of the Americas, 31st Floor
New York, NY 10019
(212) 584-1890
kfrenchman@cohenziffer.com
jsumbaly@cohenziffer.com

Attorneys for Defendants Bursor & Fisher, P.A., and Scott Bursor

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(C)

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 3,499 words (according to Microsoft Word's Word Count function), exclusive of the cover page, and any index, table of contents, table of authorities, signature blocks, or any required certificates, and that this Memorandum of Law complies with the formatting rules contained in the Southern District of New York's Local Rules.

/s/ Kenneth H. Frenchman
Kenneth H. Frenchman